IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02052-JLK

BLUERADIOS, INC.,

    Plaintiff,

v.

KOPIN CORPORATION,

    Defendant.

---

ORDER ON SUPPLEMENTAL MOTION FOR AWARD
OF ATTORNEY FEES (ECF NO. 651)

---

Kane, J.

This matter is before me to determine the reasonable expenses Plaintiff BlueRadios, Inc. ("BlueRadios") incurred as a result sanctionable discovery conduct on the part of Defendant Kopin Corporation ("Kopin"). BlueRadios' request is set out in its Motion for Attorney Fees (ECF No. 489) and Supplemental Motion for Attorney Fees (ECF No. 651). Exercising my inherent authority to manage the litigation as well as the powers described under Federal Rule of Civil Procedure 37, I already determined, in my Order on Plaintiff's Motions for Discovery Sanctions and Regarding Defendant's Production of Documents for In Camera Review ("Sanctions Order"), that BlueRadios is entitled to the reasonable expenses it incurred because of Kopin's specific misconduct. *See* Sanctions Order at 20, ECF No. 495 ("Kopin will compensate BlueRadios for its delayed productions and for failing to append those and other productions with adequate information to navigate transmitted materials").

1

## PROCEDURAL HISTORY

Following the issuance of my Sanctions Order,[1] BlueRadios submitted its first Motion for Attorney Fees, requesting "$1,545,460.06 in attorney fees and expenses." *See* Mot. for Att'y Fees at 1. As my review of BlueRadios' supporting affidavits and timesheets revealed, and as Kopin clarified in its Objections to or, in the Alternative, Request for Reconsideration of Certain Aspects of Fee Award, BlueRadios sought "all attorney fees and expenses billed . . . after September 2, 2022." *See* Kopin Objection at 3, ECF No. 492. However, my Sanctions Order awarded only those expenses incurred as a result of Kopin's sanctionable conduct. I conducted an exhaustive review of the timesheets that accompanied BlueRadios' filings in an attempt to parse what work was attributable to Kopin's misconduct, but I concluded such a determination was not feasible without further guidance. Accordingly, I ordered the parties to submit additional briefing because, with the limited information that I possessed, "the range of potential fee awards calculated [was] too great to accomplish even 'rough justice.'" *See* Jan. 26, 2024 Minute Order, ECF No. 644 (quoting *Fox v. Vice*, 563 U.S. 826 (2011)). BlueRadios then submitted a Supplemental Motion for Attorney Fees, in which it reduced the amount of its requested expenses and worked to tie those expenses to Kopin's sanctionable conduct. *See* Suppl. Mot. for Att'y Fees at 6, ECF No. 651 (requesting $840,853.72 in attorney fees and expenses). Kopin continues to dispute both the breadth of the attorney fees and costs BlueRadios seeks and the reasonableness of the billed rate for the attorneys. *See generally* Obj. to Supp. Mot. for Att'y Fees, ECF No. 662.

---

[1] Given the professed sensitivity of the material being discussed, including alleged trade secrets, the parties have moved to restrict a substantial number of filings. The initially restricted version of the Sanction Order bears ECF No. 487. After neither party moved to restrict, a public version was entered under ECF No. 495. For the sake of transparency, I will be referring to this docket entry.

## LEGAL STANDARD

As stated in *Asher v. Colgate-Palmolive Co.*, "[t]o determine the reasonableness of a fee request, a court must begin by calculating the so-called 'lodestar amount' of a fee, and a claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee. The lodestar calculation is the product of a number of attorney hours 'reasonably expended' and a 'reasonable hourly rate.'" No. 10-cv-01468-MSK-KMT, 2012 WL 370249, at *1 (D. Colo. Feb. 3, 2012) (quoting *Robinson v. City of Edmond*, 160 F.3d 1275 (10th Cir.1998)). The first step in conducting this analysis is to determine which hours billed are for necessary work. *See Zuchel v. City & Cnty. of Denver*, Colo., 997 F.2d 730, 744 (10th Cir. 1993) ("[W]e begin our consideration of the fee award by addressing . . . the number of hours the trial court held to be reasonably expended by plaintiffs' counsel."). The second step is to assess whether the rate at which those hours were billed are consistent with the market rates relative to the time and place of the litigation. *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996) (stating that the number of hours "must then be multiplied by a reasonable hourly rate") (citing *Hensley v. Eckerhart*, 103 S. Ct. 1933, 1939 (1983)); *see also Guides, Ltd. v. Yarmouth Group Property Mgmt., Inc.*, 295 F.3d 1065, 1078 (10th Cir. 2002) (outlining that the second component to the attorney fee analysis is whether the hourly rate charged "is the prevailing market rate in the relevant community"). This figure is neither precise nor rigidly binding. *See Cuesta v. SMT Holdings LLC*, No. 21-cv-03094-NYW, 2023 WL 3626517, at *27 (D. Colo. May 24, 2023) ("A court may 'adjust the lodestar upward or downward to account for the particularities' of the work performed.") (quoting *Phelps v. Hamilton*, 120 F.3d 1126, 1131 (10th Cir. 1997)). Although this case is complex and BlueRadios' work was performed on an expedited basis because of Kopin's misconduct, I find a modest upward adjustment is not warranted.

# ANALYSIS

Of the $840,853.72 requested by BlueRadios, that figure can be broken down into "$649,998.50 in attorney fees and $183,855.22 in costs." *See* Supp. Mot. for Att'y Fees at 5. To determine the reasonableness of these figures, I will first begin with attorney fees, starting with the necessity of the work for which compensation is requested and then consider the reasonableness of the rates billed for those hours. Next, I discuss the associated requested costs.

## I.   Necessity of the Attorney Work

Only attorney hours that satisfy an analysis of reasonableness may be included as a part of any award of fees, which turns on how directly the work was caused by the sanctioned behavior. *See Robinson* 160 F.3d at 1281 ("This subsidiary reasonableness inquiry is controlled by the overriding consideration of whether the attorney's hours were 'necessary' under the circumstances."). The object of such an analysis is to estimate how the work would be performed in the marketplace and compare the submitted request against that estimate. *See id.* ("[W]e ask what hours a reasonable attorney would have incurred and billed in the marketplace under similar circumstances."). Given the general nature of this comparison, there is no expectation that each hour be accounted for precisely. *See Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, 886 F.3d 863, 873 (10th Cir. 2018) ("But we do not require the district court to identify and justify every hour allowed or disallowed.") (citing *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996)). Instead, I estimate based on the use of the following criteria:

(1)   whether the tasks being billed would normally be billed to a paying client,
(2)   the number of hours spent on each task,
(3)   the complexity of the case,
(4)   the number of reasonable strategies pursued,
(5)   the responses necessitated by the maneuvering of the other side, and
(6)   potential duplication of services by multiple lawyers.

*Robinson*, 160 F.3d 1275, 1281 (10th Cir. 1998) (citing *Ramos v. Lamm*, 713 F.2d 546, 556 (10th Cir.1983)) (internal quotation marks omitted). At first glance, certain factors yield obvious analytical results. For example, for BlueRadios' relatively lean staffing on a case such as this,[2] I believe that the risk of unnecessary duplicative work among multiple lawyers is relatively low. This risk is inversely proportional to the complexity of the case, which, here, I consider atypically high. After all, this litigation has carried on for approximately eight years and involves

---

[2] Kopin's comparison of this case to *Albright v. Bi-State Dev. Agency of the Mo.-Illinois Metro. Dist.* is inapposite. *See* Opp'n to Suppl. Mot. for Att'y Fees at 10-11 (citing *Albright*, No. 4:11-cv-01691 AGF, 2013 U.S. Dist. LEXIS 130024, at *12 (E.D. Mo. Sep. 11, 2013)). There, the court held that "[i]n light of its relative simplicity, . . . the case was overstaffed and an inordinate amount of time was spent on communications between the Plaintiffs' attorneys." Moreover, there was glaring evidence of duplicative work: "all three counsel reviewed and conferred with respect to a proposed motion for extension of time, expending a total of 7.25 hours on two exceedingly simple tasks." *Albright*, 2013 U.S. Dist. LEXIS 130024, at *13. BlueRadios' management of its case, which, as described below, is not a simple dispute for multiple reasons, does not appear to involve overstaffing or obviously duplicative work. Similarly, Kopin contends that merely because BlueRadios was free to "'hire and pay as many lawyers as they wish to represent them in a matter,' all may not be necessary and chargeable." Opp'n to Suppl. Mot. for Att'y Fees at 9 (quoting *Albu v. Delta Mech. Inc.*, No. 13-cv-03087-PAB-KMT, 2015 WL 4483992, at *7 (D. Colo. June 30, 2015), *report and recommendation adopted*, No. 13-cv-03087-PAB-KMT, 2015 WL 4467434 (D. Colo. July 22, 2015)). To bolster this argument, Kopin cites *Realtime Adaptive Streaming LLC v. Sling TV LLC*, No.17- cv-02097-RBJ, 2022 WL 194482, at *5 (D. Colo. Jan. 20, 2022) ("[G]iven the number of lawyers and others working on the case, it is inevitable that there are duplications and other inefficiencies in the numbers. There is no indication that the time entries have been reviewed and culled to eliminate inefficiency and assure that the time was necessarily and productively recorded."). The reference to that case, involving fees requested for thirteen billing attorneys, six of whom were partners, falsely insinuates that simply having multiple attorneys employed on a matter exponentially increases the risk of duplication of work or a diminution in efficiency. Also, coming from Kopin, considering how its counsel has staffed this case, the suggestion that the case does not warrant multiple attorneys working on the same matter is more than a little disingenuous. As to Kopin's final argument for inefficient staffing—allegedly disproportionate billing at higher rates—I see no indicia that BlueRadios was intentional or even careless about delegating work to partners too frequently. To the extent that partners Stanley M. Gibson, David B. Seserman, and Joseph E. Kovarik took on more "associate-level" work than would be expected is reasonably attributable to the fact that their involvement was responsive to Kopin's delayed productions and inadequate organization. In matters involving discrepancies from opposing counsel, an experienced perspective is more likely to identify and fittingly respond to sanctionable conduct.

highly technical trade secret misappropriation, revision of patent applications for insufficient reference to contributors of particular claims, statute of limitations concerns, alleged illusory contracts, and other sophisticated legal issues. BlueRadios' responses that were necessitated by Kopin's maneuvering were likewise multivariable, involving questions of whether unproduced discoverable material was necessary to continue pursuing and, if so, how. The additional factors, such as the number of reasonable strategies pursued and whether the work would normally be billed to the client do not require extensive analysis. The reasonable strategies for BlueRadios and its responses to Kopin in this case were largely reactive to Kopin's misconduct and, after a fastidious review of the timesheets, I do not see there were multiple paths from which BlueRadios could waver between choosing. The work, which related to proper discovery requests, was appropriate to bill to the client.

Consideration of the number of hours spent on each task yields the most informative analysis of reasonableness. In conducting this review, I am focused on "work that was [. . .] a consequence of, responsive to, or immediately and adversely impacted by the specific discovery misconduct for which I found Defendant Kopin Corporation, Inc. was responsible." *See* Jan. 26, 2024 Minute Order. Still, Kopin objects to the inclusion of certain work that it regards as not *directly* related to its misconduct, specifically those actions which BlueRadios would have had to perform even if the misconduct had not occurred.[3] Kopin's arguments are unavailing. Its self-

---

[3] My request for additional briefing directed BlueRadios to indicate "how the work in each remaining entry was necessitated by Defendant Kopin Corporation, Inc.'s discovery misconduct." *See* Jan. 26, 2024 Minute Order. This language does not conflict with the immediately preceding instruction to cite billing and expense information that "eliminate[d] . . . all work that was not a consequence of, responsive to, or immediately and adversely impacted by the specific discovery misconduct for which I found Defendant Kopin Corporation, Inc. was responsible." *Id*. First, the words "remaining entry" suggest reference to the more inclusive definition of compensable work, work beyond discrete responsibilities that, in their entirety, would not have been imposed absent the misconduct. Second, the word "how" indicates to

serving view would exclude work that was already underway or anticipated by BlueRadios that was "immediately and adversely impacted by" Kopin's actions, and thus that is covered by my Sanctions Order. *See id.* It is more consistent with my previous instruction to compensate BlueRadios for a portion of ongoing or anticipated work, with a calculation that approximates the added difficulty it experienced because of Kopin's misconduct. As such, I review each category that was allegedly impacted by Kopin's sanctionable actions.

*Document Review*

BlueRadios indicates that it incurred "$186,750 in attorney fees and $1,727.98 in costs" associated with document review[4] during the relevant period, between September 2, 2022, and July 7, 2023. *See* Suppl. Mot. for Att'y Fees at 2. Kopin contends that the great majority of documents produced during this period were delivered with sufficiently clear guidance, such that its conduct was not sanctionable and BlueRadios should not be compensated for related expenses. *See* Kopin's Obj. to Supp. Mot. for Att'y Fees at 6-7, ECF No. 662. Additionally, Kopin highlights that only "17,968 out of 430,000 pages," amounting to 7 of 24 productions, were delivered without adequate information to organize or contextualize those documents. *Id*. Kopin proposes paying all the billed time for document review attributable to the seven productions that were not accompanied with a guide or other organizing information. *See id*. I agree with Kopin's assessment and believe the related fees incurred should be compensated in

---

BlueRadios to describe the manner in which the work was necessitated, which may include how a previously anticipated task had to be performed in a more resource-intensive manner because of Kopin's misconduct.

[4] This document review excludes the review of materials produced by third parties, which is addressed below.

full. Specifically, BlueRadios is entitled to compensation for 35.92 of 122.8 hours[5] spent by Jeffer Mangels Butler & Mitchell LLP ("JMBM") attorneys,[6] 35.35 of 121.20 hours spent by David B. Seserman, and 20.89 of 71.63 hours spent by Joseph E. Kovarik on document review.[7]

*Third-Party Discovery*

Kopin does not dispute that the time BlueRadios spent to acquire and review third-party discovery should be compensated. I agree with the parties and find the hours billed[8] for such work are necessary and should be reimbursed.[9]

*Depositions*

One of the consequences of dumping documents in large volume and without sufficient organizational information is that BlueRadios had to "conduct depositions without adequate time to review potentially relevant materials." *See* Sanctions Order at 18. Kopin argues that having to

---

[5] There are three attorneys who billed for document review, the 35.92 hours are distributed accordingly: 9.92 hours to Stanley M. Gibson, 23.48 hours to Lena Streisand, and 2.42 hours to Julian Oscar Alvarez.

[6] While JMBM did provide billing information about its support staff and did identify each timekeeper, it failed to provide the credentials that Colorado requires each claimant for fees to submit. *See Cuesta*, 2023 WL 3626517, at *28 ("Under the Local Rules of Practice for this District, a motion for attorney's [sic] fees must 'include the following for each person for whom fees are claimed: (1) a summary of relevant qualifications and experience.'") (quoting D.C.COLO.LCivR 54.3(b)).

[7] The figures provided in the Affidavit of Joseph E. Kovarik do not match the figures provided in the accompanying timesheet. *Compare* Aff. of Joseph E. Kovarik at 1-2, ECF No. 651-4 (listing "47,576.00" as the value of work associated with document review) *with* Attorney Diary Report at 7, ECF No. 651-5 (listing "45,483.50" as the value of work associated with document review). Therefore, I will use the lower figure of the two across each category of work. The rate provided in Mr. Kovarik's billing entries indicates that the rate billed was $635 per hour, which is the rate I used in determining Mr. Kovarik spent 71.63 hours total in reviewing documents during the relevant period.

[8] Mr. Kovarik's figures are based on the lower dollar amount he reportedly billed and at the lower rate he provided, an estimated 4.68 hours. *See* Aff. of Joseph E. Kovarik at 1-2, ECF No. 651-4.

[9] Again, this would exclude the work of JMBM non-attorney timekeepers, bringing the attorney-billed hours to 37.

re-take depositions was necessitated by other reasons BlueRadios had expressed elsewhere. This fact is not determinative of whether to grant fees.

As I have already explained, whether the work would have been done without Kopin's misconduct does not solely determine if BlueRadios is entitled to reimbursement for that work. If the work was "immediately and adversely impacted by" Kopin's delays or lack of organizing information, the degree to which BlueRadios was inconvenienced is compensable albeit by approximation. Therefore, I shall employ a 20% estimate to the stated hours associated with deposition work during the period for which I permitted reimbursement. This portion of time reported to be spent on depositions I find encompasses the responses and other adjustments BlueRadios had to make because of Kopin's discovery misconduct. This estimation, as with respect to other tasks that were impeded by Kopin's misconduct, is intended to reflect what hours exceeded my expectation for the work performed. I note that this calculation is especially difficult to conduct because it is at odds with the aim of preventing the billing of redundant or duplicative work. Nevertheless, although my estimates are on the conservative end of the range, this clarification should provide sufficient insight into how and why I arrived at the diminution of fee awards. *See Robinson*, 160 F.3d at 1281 (10th Cir. 1998) (noting that "[t]he record ought to assure us that the district court did not 'eyeball' the fee request and cut it down by an arbitrary percentage....") (citing *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1314 (7th Cir.1996)). Specifically, BlueRadios is entitled to compensation for 38.34 of

191.7 hours spent by JMBM attorneys,[10] 12.84 of 64.20 hours spent by David B. Seserman, and 2.62 of 13.1 hours by Joseph E. Kovarik.[11]

*Motions for Sanctions*

The Sanctions Order made clear that BlueRadios' expenses incurred in bringing its meritorious motions for sanctions were compensable. *See* Sanctions Order at 18, n. 14 (stating that work related to the Motion for Sanctions for Spoliation of Evidence, ECF No. 420, and Motion for Discovery Sanctions, or in the Alternative, to Compel, ECF No. 421, should be compensated). Nevertheless, Kopin insists that not all the work should be compensated since not all arguments made in these motions were successful. Instead, Kopin proposes allowing a fraction, three-sevenths, of the requested amount since, of the seven arguments raised, I found three warranted sanctions against Kopin. While this method is imprecise, it is a reasonably close approximation and I will employ it. Therefore, the time spent on motions will be counted by three-sevenths. More specifically, I find 86.35 of 201.5 hours spent by JMBM attorneys and staff,[12] 66.21 of 154.5 hours spent by David B. Seserman, and 1.96 of 4.57 hours spent by Joseph

---

[10] Only two JMBM attorneys billed their time on depositions, leading to a combined and reduced sum of 38.34 hours split as follows: 36.28 hours to Stanley M. Gibson and 2.06 hours to Lena Streisand.

[11] Again, Mr. Kovarik's figures in his affidavit do not match the figures in his timesheet. *Compare* Aff. of Joseph E. Kovarik at 1-2, ECF No. 651-4 (listing "9,922.50" as the value of work associated with depositions) *with* Attorney Diary Report at 7, ECF No. 651-5 (listing "8,318.50" as the value of work associated with depositions). Once more, I use the lower figure of the two, estimating hours through division of the $635-per-hour rate to arrive at 13.1 hours spent on deposition-related work.

[12] There are three attorneys for JMBM who billed work relating to the successful motions for sanctions and their combined 86.35 hours are distributed accordingly: 25.41 hours to Stanley M. Gibson, 60.21 hours to Lena Streisand, and 0.73 hours to Julian Oscar Alvarez.

E. Kovarik[13] on work related to successful motions for sanctions against Kopin should be compensated.

*Motions for Fees*

As I just explained, my Sanctions Order indicated that the effort expended to seek compensation for the hardship Kopin caused should also be included in any award of expenses. BlueRadios' original Motion for Attorney Fees lacked clarity with respect to which work was compensable and which was not. As discussed above, after a tedious review of that Motion, I concluded that the range of potential awards was too great to effectuate even an attempt at "rough justice." *See* Jan. 26, 2024 Minute Order. The imprecision in the Motion necessitated further briefing and an affidavit on the reasonableness of the expenses by a neutral expert. *Id.* (noting "that the best practice in attorney fee disputes is for the parties to submit the affidavit of a neutral expert opining on the reasonability, vel non, of the requested fees"). *Id*. BlueRadios' Supplemental Motion is more precise and includes an expert affidavit. BlueRadios does not explicitly request the expenses it incurred for drafting either of its motions for attorney fees,[14] but it appears to seek compensation for the work of its attorney-fee expert. All the work associated with BlueRadios' Supplemental Motion and the accompanying expert report, however, is attributable to BlueRadios' initial imprecision vis-à-vis its billing and expenses, not

---

[13] Once more, Mr. Kovarik provides numbers in his affidavit that do not correspond to those in his timesheet. *Compare* Aff. of Joseph E. Kovarik at 1-2, ECF No. 651-4 (listing "7,695.00" as the value of work associated with motions) *with* Attorney Diary Report at 7, ECF No. 651-5 (listing "2,902.50" as the value of work associated with motions). For the last time, I use the lower figure of the two, calculating Mr. Kovarik's hours by dividing his estimated cost by $635 to arrive at 4.57 hours spent on deposition-related work.

[14] BlueRadios' initial request required work that is a direct response to Kopin's misconduct and would be regarded analogously to its motions seeking sanctions. *See* Sanctions Order at 18 n.14. However, based on my review of the timesheets submitted, such repayment is not requested by BlueRadios and consequently will not be awarded.

Kopin's misconduct. Therefore, BlueRadios may not be compensated for the work of its expert, and the $7,000 for his services will be denied.

II.  Reasonableness of the Attorney Rates Charged

The hours of work spent on compensable tasks may be repaid with an hourly rate that is consistent with "the hourly rates prevailing in the community" *See Auto-Owners*, 886 F.3d at 873. My perspective as to the reasonableness of the hourly rates is informed by my experience in this case and knowledge of the kind of legal work it entails as well as my familiarity with the rates charged in the Denver Metropolitan Area. *See Lucero v. City of Trinidad*, 815 F.2d 1384, 1385 (10th Cir. 1987) ("The establishment of hourly rates in awarding attorneys' [sic] fees is within the discretion of the trial judge who is familiar with the case and the prevailing rates in the area.").

The rates charged by attorneys for BlueRadios are as follows:

| Attorney Timekeeper | 2022 Rate | 2023 Rate |
|---|---|---|
| Stanley M. Gibson | $895/hr | $945/hr |
| Lena Streisand | $460/hr | $515/hr |
| Julian Oscar Alvarez | $420/hr | $445/hr |
| David B. Seserman | $500/hr | $500/hr |
| Joseph E. Kovarik | $635/hr | $675/hr[15] |

*See* Suppl. Mot. for Att'y Fees, Ex. 1 at 3-4, Ex. 4 at 1, and Ex. 6 at 1. These rates, while on the higher end of the spectrum for Denver, are not unreasonable and are comparable to rates that have been approved in this District. *See Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita Inc.*, No. 17-cv-0304-WJM-NRN, 2021 WL 2981970, at *3 (D. Colo. July 15, 2021) (regarding as reasonable Denver-area rates of "$365 to $895 for attorneys, and $250 to $275 for

---

[15] Given the previously noted inconsistences between Mr. Kovarik's affidavit and timesheets, the lower rate of $635 per hour is used in the ultimate expense calculation below. This selection is not intended to suggest that his higher rate of $675 per hour is or is not reasonable.

12

support staff"); *see also Ramos v. Banner Health*, No. 15-cv-2556-WJM-NRN, 2020 WL 6585849, at *5 (D. Colo. Nov. 10, 2020) (approving rates ranging from $490 to $1,060 per hour). This is particularly true where, as here, between three timekeepers—Mr. Gibson, Mr. Seserman, and Mr. Kovarik—their combined legal experience comes to approximately 100 years, much of which appears to be in the specialized practice of intellectual property law. *See* Suppl. Mot. for Att'y Fees, Ex. 1 at 1, Ex. 4 at 1, and Ex. 6 at 1. In sum, I find the hourly rates for BlueRadios' attorneys to be reasonable.

### III.     Associated Costs

Costs that would be directed to the client are appropriate to include in a sanctions award. *See Cuesta*, 2023 WL 3626517, at *27 ("Further, 'other expenses may be included in an attorneys [sic] fee award if such expenses are typically billed in addition to the attorney's hourly rates.'") (quoting *Casey v. Williams Prod. RMT Co.*, 599 F. Supp. 2d 1253, 1255 (D. Colo. 2009)). Indeed, the Sanction Order refers to "expenses" as opposed to "fees" so as to include related costs. *See* Sanctions Order at 18. However, I also indicated that those expenses must be "reasonable." *Id*. And "[u]ltimately, the burden of proving the reasonableness of an expert's fees lies with the party seeking reimbursement." *Fiber Optic Designs, Inc. v. New England Pottery, LLC*, 262 F.R.D. 586, 589 (D. Colo. 2009).

For the purposes of calculating an appropriate award for expenses, I discount costs attributable to a category of work in the same manner as attorney fees incurred in the same category of work. I do not undertake a full analysis of printing jobs, travel expenses for motions argument, or other immediately related and presumptively reasonable costs. However, because expert reports are more resource-intensive and a distinct obligation, I review them separately below.

13

*Expert Reports*

BlueRadios claims that as "a direct consequence of Kopin's delayed and untimely productions, BlueRadios had to reengage its technical and damages experts to supplement their expert reports to take into account the untimely produced documents." Supp. Mot. for Att'y Fees at 5. In response, Kopin counters that "the 'untimely produced documents' to which BlueRadios refers were produced in response to the Reopening Discovery Order[16] and would have required review and incorporation into expert reports regardless of the Sanctioned Conduct."[17] *See* Kopin's Obj. to Mot. for Att'y Fees at 5-6. BlueRadios contends that the only reason it reengaged its experts was to issue "supplemental expert reports [that] were limited to incorporation of the untimely produced documents and modifications to the previously produced opinions based upon the untimely produced documents." Suppl. Mot. for Att'y Fees at 5. Despite this assertion, BlueRadios does not show convincingly how exactly this additional expert review would not have happened but for the untimeliness or disorganization of these documents. Indeed, the descriptions in the expert invoices do not permit me to draw the conclusion that all or most work done was a direct consequence of the sanctionable conduct of Kopin. However, based on my experience generally, my knowledge of the timeline of this case, and an exhaustive review of the timesheets submitted by BlueRadios, I find that there is an appreciable level of added difficulty for the experts attributable to Kopin's misconduct. Accordingly, I consider 20 percent

---

[16] Kopin refers to the Order on Defendant's Motion for Partial Summary Judgment and Plaintiff's Motions for Discovery Sanctions (ECF No. 382).

[17] "Sanctioned Conduct" Kopin defines, based on my rulings in the Sanctions Order, as:
  1. Kopin's belated disclosure and production of documents from devices Mr. Jacobsen used while working for Kopin . . . ;
  2. Kopin's failure to produce materials later produced by third-party Leonardo DRS . . . ;
  3. Kopin's failure to adequately describe some of its productions . . . .

Opp'n to Suppl. Mot. for Att'y Fees at 2.

of the hours spent on expert review compensable, or more exactly, 50.36 of 251.8 hours for Dr. Hernandez' work and 28.12 hours of 140.6 hours for Mr. Pedigo's work.[18]

As to the reasonableness of the rates charged, Dr. Hernandez billed his time at $475 per hour, and Mr. Pedigo billed his time at $505 per hour and $540 per hour. *See* Suppl. Mot. for Att'y Fees, Ex. 8 at 3, 11. These experts were tendered and accepted by this Court and have ample qualifications to opine on technical and damages-related subject matter, respectively. Moreover, although this fact is not determinative, their opposing expert counterparts billed at appreciably higher rates. Dr. Phinney, the expert opining on technical matters for Kopin, testified that he billed his time at $725 per hour. Dr. Schoettelkotte, the damages expert for Kopin, testified that he billed his time at $675 per hour. Thus, I find the hourly rates for Dr. Hernandez and Mr. Pedigo are reasonable.

## EXPENSES AWARD

Having narrowed the hours worked to those necessitated by Kopin's misconduct and having determined the reasonableness of the rates of the timekeepers who logged those hours, I find the remainder of calculated attorney fees satisfy the lodestar amount. I, therefore, award the attorney fees in the following manner:

|  | Document Review | Third-Party Discovery | Depositions | Motions for Sanctions |
|---|---|---|---|---|
| Stanley M. Gibson | $8,963.21 | $6,898.50 | $34,258.60 | $24,578.79 |
| Lena Streisand | $11,288.96 | $14,986.50 | $1,060.90 | $31,666.29 |

---

[18] Although technically under the umbrella of costs and not attorney fees, costs must nevertheless also be reasonable. As with law firm timekeepers, without qualifications or other information indicating how administrative staff for experts warrant charging the rates they charge, I cannot determine if they are over- or under-billing. *Cf.* D.C.COLO.LCivR 54.3(b). Since that information is not present, I cannot award compensation for anyone other than Dr. Hernandez and Mr. Pedigo, whose qualifications have been offered and entered into the record.

| | | | | |
|---|---|---|---|---|
| Julian Oscar Alvarez | $1,016.75 | $267.00 | $0.00 | $324.21 |
| David B. Seserman | $17,675.00 | $900.00 | $6,420.00 | $33,107.14 |
| Joseph E. Kovarik | $3,869.00 | $2,970.00 | $1,663.70 | $1,244.60 |
| | | | TOTAL | $203,159.15 |

Additionally, I award the reasonable costs associated with each category of work. The breakdown for such cost reimbursement is as follows:

| | Document Review | Third-Party Discovery | Depositions | Motions for Sanctions | Expert Reports |
|---|---|---|---|---|---|
| Costs | $503.99 | $4,538.73 | $4,710.54 | $34.52 | $19,011.40 |
| | | | | TOTAL | $28,799.19 |

In total, BlueRadios is entitled to $203,159.15 in attorney fees[19] and $28,799.19 in associated costs to compensate it for Kopin's misconduct. Consistent with my guidance above, BlueRadios' Motion for Attorney Fees (ECF No. 489) is DENIED AS MOOT and BlueRadios' Supplemental Motion for Attorney Fees (ECF No. 651) is GRANTED IN PART and DENIED IN PART.

DATED this 25th of April, 2024.

_____
JOHN L. KANE
SENIOR U.S. DISTRICT JUDGE

---

[19] BlueRadios has received a jury verdict, resolving most issues in its favor. Based on the jury's findings, it is possible BlueRadios may seek to recover all attorney fees in this case. I decline to comment here on the merit of such a motion and this consideration does not factor into my analysis.