IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02052-JLK

BLUERADIOS, INC.,

      Plaintiff,

v.

KOPIN CORPORATION,

      Defendant.

---

**PLAINTIFF BLUERADIOS, INC.'S OPPOSITION TO DEFENDANT KOPIN CORPORATION, INC.'S MEMORANDUM IN SUPPORT OF ITS ORAL MOTION FOR JUDGMENT AS A MATTER OF LAW UNDER RULE 50(b) OR IN THE ALTERNATIVE FOR A NEW TRIAL UNDER FEDERAL RULE OF CIVIL PROCEDURE 59**

---

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...........................................................................................................7

II.     JMOL IS CAUTIOUSLY AND SPARINGLY GRANTED...........................................11

III.    THE COURT SHOULD DENY KOPIN'S JMOL MOTION..........................................12

    A.      Substantial Evidence Supports the Verdict on BlueRadios' Breach of Contract Claim......................................................................................................12

    B.      Substantial Evidence Supports the Verdict on BlueRadios' Claim for Breach of the Duty of Good Faith and Fair Dealing..............................................16

    C.      Substantial Evidence Supports Correcting the Inventors Named on the Proxy Patent.............................................................................................................20

    D.      Substantial Evidence Supports the Verdict on BlueRadios' Claims for Misappropriation of Trade Secrets Under CUTSA and the DTSA ......................21

IV.     KOPIN HAS NOT MET ITS BURDEN ON A JMOL MOTION TO OVERTURN THE JURY VERDICT ON ITS STATUTE OF LIMITATIONS DEFENSE ......................................................................................................................29

V.      THE JURY VERDICT DOES NOT CONSTITUTE AN IMPERMISSIBLE DOUBLE RECOVERY AND KOPIN WAIVED ANY ARGUMENT OTHERWISE ...............................................................................................................31

    A.      BlueRadios' Contract Claims Concern Distinct Injuries.................................32

    B.      The CUTSA and DTSA Damages are Not Duplicative.........................................34

VI.     KOPIN IS NOT ENTITLED TO A NEW TRIAL ...........................................................35

VII.    THE COURT SHOULD AWARD BLUERADIOS DISGORGEMENT AND EXEMPLARY DAMAGES IN A MANNER CONSISTENT WITH THE VERDICT ..................................................................................................................35

VIII.   CONCLUSION................................................................................................................36

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABQ Uptown, LLC v. Davide Enterprises, LLC*,
No. CV 13-0416  JB/KK, 2015 WL 8364799 (D.N.M. Oct. 19, 2015)...................................17

*Aero Prod. Int'l, Inc. v. Intex Recreation Corp.*,
466 F.3d 1000 (Fed. Cir. 2006)...........................................................................................33

*Amoco Oil Co. v. Ervin*,
908 P.2d 493 (Colo. 1995)...................................................................................................16

*United States ex rel. Barrick v. Parker-Migliorini Int'l, LLC*,
79 F.4th 1262 (10th Cir. 2023) ...........................................................................................11

*Bollinger v. Rheem Mfg. Co.*,
381 F.2d 182 (10th Cir. 1967) .............................................................................................31

*Burke v. Regalado*,
935 F.3d 960 (10th Cir. 2019) .............................................................................................11

*Cartel Asset Mgmt. v. Ocwen Fin. Corp.*,
249 F. App'x 63 (10th Cir. 2007) ..................................................................................27, 28

*Century Ref. Co. v. Hall*,
316 F.2d 15 (10th Cir. 1963) ...............................................................................................14

*EarthInfo, Inc. v. Hydrosphere Res. Consultants, Inc.*,
900 P.2d 113 (Colo. 1995).............................................................................................19, 35

*EcoFactor, Inc. v. Google LLC*,
No. 2023-1101, 2024 WL 2807318 (Fed. Cir. June 3, 2024).................................................35

*F.D.I.C. v. Schuchmann*,
235 F.3d 1217 (10th Cir. 2000) ...........................................................................................31

*Fleet Engineers, Inc. v. Mudgard Techs., LLC*,
No. 2022-2001, 2023 WL 5219773 (Fed. Cir. Aug. 15, 2023) .............................................10

*Gates Rubber Co. v. Bando Chem. Indus., Ltd.*,
9 F.3d 823 (10th Cir. 1993) .................................................................................................21

*Gognat v. Ellsworth*,
224 P.3d 1039 (Colo. App. 2009) ..........................................................................34

*Hess v. Advanced Cardiovascular Sys. Inc.*,
106 F.3d 976 (Fed. Cir. 1997) ..............................................................................20

*HotSpot Therapeutics, Inc. v. Nurix Therapeutics, Inc.*,
No. 22-CV-04109-TSH, 2023 WL 1768120 (N.D. Cal. Feb. 3, 2023) ...................24

*Javo Bev. Co. v. Cal. Extraction Ventures, Inc.*,
No. 19-Civ-1859, 2019 WL 6467802 (S.D. Cal. Dec. 2, 2019) ............................31

*Lexton-Ancira Real Est. Fund, 1972 v. Heller*,
826 P.2d 819 (Colo. 1992) (en banc) ....................................................................33

*Macuarie Bank Ltd. v. Knickel*,
793 F.3d 926 (8th Cir. 2015) ................................................................................24

*Margolies v. McCleary, Inc.*,
447 F.3d 1115 (8th Cir. 2006) ..............................................................................19

*Marquardt v. Perry*,
200 P.3d 1126 (Colo. App. 2008) ..........................................................................12

*Marshall v. Columbia Lea Reg'l Hosp.*,
474 F.3d 733 (10th Cir. 2007) .........................................................................12, 15

*Martin v. Cuny*,
887 F. Supp. 1390 (D. Colo. 1995) ........................................................................24

*McCollam v. Sunflower Bank, N.A.*,
598 F. Supp. 3d 1104 (D. Colo. 2022) ..................................................................18

*McKinnis v. Fitness Together Franchise Corp.*,
No. 10-CV-02308-RPM, 2010 WL 5056666 (D. Colo. Dec. 6, 2010) ...................18

*Miller v. Bank of N.Y. Mellon*,
379 P.3d 342 (Colo. App. 2016) ............................................................................18

*Mountain Dudes, LLC v. Split Rock, Inc.*,
No. 2:08-CV-940-CW, 2011 WL 1549425 (D. Utah Apr. 20, 2011) .....................19

*N. Am. Specialty Ins. Co. v. Britt Paulk Ins. Agency, Inc.*,
579 F.3d 1106 (10th Cir. 2009) ............................................................................19

*Nadendla v. WakeMed*,
  24 F.4th 299 (4th Cir. 2022) ..........................................................................19

*Reingold v. Swiftships, Inc.*,
  126 F.3d 645 (5th Cir. 1997) .........................................................................24

*Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*,
  563 F.3d 1358 (Fed. Cir. 2009)................................................................34, 35

*Stroup v. United Airlines, Inc.*,
  26 F.4th 1147 (10th Cir. 2022) ..........................................................11, 12, 28

*United Phosphorus, Ltd. v. Midland Fumigant, Inc.*,
  205 F.3d 1219 (10th Cir. 2000) ......................................................................32

*United Phosphorus, Ltd. v. Midland Fumigant, Inc.*,
  21 F. Supp. 2d 1247 (D. Kan. 1998), aff'd, 205 F.3d 1219 (10th Cir. 2000) ...................31, 32

*Univ. of Colo. Found., Inc. v. American Cyanamid*,
  880 F. Supp. 1387 (D. Colo. 1995)..................................................................30

*Univ. of Colo. Found. v. American Cyanamid Co.*,
  216 F. Supp. 2d 1188 (D. Colo. 2002).............................................................19

*W. Conf. Resorts, Inc. v. Pease*,
  668 P.2d 973 (Colo. App. 1983) .....................................................................15

*W.R. Hansen v. LKA Gold Inc.*,
  816 F. App'x 259 (10th Cir. 2020) ..................................................................11

*Watson v. Cal-Three, LLC*,
  254 P.3d 1189 (Colo. App. 2011) ...................................................................19

**Statutes**

18 U.S.C. § 1839(3) .................................................................................................21

Colo. Rev. Stat. § 4-2-606 ......................................................................................15

Colo. Rev. Stat. § 7-74-102(4).................................................................................21

Colorado Uniform Trade Secrets Act .................................................................. *passim*

Defend Trade Secrets Act ..................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 50(a) ...........................................................................................11, 15, 31

Fed. R. Civ. P. 50(b) ...................................................................................................7, 12

Fed. R. Civ. P. 59.............................................................................................................7

Plaintiff BlueRadios, Inc. ("BlueRadios") submits the following opposition to Defendant Kopin Corporation, Inc.'s ("Kopin") memorandum in support of its oral motion for judgment as a matter of law ("JMOL") under Fed. R. Civ. P. 50(b) or in the alternative for a new trial under Fed. R. Civ. P. 59 (ECF No. 745).[1]

## I.    **INTRODUCTION**

After five weeks of trial and four days of deliberations, the jury in this case returned a unanimous verdict in BlueRadios' favor on all of BlueRadios' claims.  (ECF No. 726).  On BlueRadios' breach of contract claim, the jury awarded BlueRadios $5,114 in general damages and, having found that Kopin "breached its contractual obligations through intentional and substantial wrongdoing," advised the Court to award BlueRadios $3.5 million in disgorgement damages.  (*Id.* at 4).  On BlueRadios' claim for breach of the duty of good faith and fair dealing, the jury awarded BlueRadios $600,000 in general damages and, having found that Kopin "breached its contractual obligations through intentional and substantial wrongdoing," advised the Court to award BlueRadios $7.2 million in disgorgement damages.  (*Id.* at 6).  On BlueRadios' CUTSA claim, the jury awarded BlueRadios $591,660 in unjust enrichment damages.  (*Id.* at 9).  On BlueRadios' DTSA claim, the jury awarded BlueRadios $3,910,466 in unjust enrichment damages.  The jury also found that Kopin misappropriated BlueRadios' trade secrets "with willfulness and malice," and advised the Court to award the maximum amount of exemplary damages— $1,183,321 under CUTSA and $7,820,932 under the DTSA.  (*Id.* at 9, 11).  The jury also found by clear and convincing evidence that inventorship of the Proxy Patent (U.S. Patent No. 8,909,296) should be corrected to include former BlueRadios employees Wilfred Tucker and John Sample as inventors.  (*Id.* at 12).  As summarized below, substantial evidence supports the jury's verdict.

---

[1] The page numbers referenced in citations to Kopin's JMOL motion (ECF No. 745) refer to those in the ECF stamp at the top of each page.

In 2007, BlueRadios and Kopin entered into a contract for the design of the Golden-i between the parties (the "Contract").  BlueRadios trusted Kopin to abide by the terms of the Contract, treat BlueRadios fairly, and handle BlueRadios' cutting-edge technology and proprietary information with the utmost confidence.  But Kopin betrayed BlueRadios' trust at every turn.  Kopin stole BlueRadios' technology and developments, gave them to third parties, and used them to garner large commercial and military contracts; Kopin affirmatively misled BlueRadios to believe the project was still under development with no units sold to avoid paying BlueRadios; and Kopin stripped BlueRadios' employees of their inventive rights and BlueRadios of its ownership rights in certain Golden-i patents based on BlueRadios' technology.

On its claim for breach of contract, BlueRadios established that Kopin breached the confidentiality provision of the Contract when it disclosed BlueRadios' confidential and proprietary information to third parties without BlueRadios' knowledge or consent.  At trial, Kopin did not ask a single witness about the confidentiality provision of the Contract.  Kopin also breached the Contract and addendum thereto (the "Addendum") by failing to pay BlueRadios royalties, despite BlueRadios delivering ten fully functional, stable and consistently operating Gen 2 Golden-i PCBs to Kopin as the Addendum required.  Further, Kopin breached the contract by failing to name BlueRadios' employees as inventors and BlueRadios as a co-owner on patents that included BlueRadios' inventive contributions, as the Contract required.[2]

BlueRadios also presented substantial evidence that Kopin breached the implied duty of good faith and fair dealing ("the implied covenant").  Instead of accepting or rejecting the Gen 2 PCBs as the Addendum required, Kopin took the PCBs and used them to build its wearable business without BlueRadios, thereby excluding BlueRadios from the benefits of BlueRadios'

---

[2] *See* Ex. 2 (U.S. Patent No. 9,116,340); Ex. 3 (U.S. Patent No. 9,886,231); Ex. 38 (U.S. Patent No. 8,355,671 (the "Kramer Patent")); Ex. 198 (U.S. Patent No. 8,909,296 (the "Proxy Patent")); Ex. 513 (joint motion to correct inventorship of '231 and '340 patents to add John Sample and Will Tucker as inventors); Ex. 427 (Order granting joint motion).

work on the Golden-i Project.  Second, Kopin also misused its discretion to seek patent

protection by stripping BlueRadios employees of their inventive rights on patents containing

BlueRadios' inventive contributions.  Further, Kopin changed the fundamental purpose of the

Contract from a manufacture and sale model to a licensing model.  Kopin acted in bad faith when

it affirmatively hid this change from BlueRadios.

  BlueRadios also proved that Kopin's contractual breaches were intentional and

substantial and that BlueRadios is entitled to recover disgorgement damages.  For example, John

Fan, Kopin's former CEO, refused to provide a straight answer to counsel's questions on cross

examination.  He was twice admonished by the Court, twice admonished by his own counsel,

and further threatened with exclusion before he admitted that Kopin never formally rejected

BlueRadios' delivery of the Gen 2 PCBs.  Mr. Fan also admitted that Kopin continued to use the

Gen 2 PCBs while ignoring BlueRadios' requests for acceptance, rejection, or a list of open

items.  Hong Choi, Kopin's former CTO, testified that he discussed with HBSR how to remove

BlueRadios' employees as inventors on Golden-i patents without notifying BlueRadios.

  BlueRadios also proved its claim for correction of inventorship of the Proxy Patent.[3]  Mr.

Tucker, BlueRadios' lead engineer at the time of the Golden-i Project, testified that although he

and Mr. Sample had been named as inventors on the Proxy Patent application, Kopin removed

them as inventors before the patent issued.  Mr. Tucker testified that he and Mr. Sample worked

on the proxy-switching gateways for the Proxy Patent and identified corroborating evidence.

  BlueRadios also presented substantial evidence of its claims for misappropriation of trade

secrets under the Colorado Uniform Trade Secrets Act (CUTSA) and the Defend Trade Secrets

Act (DTSA), respectively.  Mr. Tucker spent two days on the stand explaining BlueRadios' trade

secrets in painstaking detail.  Mr. Tucker and BlueRadios CEO and Founder Mark Kramer

---

[3] The jury declined to correct inventorship of the Kramer Patent (U.S. Patent No. 8,355,671) to remove Jeffrey Jacobsen.

testified to the measures BlueRadios took to keep this information confidential from its competitors.  Messrs. Tucker and Kramer, along with both parties' technical experts, testified that at the time, no other wearable computer with head-mounted display existed on the market. Kopin's former computer programmer, Chris Parkinson, testified that he delivered BlueRadios' PCBs to third parties Mistral and Ittiam without BlueRadios' knowledge or consent.  He also admitted that Mr. Jacobsen instructed him and others not to speak to BlueRadios following BlueRadios' delivery of the Gen 2 PCBs.  Numerous emails and status updates showed that Kopin ran a secret parallel engineering effort between BlueRadios and Mistral with the goal of having Mistral and Ittiam use BlueRadios' technology and PCBs as references for the Gen 3 Golden-i.  BlueRadios' technical expert, Dr. Edwin Hernandez, and Kopin's own discovery admission, proved Kopin used BlueRadios' trade secrets by tracing each of BlueRadios' contributions to the Golden-i to later generations and other later Kopin products.

BlueRadios' damages expert, Mark Pedigo, presented BlueRadios' unpaid royalty damages and disgorgement damages to the jury.

BlueRadios also rebutted Kopin's statute of limitations defense.  Mr. Kramer testified that he was unaware of Kopin's wrongdoing before 2013.  He also testified that he ran into Mr. Fan at trade shows and, up until at least early 2015, Mr. Fan represented to him that the Golden-i was forthcoming and had not yet generated any sales.   Further, Kopin actively concealed information on the Golden-i Project from BlueRadios by instructing its employees and third parties not to share information with BlueRadios.

Kopin's JMOL motion amounts to no more than a disagreement with the jury verdict, which is not grounds for JMOL or a new trial.  *See Fleet Engineers, Inc. v. Mudguard Techs., LLC*, No. 2022-2001, 2023 WL 5219773, at *8 (Fed. Cir. Aug. 15, 2023) ("disagreement with the jury's findings . . . is insufficient to overturn a jury verdict that was otherwise supported by substantial evidence").  This Court has already determined "that a reasonable jury would have a

legally sufficient evidentiary basis to find for BlueRadios on nearly all of the issues identified by Kopin."[4]  Tr. 2733:15–23 (Kane, J.).  Kopin seeks to have the Court impermissibly determine witness credibility and re-weigh the evidence.  Kopin also asserts new arguments that BlueRadios' claims and damages are duplicative.  Kopin waived these challenges when it failed to assert them in its Fed. R. Civ. P. 50(a) motion.  BlueRadios requests that the Court deny Kopin's motion and enter judgment consistent with the jury's verdict.

## II.    <u>JMOL IS CAUTIOUSLY AND SPARINGLY GRANTED</u>

The Tenth Circuit "ha[s] spoken of a general reticence to grant JMOL motions" because they deprive the non-movant of a determination of facts by a jury.  *Stroup v. United Airlines, Inc.*, 26 F.4th 1147, 1157 (10th Cir. 2022).  Thus, "JMOL is 'cautiously and sparingly granted.'" *W.R. Hansen v. LKA Gold Inc.*, 816 F. App'x 259, 266 (10th Cir. 2020).

On a motion for JMOL, the court "take[s] all reasonable inferences in favor of the nonmovant [] and disregard[s] all evidence favorable to [the movant] that the jury is not required to believe."  *United States ex rel. Barrick v. Parker-Migliorini Int'l, LLC*, 79 F.4th 1262, 1270 (10th Cir. 2023).  Accordingly, "[t]he quantum of evidence necessary to defeat a JMOL motion is slight" and "justifying the grant of a JMOL motion is difficult in practice." *Stroup*, 26 F.4th at 1156–57.  The court must deny a motion for JMOL if, viewing the evidence in the light most favorable to the non-movant, there is substantial evidence to support a verdict. *Id.* at 1157. "'Substantial evidence' is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, *even if different conclusions also might be supported by the evidence*.'" *Id.* In other words, a "verdict must stand unless it is clearly, decidedly, or overwhelmingly against the weight of the evidence." *Burke v. Regalado*, 935 F.3d 960, 991 (10th Cir. 2019).

---

[4] The Court reserved judgment on those issues "that most evidently should be decided by the jury," including "whether Kopin engaged in intentional wrongdoing, whether it should have known any trade secrets were acquired by improper means, and whether it willfully or maliciously misappropriated trade secrets."  Tr. 2733:15–23 (Kane, J.).

Therefore, on a JMOL motion, the court's review of the evidence is limited.  The court "do[es] not retry issues, second guess the jury's decision-making, or assess the credibility of witnesses and determine the weight to be given their testimony, as [i]t is the province of the jury, and not th[e] court, to resolve conflicts in the evidence." *Stroup*, 26 F.4th at 1157.

A renewed motion for JMOL under Fed. R. Civ. P. 50(b) is limited to the arguments and grounds for relief asserted in the movant's pre-verdict JMOL motion.  *See Marshall v. Columbia Lea Reg'l Hosp.*, 474 F.3d 733, 738–39 (10th Cir. 2007).

## III.    THE COURT SHOULD DENY KOPIN'S JMOL MOTION

The Court should deny Kopin's JMOL motion because substantial evidence supports BlueRadios' claims for breach of contract, breach of the duty of good faith and fair dealing, including substantial and intentional breaches thereof, correction of inventorship, and misappropriation of trade secrets under CUTSA and the DTSA.

### A.    Substantial Evidence Supports the Verdict on BlueRadios' Breach of Contract Claim

To succeed on its breach of contract claim, BlueRadios had to prove (1) the existence of a contract; (2) that BlueRadios performed its obligations under the contract or that its nonperformance was justified; and (3) that Kopin failed to perform its obligations under the contract.  *See Marquardt v. Perry*, 200 P.3d 1126, 1129 (Colo. App. 2008); Instruction No. 3.1.

First, the existence of the Contract and Addendum is undisputed.  *See* Ex. 53, 56. Second, BlueRadios satisfied its obligations under the Contract (to maintain confidentiality) and the Addendum (to deliver the Gen 2 PCBs).  For example, Mr. Kramer testified that he shipped the PCBs himself after subjecting the PCBs to a full suite of testing.  Tr. 423:23–424:4. Mr. Tucker testified to each of the tests that he and Mr. Sample conducted and the passing results. Tr. 1057:10–14, 1057:18–1064:18.  Mr. Pombo testified that after Kopin received the PCBs, he dropped the PCBs off of a six-foot ladder and they still worked.  Tr. 2169:12–23.  BlueRadios

also showed the jury multiple exhibits wherein Kopin employees described the boards as "monkey-proof," "fully operational," and "consistently operating for 6 months" after Kopin received them. *See, e.g.*, Ex. 58, 60, 186, 194, 1177. Further, Mr. Pombo testified that the boards were "production ready." Tr. 2182:1–4.

Third, the jury reasonably concluded that Kopin breached its obligations under the Contract and Addendum. For example, it is undisputed that Kopin never paid royalties to BlueRadios as the Addendum requires. Tr. 392:14–15, 411:24–25 (Kramer), 2074:9–11 (Sneider). Further, the confidentiality provision of the Contract provides that the parties "shall not use each others [*sic*] confidential information for any purpose other than the purpose contemplated herein"—the design of Golden-i between BlueRadios and Kopin. Ex. 53 at 6. Kopin breached the Contract when, among other things, it provided BlueRadios' Gen 2 PCBs and proprietary and confidential technology to third parties without BlueRadios' knowledge or consent. *See* Tr. 543:10–13 (Kramer) (testifying he was unaware that Kopin gave BlueRadios' PCBs to Mistral and Ittiam until discovery), 2394:13–15 (Parkinson) (admitting he delivered PCBs to Mistral and Ittiam); Ex. 195, 196, 214, 225, 344, 345, 352, 560, 572, 1905.

Further, the jury found that Kopin had an obligation under the Contract to credit BlueRadios for its contributions to the Golden-i patents by naming BlueRadios employees as inventors where appropriate. (ECF No. 726 at 2). But Mr. Choi testified that he made no effort to separate BlueRadios' intellectual property and developments from that of Kopin, that all IP and developments were commingled. Tr. 1401:25–1402:12. BlueRadios presented evidence to the jury that, after the lawsuit was filed, Kopin agreed to correct inventorship of two patents because Kopin failed to name Messrs. Tucker and Sample as inventors thereon. Ex. 427, 513. Mr. Tucker also testified regarding his and Mr. Sample's contributions to the Proxy Patent. Tr. 1046:14–1048:2; Ex. 42, 115, 1590.

The jury similarly found that Kopin agreed to name BlueRadios as a co-owner of patents incorporating BlueRadios' technology. (ECF No. 726 at 2). BlueRadios presented evidence at trial that Kopin had not assigned BlueRadios ownership rights in patents that name or have been corrected to add BlueRadios employees as inventors. Tr. 473:14–19, 476:17–19, 477:21–23, 478:2–7 (Kramer); *see also supra*, note 1. Therefore, substantial evidence supports the verdict in favor of BlueRadios on its claim for breach of contract.

### 1.    The Verdict is Not Against the Weight of the Evidence

Kopin failed to meet the difficult burden of showing it is entitled to JMOL.[5] First, Kopin does not address the confidentiality provision of the Contract, apparently because BlueRadios did not "present any such theory of breach in the pretrial order." (ECF No. 745 at 13 n.1, 14 n.4). The pretrial order is "liberally construed to embrace all of the legal and factual theories inherent in the issues defined therein." *Century Ref. Co. v. Hall*, 316 F.2d 15, 20 (10th Cir. 1963). Kopin's cited authority is not only not binding on this Court but also inapposite because it concerns undisclosed legal issues. (*See* ECF No. 745 at 13 n.1 (citing *Acorn v. City of Phoenix*, 798 F.2d 1260, 1272 (9th Cir. 1986) (holding party could not challenge legal issue of

---

[5] Kopin appears to have misread the jury verdict on patent ownership and inventorship. Kopin incorrectly asserts that the jury did not find that Kopin "fail[ed] to name BlueRadios employees as inventors on patents protecting Golden-i technology," (ECF No. 745 at 12–13) but the jury verdict clearly states that Kopin had an obligation to "[n]ame BlueRadios employees as inventors on patents that protect Golden-i technology" and that Kopin breached its obligations under the Contract (ECF No. 726 at 2). The jury also found in favor of BlueRadios on its claim for correction of inventorship of the Proxy Patent. (*See id.* at 12). As for ownership, the jury found that Kopin was obligated to "[a]ssign BlueRadios sole ownership of patents that incorporate BlueRadios' technology" and "[a]ssign BlueRadios co-ownership of patents that incorporate Golden-i technology" (*id.* at 2) and that Kopin breached its obligations under the Contract (*id.*). BlueRadios presented evidence at trial that Kopin has not assigned BlueRadios ownership rights in patents that name BlueRadios inventors (and therefore incorporate BlueRadios' technology). *See supra*, note 1. The jury was asked, "Should Kopin assign BlueRadios co-ownership of patents containing the [figures listed on page 3 of the verdict form]?" (*Id.* at 3). The jury checked the "no" box in response. (*Id.*).

effect of statute because not disclosed in pretrial order)).  To the extent there was any merit to this argument, Kopin waived it by failing to assert the argument when it moved for JMOL under Rule 50(a).  *See* Tr. 2687:14–2709:3, 2724:17–2727:18 (Goldemberg); *Marshall*, 474 F.3d at 738–39 (10th Cir. 2007).

Kopin's argument that it did not owe BlueRadios any royalties because Kopin did not affirmatively accept the Gen 2 PCBs is also wrong.  "Acceptance of goods occurs when the buyer signifies to the seller that he will retain the goods, fails to make an effective rejection, or does any act inconsistent with the seller's ownership." *W. Conf. Resorts, Inc. v. Pease*, 668 P.2d 973, 976 (Colo. App. 1983); Colo. Rev. Stat. § 4-2-606.  This Court already determined that "the record contains substantial evidence that Kopin did not relay any objection to or explicit rejection to the gen two PCBs, which could legitimately be understood to mean it accepted them." Tr. 2733:25–2734:8 (Kane, J.).  It is undisputed that Kopin never rejected and/or returned the PCBs, despite Mr. Kramer's letters requesting acceptance, rejection and return of the PCBs, or a list of outstanding issues with the PCBs.  *See* Tr. 1291:14–16, 1335:8–10, 18–20; 1375:17–1376:19 (Fan); 2075:24–2076:11 (Sneider); 431:6–16 (Kramer); Jacobsen 133:03–06 (Jul. 26, 2018); Ex. 100, 101, 102, 120, 331.  Kopin's failure to reject the PCBs therefore constituted acceptance and not paying BlueRadios was a breach of the Contract.

Finally, Kopin's argument that BlueRadios failed to establish its damages is incorrect. As the Court ruled on Kopin's oral motion, "monetary damages is not a required element of a breach of contract claim under Colorado law."  Tr. 2734:21–23 (Kane, J.).  Even so, BlueRadios' damages expert, Mark Pedigo, calculated unpaid royalty damages and walked the jury through his analysis and calculation of disgorgement damages.  *See* Tr. 1824:7–1865:15 (Pedigo), 2734:23–25 ("the jury heard evidence of unpaid royalties, and BlueRadios is otherwise seeking disgorgement damages") (Kane, J.); Ex. 1950.  The jury's award of $5,114 in general damages for breach of contract correlates directly with Mr. Pedigo's royalty calculation for Golden-i units

sold, which was $5,114.  Ex. 1950.  Further, BlueRadios sought disgorgement of Kopin's profits and was therefore not required to present damages on "breach theories (2)-(3)" as Kopin incorrectly asserts.  (ECF No. 745 at 13 n.2).  Accordingly, the jury's verdict on BlueRadios' breach of contract claim should stand and the Court should enter final judgment consistent with the jury's findings.

**B.**    **Substantial Evidence Supports the Verdict on BlueRadios' Claim for Breach of the Duty of Good Faith and Fair Dealing**

To prove its claim for breach of the implied covenant, BlueRadios had to show that (1) BlueRadios and Kopin entered into a contract; (2) BlueRadios performed its obligations under the contract; (3) that Kopin prevented BlueRadios from enjoying the benefits of the contract; and (4) that, in so doing, Kopin misused the discretion conferred by the contract to act dishonestly or to act outside of accepted commercial practices to deprive BlueRadios of some or all of the benefits of the contract.  Instruction No. 3.5; *see also Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498–99 (Colo. 1995).

It is undisputed that the parties entered into a Contract.  Ex. 53, 56.  BlueRadios performed its obligations under the Contract and Addendum, *see supra*, § III(A), and Kopin prevented BlueRadios from enjoying the benefits thereof.  For example, Kopin misused the discretion conferred on Kopin by the Addendum when it refused to accept or reject the Gen 2 PCBs.  Mr. Sneider testified that under the Addendum, Kopin had to accept or reject the PCBs. Tr. 2074:16–17.  Mr. Sneider, Mr. Fan, and Mr. Jacobsen admitted that Kopin neither accepted nor rejected the PCBs and ignored correspondence from Mr. Kramer requesting that they do so. *See* Ex. 68, 100, 120; Tr. 1271:14–19, 1291:14–16, 1335:8–10, 15–20 (Fan), 1980:11–24, 2074:14–2076:11 (Sneider); Jacobsen Dep. 334:8–9, Mar. 21, 2023.  Instead of accepting or rejecting and returning the PCBs, Kopin used them without paying BlueRadios.  Tr. 1232:25–

1233:2 (Fan); Jacobsen Dep. 126:9–13, Jul. 26, 2017; Jacobsen Dep. 333:8–16, 334:10–14, Mar.
21, 2023.  That is bad faith.

     Kopin also breached the implied covenant when it ignored the confidentiality provision
of the Contract, despite the express language stating that such disregard would harm BlueRadios.
*See supra*, § III(A); *infra*, § III(D); Ex. 53 at 6; *ABQ Uptown, LLC v. Davide Enterprises, LLC*,
No. CV 13-0416 JB/KK, 2015 WL 8364799, at *30 (D.N.M. Oct. 19, 2015) (breach of implied
covenant includes "affronts where the breaching party is consciously aware of, and proceeds
with deliberate disregard for, the potential of harm to the other party").

     Substantial evidence also supports the jury's inference that Kopin misused its discretion
under the Contract to seek patent protection of inventions incorporating BlueRadios' technology.
BlueRadios agreed to this provision of the Contract because it trusted Kopin.  Tr. 447:20–448:4
(Kramer).  But Kopin failed to properly include Messrs. Tucker and Sample on U.S. Patent Nos.
'340, '231, and '296.  Ex. 2, 3, 198, 427, 513.  Mr. Choi testified that he discussed with HBSR
methods for "handling" the removal of BlueRadios' claims from patents in a manner that would
not alert BlueRadios' inventors.  Tr. 1414:7–1415:9; Ex. 32.  Mr. Choi also testified that he
wrote emails to Mr. Jacobsen expressing his desire for Kopin to have sole ownership of the
Kramer Patent. Tr. 1412:1–10; Ex. 68.  As this Court has already determined, "if the jury finds
that certain contributors are deliberately or carelessly left off patent applications, such an action .
. . certainly undermines the spirit of good faith and fair dealing." Tr. 2735:15–19 (Kane, J.).

     Finally, the purpose of the Contract was the design of the Golden-i between Kopin and
BlueRadios.  Ex. 53.  The Contract anticipated that Kopin would manufacture and sell Golden-i
devices.  *Id.*  But "[a]t some point, Kopin pivoted from product manufacturing and sales of
Golden-i products to a licensing model."  ECF No. 382 at 7; Tr. 1371:1–2 (Fan), 1422:7–16
(Choi), 2186:12–19 (Pombo).  Kopin took affirmative actions to keep this information from
BlueRadios.  *See* Ex. 189 ("do not convey any more information to BlueRadios"), 193 ("Let

them eat – static !"), 1536 ("So, as Sargent Shultz would say, 'I see nothinggggg, I know nothinggggg'"), 1587 ("this is the WSJ drill").  "Kopin neither terminated the Contract nor communicated its new business model to BlueRadios."  *Id.* at 8; Tr. 1297:1–9, 1328:2–4, 1330:11–14 (Fan), 2099:17–22 (Sneider).  BlueRadios presented substantial evidence of Kopin's revenue, costs, and profits.  Ex. 1950.

      Contrary to Kopin's assertions (ECF No. 745 at 14–15), the jury verdict does not "rewrite" the Contract.  Kopin cites to a number of cases—which are inapposite to this case— wherein the plaintiff's claim for breach of the implied covenant failed because the plaintiff had no reasonable expectation of the recovery it sought.  *See McCollam v. Sunflower Bank, N.A.*, 598 F. Supp. 3d 1104, 1114 (D. Colo. 2022) (dismissing claim because theory of breach directly contradicted express terms of contract); *McKinnis v. Fitness Together Franchise Corp.*, No. 10-CV-02308-RPM, 2010 WL 5056666, at *3 (D. Colo. Dec. 6, 2010) (dismissing plaintiff's claim because contract gave defendant right of first refusal); *Miller v. Bank of N.Y. Mellon*, 379 P.3d 342, 349 (Colo. App. 2016) (dismissing breach of implied covenant claim because plaintiff could not recover for defendant's actions regarding loan modifications where contract did not mention loan modifications).  Here, BlueRadios reasonably expected that Kopin would keep BlueRadios' confidential information confidential, reasonably expected that Kopin would accept or reject the PCBs, properly seek patent protection, and keep BlueRadios apprised of Golden-i sales.

      BlueRadios also proved its damages for breach of the implied covenant separate from those for breach of contract.  Mr. Pedigo presented evidence of $829,412 in total unpaid royalty damages. Ex. 1950.  $5,114 of those were for unpaid royalties on units sold that were labelled Golden-i in Kopin's internal documents.  *Id.*  One reasonable inference is that the jury specifically awarded the $5,114 in unpaid royalties on labelled Golden-i units to BlueRadios as general damages for breach of contract under the addendum.  (ECF No. 726 at 4).  The jury then determined that BlueRadios was entitled to recover $600,000 of the remaining unpaid royalties

for Kopin's breach of the implied covenant because Kopin disregarded the purpose of the contract and collected money on products that were not labelled Golden-i units but incorporate the Golden-i technology.[6]  Damages for both contract claims are reasonable and within the range of evidence. *See N. Am. Specialty Ins. Co. v. Britt Paulk Ins. Agency, Inc.*, 579 F.3d 1106, 1113 (10th Cir. 2009).

### 1.    Kopin's Breaches were Substantial and Intentional

Substantial evidence supports the jury's finding that Kopin's contractual breaches were substantial and intentional and that Kopin's actions warrant disgorgement damages. For example, the jury could have reasonably inferred that Kopin took affirmative steps to avoid paying BlueRadios in breach of the Contract by failing to accept or reject the PCBs, ignoring the confidentiality provision of the Contract, and/or intentionally hiding from BlueRadios that Kopin changed its business model.  *See supra*, § III(B); *See Watson v. Cal-Three, LLC*, 254 P.3d 1189, 1195 (Colo. App. 2011) (willfully breaching contract constituted intentional and substantial breach); *EarthInfo, Inc. v. Hydrosphere Res. Consultants, Inc.*, 900 P.2d 113, 120 (Colo. 1995) (allowing disgorgement where defendant failed to pay royalties on derivative product using plaintiff's inventive contributions, despite royalty obligations).  The evidence also supports a conclusion that Kopin intentionally removed BlueRadios' employees as inventors of patents

---

[6] Again, the cases cited on page 16 of Kopin's motion do not actually support reducing BlueRadios' contractual damages as Kopin improperly suggests.  For example, the Fourth Circuit in *Nadendla v. WakeMed* did not even reach the issue of double recovery.  24 F.4th 299, 308 (4th Cir. 2022) ("where, as here, the claims have been plausibly plead, the double recovery issue need not be addressed").  The Eighth Circuit in *Margolies v. McCleary, Inc.* held that the plaintiff could not recover on both its contract claims after the plaintiff admitted they were "identical" and the plaintiff's damages expert only submitted damages evidence on a theory of nonperformance.  447 F.3d 1115, 1126 (8th Cir. 2006).  The plaintiff in *Mountain Dudes, LLC v. Split Rock, Inc.*, sought damages for the difference in value of its property following the defendant's breach.  No. 2:08-CV-940-CW, 2011 WL 1549425, at *7 (D. Utah Apr. 20, 2011).  None of these cases presents similar facts as those at issue here and none of these cases deals with disgorgement damages.

despite the requirements of the Contract and the patent laws to list all rightful inventors.  *See supra*, § III(B); *Univ. of Colo. Found. v. American Cyanamid Co.*, 216 F. Supp. 2d 1188, 1200, 1205–06 (D. Colo. 2002) (disregarding inventors' "status as the equitable title holders . . . constitutes a separate and independent ground for requiring [the patent holder] to disgorge to Plaintiffs the profits it unjustly gained").

### C.    <u>Substantial Evidence Supports Correcting the Inventors Named on the Proxy Patent</u>

To succeed in correcting inventorship of the Proxy Patent, BlueRadios had to prove by clear and convincing evidence that Messrs. Tucker and Sample made significant contributions, measured against the whole patent, to at least one of the claims of the patent.  *See Hess v. Advanced Cardiovascular Sys. Inc.*, 106 F.3d 976, 980-81 (Fed. Cir. 1997).  Mr. Tucker testified that he, Mr. Sample, and Mr. Parkinson all discussed using proxy-switching gateways on the Golden-i device, just as Mr. Tucker had done previously with the GameBoy Advance.  Tr. 1046:14–1048:2. Mr. Tucker testified that Mr. Sample "pitched" this idea to Mr. Parkinson and explained to Mr. Parkinson how it would work.  *Id.*  Mr. Tucker also sent emails describing his and Mr. Sample's contributions to the Proxy Patent.  *See* Ex. 42, 115, 1590.  Additionally, Mr. Rader testified to Messrs. Sample and Tucker's contributions to the Proxy Patent and explained to the jury that, when filed, the Proxy Patent application named Messrs. Sample and Tucker as inventors.  Tr. 1521:12–1525:2; Ex. 197.  Therefore, the jury reasonably concluded that the Proxy Patent should be amended to include Messrs. Tucker and Sample as inventors.

As the Court already ruled, "[n]oting the higher standard of proof and the presumption of correct inventorship being present already, BlueRadios nevertheless presented testimony from Mr. Tucker that the 296 patent was largely contributed to by John Sample."  Tr. 2738:12–15 (Kane, J.).  Kopin's patent expert Irah Donner attempted to minimize Messrs. Tucker and

Sample's contributions as "Wi-Fi" just as Kopin does in its JMOL motion. The argument failed

before the jury, who was tasked with weighing the evidence, so it should fail here as well.

### D.    Substantial Evidence Supports the Verdict on BlueRadios' Claims for Misappropriation of Trade Secrets Under CUTSA and the DTSA

BlueRadios presented substantial evidence that Kopin misappropriated BlueRadios' trade

secrets under CUTSA and the DTSA. To prove its misappropriation claims, BlueRadios had to

establish that (1) it possessed a valid trade secret, (2) the trade secret was disclosed or used

without consent, and (3) Kopin knew, or should have known, that the trade secret was acquired

by improper means. *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 847 (10th Cir.

1993).

### 1.    BlueRadios Owned Valid Trade Secrets

Information qualifies as a trade secret if (1) it is not generally known to, or readily

ascertainable through proper means by, another person who can obtain economic value from the

disclosure or use of the information; (2) BlueRadios took reasonable measures to keep such

information secret; and (3) the information derives independent economic value, actual or

potential, from being secret. *See* 18 U.S.C. § 1839(3); Colo. Rev. Stat. § 7-74-102(4).

BlueRadios identified five distinct categories of trade secrets: (1) board support package

designed for wearable computer with head-mounted display; (2) miniaturized printed circuit

board designed for wearable computer with head-mounted display; (3) graphical user interface

designed for wearable computer with head-mounted display; (4) technological platform designed

for wireless head-mounted display platform; and (5) figures and explanations of figures

contained in certain patents on which Kopin did not name BlueRadios as a co-owner. Mr.

Tucker testified to 18 discreet trade secrets that BlueRadios contributed to the Golden-i Project

(other than those exclusive to category 5) and explained in which categories each trade secret

belongs. Tr. 928:25–944:3, Ex. 1659, 1530, 1692, 1693 (miniaturized form factor, cats. 1, 2, 4);

Tr. 944:3–952:22, 1679, 1678, 1525, 1692 (hardware architecture, cats. 1, 2, 4); Tr. 952:22–956:1, Ex. 1666 (microSD card, cats. 1, 4); Tr. 956:2-962:20, Ex. 1520, 1524, 1681A (head-mounted display drivers, cats. 1, 3, 4); Tr. 962:21–975:3, Ex. 1681B 1665, 1691 (Bluetooth communication, cats. 1, 4); Tr. 975:4–978:19, Ex. 1676A (wireless media transmission, cat. 1); Tr. 978:19–987:4, Ex. 1692, 1686C (voice recognition/noise cancellation, cats. 1, 2, 4); Tr. 987:4–991:6, Ex. 1676B (audio and video optimization for head-mounted display, cats. 1, 4); Tr. 991:7–993:24, Ex. 132 (audio-enabled virtual network computing, cats. 1, 4); Tr. 994:1–997:22, 1000:13–1001:4, Ex. 1681C, 1951 (headtracking, cats. 1, 2, 4); Tr. 1001:5–1003:14, Ex. 1681D (base software/firmware, cats. 1, 3, 4); Tr. 1003:15–1005:2, Ex. 1685 (cloud server and data storage retrieval, cats. 1, 4); Tr. 1005:3–1006:16, Ex. 1690 (Windows and Linux embedding, cats. 1, 3, 4)[7]; Tr. 1006:17–1009:10, Ex. 1686B (firmware bootloader, cats. 1, 4); Tr. 1009:14–1012:12, Ex. 1666B (USB interface and connectivity, cats. 1, 2, 4); Tr. 1012:13–1015:11–20, Ex. 1665 (head computation, cats. 1, 2, 4); Tr. 1015:21–1024:1, Ex. 1686C, 1686D (graphical user interface, cats. 1, 3, 4); Tr. 1024:2–23 (Golden-i as a whole, cats. 1–4).  Mr. Tucker explained each trade secret with great detail.  BlueRadios also explained its contributions to each of the figures in category 5.  Tr. 475:23–523:24 (Kramer).

Mr. Tucker, Mr. Kramer, and Dr. Hernandez all testified that each trade secret was not generally known or readily ascertainable when BlueRadios shared it with Kopin.  Tr. 922:22–23 (Tucker) (in 2008–2009, "[t]here was nothing on the market that matched our specification of what we were trying to accomplish"), 346:1–12 (Kramer) (no other company capable of

---

[7] Kopin mischaracterizes this trade secret and categories 1 and 4 overall to give the impression that BlueRadios seeks trade secret protection for Windows and Linux (including BlueZ and Opera) operating systems.  (*See* ECF No. 745 at 23).  Contrary to Kopin's argument, Mr. Tucker testified not that the operating systems themselves were BlueRadios' trade secrets, but that BlueRadios was the first to successfully modify those operating systems onto a miniaturized PCB for a head-mounted display and modify display drivers so that the Golden-i actually worked.  Tr. 917:8–25.

streaming video over Bluetooth in 2007), 1607:18–23 (Hernandez) ("I'm not aware of anything that resembles the Golden-i at all" that was available on the market as of December 2006). Mr. Fan admitted that when he met BlueRadios, the Golden-i was just a "dream," there was not anything on the market like it. Tr. 1372:24–1373:1. Kopin incorrectly asserts that BlueRadios' trade secrets were generally known because head-mounted displays were known in 2007, but Kopin did not rebut BlueRadios' evidence that it was the first to create a miniaturized PCB, for example, for use in a *wearable computer* with head-mounted display. Such an exercise would have been futile considering Kopin's own expert, Dr. Phinney, could not identify any wearable computer with a head-mounted display that existed on the market in 2007. Tr. 2580:25–2581:4.

Further, Messrs. Tucker and Kramer also testified to the measures that BlueRadios took to keep its trade secrets secret. For example, Mr. Kramer testified that all employees, contractors, and business partners of BlueRadios were required to sign NDAs and that BlueRadios' engineering database was only accessible from a local computer in the BlueRadios office. Tr. 609:13–610:3.[8]

Finally, Mr. Tucker testified for each discreet trade secret that the information was kept confidential because it would otherwise give BlueRadios' competitors a competitive advantage. *See, e.g.*, Tr. 925:1–4. Documentary evidence and testimony from Kopin witnesses confirmed the value of BlueRadios' trade secrets. *See* Tr. 2146:25–2147:2, 2183:13–21 (Pombo), 2393:10–23 (Parkinson); Ex. 69 (reporting Mistral back up plan saved Kopin time and money), 344 (same), 196 (giving Ittiam Gen 2 PCB would make porting to Gen 3 "quicker"), 209 (sharing negative trade secrets with Mistral to save time on trial and error), 211 (same), 560 (noting that

---

[8] Kopin incorrectly asserts that BlueRadios did not take reasonable measures to maintain secrecy of its trade secrets because BlueRadios gave Kopin discretion to file them in patents. First, that argument only applies to category 5 of BlueRadios' trade secrets. The trade secrets falling in categories 1 through 4 were not disclosed in published patents. Second, granting discretion to file patent applications does not ameliorate secrecy unless and until a trade secret is disclosed in a published patent or patent application. Kopin cites no authority holding otherwise.

giving Gen 2 boards to Mistral and Ittiam would save time spent on code and driver

development).  Therefore, BlueRadios provided substantial evidence to support the jury's finding

that BlueRadios' contributions to Golden-i were valid trade secrets.

### 2.    Kopin Misappropriated BlueRadios' Trade Secrets

To prove misappropriation, BlueRadios had to establish that Kopin acquired BlueRadios'

trade secrets by improper means or used, acquired, or disclosed them without BlueRadios'

authorization, beyond BlueRadios' authorization, or in breach of the Contract.  Instruction No.

3.12.  BlueRadios proved that Kopin committed both misappropriation by use and by disclosure.

The confidentiality provision of the Contract provides that the parties shall not use each

other's confidential information for any purpose other than the design of Golden-i between the

parties.  *See* Ex. 53.  A party who uses another party's proprietary and/or confidential

information in a manner that exceeds the scope of the latter's consent and/or authorization can be

liable for misappropriation of trade secrets.  *See Macuarie Bank Ltd. v. Knickel*, 793 F.3d 926,

936 (8th Cir. 2015) (finding defendant misappropriated plaintiff's trade secrets when it disclosed

them to third parties in a manner inconsistent with use permitted by contract); *Reingold v.

Swiftships, Inc.,* 126 F.3d 645, 650–51 (5th Cir. 1997) (using boat mold for any purpose not

authorized by contract was misappropriation); *HotSpot Therapeutics, Inc. v. Nurix Therapeutics,

Inc.*, No. 22-CV-04109-TSH, 2023 WL 1768120, at *6 (N.D. Cal. Feb. 3, 2023) (holding

defendant's use of software outside parties' collaboration would exceed scope of authorization

granted by contract and constitute misappropriation of trade secrets).[9]

Despite Kopin's obligation to keep BlueRadios' confidential information confidential,

Mr. Jacobsen reported that Kopin would "wait for results from [the] first BlueRadios PCB

---

[9] Kopin's reliance on *Martin v. Cuny*, 887 F. Supp. 1390 (D. Colo. 1995) is misplaced.  *Martin* is
a copyright case that concerns the "joint work" doctrine of copyright law.  Kopin cites no
analogous doctrine of trade secret law.

assemblies, then update Mistral PCB layout for improvements and any engineering changes."

Ex. 352 (dated July 26, 2008).  Kopin did not share this plan with BlueRadios.  Tr. 1068:16–22

(Tucker); 453:13–24 (Kramer).  If it had, BlueRadios would not have given Kopin its

confidential information.  Tr. 392:25–393:2 (Kramer).  Kopin needed BlueRadios' PCBs to

continue development of the Golden-i.  1302:6–10 (Fan).  So, Kopin misled BlueRadios to

believe that Kopin intended to continue working with BlueRadios on the Golden-i Project to

secure receipt of the Gen 2 PCBs and BlueRadios' other confidential information.  Meanwhile,

Kopin—in secret—managed parallel engineering and routing efforts with both BlueRadios and

Mistral.  *See, e.g.*, Ex. 345.  Kopin created a "backup engineering resource in Mistral" while

BlueRadios was working on the Gen 2 PCBs to save Kopin the time and money it would cost to

build a Gen 3 PCB without the benefit of BlueRadios' trade secrets.  Ex. 69, 196, 344, 560.

Kopin also instructed BlueRadios to share BlueRadios' schematics, block diagrams, test boards,

and daughterboards with Ittiam under the guise that Ittiam was a business partner covered by

Kopin's NDA that would be working with Kopin *and* BlueRadios to ensure the success of

Golden-i.  Ex. 225.  Kopin also sent Mistral confidential information regarding issues with the

Gen 2 PCBs so Mistral could learn and make improvements.  Tr. 2183:19–21 (Pombo).

On March 25, 2009, BlueRadios delivered the Gen 2 PCBs to Kopin pursuant to the

Addendum.  Ex. 392.  Mr. Parkinson subsequently delivered one of the PCBs to Mistral and one

to Ittiam.  Tr. 2462:3–11 (Parkinson).  Kopin shared BlueRadios' PCBs with Mistral so, among

other things, Mistral "would use [the] gen-2 board as [a] reference for any information relating to

the routing requirements for KCD. . ." and with Ittiam because, among other things, having the

"Golden-I PCB along with the Debug/expansion board [would] allow[] access to the DVI

connector and UART."  Ex. 572.  After delivering the Gen 2 PCBs to Kopin, BlueRadios

repeatedly requested that Kopin affirmatively accept or reject and return the PCBs, or provide a

list of open items, but received no meaningful response.  Tr. 430:1–3, 431:6–16, 432:15–433:25 (Kramer); Ex. 100, 101, 102, 120, 331.

Kopin did not reject and return the PCBs because it wanted to—and did—use them. 1302:6–10 (Fan).  At trial, neither Mr. Sneider nor Mr. Fan could explain why Kopin failed to reject and return the PCBs to BlueRadios if, as alleged, the PCBs were not fully functional and consistently operating.  Tr. 2074:13–2076:10 (Sneider).  Both Mr. Sneider and Mr. Fan evaded BlueRadios' counsel's questions on this topic until the Court instructed them to provide responsive answers.  Tr. 2076:8–10 (Sneider), 1292:14–17 (Fan).  Instead of accepting the PCBs, Kopin went behind BlueRadios' back to BlueRadios' contacts, such as Mistral, and accused BlueRadios of breaching the Contract.  Ex. 1154.  Kopin also instructed its employees and its contacts at Mistral and Ittiam to stop communicating with BlueRadios.  Ex. 189, 193, 1536, 1587.

Kopin did not implement a clean room for the Gen 3 Golden-i.  The same employees who worked on previous generations also worked on Gen 3.  Kopin took no steps to ensure Mistral implemented a clean room for the Gen 3 PCB.  The Mistral hardware manager and PCB layout engineer who worked on Gen 2 worked on Gen 3 in the same capacity.  Ex. 211, 386, 1692. Further, Ittiam had all of the schematics and files needed to run code on the Gen 2 PCBs.  Ex. 225.  Kopin did not seek or receive authorization from BlueRadios to provide the Gen 2 PCBs to Mistral or Ittiam.  Tr. 1068:4–9 (Tucker), 453:16–21 (Kramer).  BlueRadios was unaware that Kopin had provided the Gen 2 PCBs to Mistral and Ittiam until after it filed this lawsuit.  *Id.*

As a result, "technology that was developed during the course of Kopin's limited engagement with BlueRadios for a monocular wireless video display was incorporated into Golden-i Generations 1, 2, 3, 3.5, 3.8, and 4."  Ex. 1534 (Kopin interrogatory response verified by Mr. Choi).  All of BlueRadios' IP was commingled with that of Kopin.  Tr. 1401:25–1402:12

(Choi).  Kopin also used BlueRadios' trade secrets by licensing them to third parties.  Tr.

1684:2–6, 1685:1–8, 1690:17–1700:9 (Hernandez); Ex. 1257, 409, 519, 479, 483, 956.

Before its engagement with BlueRadios, Kopin had no experience in wireless

technologies.  Ex. 144 ("Kopin has no wireless or radio expertise"), 52 ("without BlueRadios

[*sic*] pre-existing Bluetooth knowledge, know-how and technology independently developed,

Golden-i would be impossible to manufacture at this time").  After taking BlueRadios'

technology, Kopin used the Golden-i to market itself as a leading provider of wearable

technologies.  Ex. 409 (2014 Needham Growth Conference presentation stating Kopin has "a

portfolio of key wearable technologies" and "notable wearable partnerships" with Vuzix, Recon

Instruments, and Motorola), 479 (2020 Needham Growth Conference presentation showing

Kopin's work on Google Glass, the Golden-i Infinity, the Realwear HMT-1, and the 3M Scott

Safety mask and asserting Kopin has a "Rich IP Portfolio" of over 250 patents and patent

applications focusing on "wearable IP and critical components enabling wearable solutions"),

483 (2021 Needham Growth Conference presentation stating Kopin has "[v]oice and gesture-

controlled wearable devices" in production with Google, Vuzix, and RealWear), 960 (showing

Kopin's pre-Golden-i "milestones"—microdisplays—and post-Golden-i "milestones"—military

HMDs, Google Glass, smart glasses, and medical head-worn systems).  By way of example, by

2017, Kopin had secured a major contract with Leonardo DRS for the design and development of

the FWS-CS HMD, a helmet-mounted display.  Ex. 1257.  The FWS-CS HMD's features

included a wireless video receiver, JPEG decoder, frame rate conversion, menu/button system,

left/right eye switching, and battery monitoring, among other things.  *Id.* at 51.

### 3.    BlueRadios Proved Kopin's Profits

To prove disgorgement damages for trade secret misappropriation, "[t]he plaintiff has the

burden of establishing the defendant's sales; the defendant has the burden of establishing any

portion of the sales not attributable to the trade secret and any expenses to be deducted in

determining net profits." *Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, 249 F. App'x 63, 79 (10th Cir. 2007). Where "there is a clear showing of injury that is not susceptible to exact measurement because of the defendant's conduct, the jury has some latitude to make a just and reasonable estimate of damages based on relevant data." *Id.* Mr. Pedigo testified to Kopin's revenue, costs, and profits. *See* Tr. 1824:7–1865:15; Ex. 1950. This data was undisputed and Mr. Pedigo's summaries were adopted by Kopin's damages expert, W. Todd Schoettelkotte. Tr. 2622:19–24 (Schoettelkotte).

Contrary to Kopin's assertions, the burden to prove apportionment is *on Kopin, not BlueRadios*. *See Cartel Asset Mgmt.*, 249 F. App'x at 79. Regardless, BlueRadios' technical expert identified each of BlueRadios' contributions to the Golden-i and concluded they account for 85% of the overall product. Tr. 1690:17–1691:7 (Hernandez).

### 4.    The Verdict on BlueRadios' Misappropriation Claims is Not Against the Weight of the Evidence

Despite Kopin's assertion that it owns the technology developed under the Contract, "[i]t is not a foregone conclusion that BlueRadios gave Kopin the right to use trade secrets developed via the Golden-i Project however it pleased. If two entities jointly own a property interest and one deliberately destroys that property interest, the law generally provides a mode of recovery for the wronged property interest holder." Tr. 2737:10–16 (Kane, J). BlueRadios never intended to give Kopin a license to share its confidential and proprietary information with third parties without BlueRadios' consent. *See* Tr. 392:25–393:2 (Kramer).

It was the jury's job to determine credibility of witnesses and weigh conflicting evidence. *See* Instruction No. 1.6. To the extent Kopin presented testimony of a "good faith belief" that it owned the Golden-i technology, the jury was free to disregard that testimony. *See id.* The Court cannot engage in this analysis at the JMOL stage. Weighing the allegedly conflicting evidence

Kopin raises in its motion would invade the province of the jury. *Stroup*, 26 F.4th at 1157.[10] Further, the jury's verdict on misappropriation is supported by the evidence showing that Kopin actively hid its progress on the Golden-i from BlueRadios. Ex. 189 ("As of today, do not send or convey any more information to BlueRadios."); 193 ("BlueRadios should not be given any information at this time . . . Let them eat – static !"); 1536 ("Please say or mention nothing about Kopin or Ittiam's efforts on the Golden-i Program to BlueRadios. . . . So as Sargent Shultz use [*sic*] to say . . . 'I know nothinggggg, I see nothinggggg . . . '"); 1587 (This is the 'WSJ' drill assume anything you say will end up on the front page of the Wall Street Journal."). All of this evidence was presented to and weighed by the jury.

Further, contrary to Kopin's assertion that all of the trade secrets BlueRadios identified were developed during the course of the contract (ECF No. 745 at 19), Mr. Tucker testified that a number of BlueRadios' trade secrets were developed prior to BlueRadios' contract with Kopin or built off prior BlueRadios' innovations, *see, e.g.*, Tr. 910:10–14 (Tucker); Ex. 1675, and Mr. Jacobsen admitted that the Golden-i would have been "impossible" without BlueRadios' pre-existing knowledge, know-how, and technology, Ex. 52. Accordingly, the Court should affirm the jury's verdict on BlueRadios' CUTSA and DTSA claims.

## IV.    KOPIN HAS NOT MET ITS BURDEN ON A JMOL MOTION TO OVERTURN THE JURY VERDICT ON ITS STATUTE OF LIMITATIONS DEFENSE

The evidence presented at trial supports the jury's verdict on Kopin's statute of limitations defense. Mr. Kramer testified that he had no knowledge of Kopin's actions before 2013. *See, e.g.*, Tr. 447:7–19. Mr. Kramer testified that he did not become concerned about Kopin until around 2014 or 2015 when BlueRadios received a letter from Kopin's lawyers

---

[10] Kopin cites Exhibit 1154 in support of this argument, which is an email from Mr. Jacobsen to Ittiam stating that Golden-i Gen 3 will not use the Gen 2 PCBs. Mr. Parkinson directly contradicted this exhibit when he testified that approximately one month after that email was sent, he hand-delivered the Gen 2 PCBs to Ittiam and Mistral. Tr. 2394:13–15.

denying BlueRadios employees' inventorship rights in certain Golden-i patents.  Tr. 529:18–534:3. This was in response to Mr. Kramer's inquiry, triggered by a potential business opportunity for BlueRadios with Google.  *Id.*  Mr. Kramer also testified, and Mr. Fan confirmed, that up until at least early 2015, Kopin misled Mr. Kramer to believe that Golden-i products were still forthcoming and had not generated any sales.  *See* Tr. 447:3–19, 554:25–556:18, 806:20–807:9 (Kramer), 1288:24–1289:6 (Fan); Ex. 1770–72.

The Court instructed the jury on the doctrine of equitable tolling (Instruction No. 3.16) and the jury saw the evidence suggesting that "Kopin employees conspired to keep BlueRadios in the dark about Golden-i's evolution during this same timeframe, and to conceal its plans to use the Golden-i technology in a manner contradictory to the parties' intentions at the time of contracting."  (ECF No. 382 at 12–13) (citing Ex. 189, 193, and 1536).  It was therefore reasonable to conclude that Kopin prevented BlueRadios from discovering its wrongdoing before 2013.

The Court has already rejected Kopin's argument that "BlueRadios had at least constructive knowledge that Kopin was marketing and selling the Golden-i long before August 2013" because of forward-looking statements Kopin made its in pre-2013 filings with the Securities and Exchange Commission (SEC).  (*See* ECF No. 745 at 36; ECF No. 382 at 12–13 ("It would be unreasonable to expect BlueRadios to scour Kopin's public filings for evidence that royalties were due . . .")).  Kopin's own disclosures provide that forward-looking statements are expectations, not facts.  *See, e.g.*, Ex. 402 at 4 ("These statements are not guarantees of future performance . . . actual outcomes and results may differ materially from what is expressed or forecasted in such forward-looking statements").  Kopin's forward-looking statements are not grounds for concluding that BlueRadios had constructive knowledge of Kopin's wrongdoing, let alone grounds for overturning the jury verdict.

Kopin's argument that the statute of limitations accrued when certain Golden-i patent applications were published also fails.  Patent application publication does not serve as constructive notice for statute of limitations purposes.  *See, e.g.*, *Univ. of Colo. Found., Inc. v. American Cyanamid*, 880 F. Supp. 1387, 1405–06 n.4 (D. Colo. 1995) (declining to hold that issuance of patent application publication constitutes constructive notice for statute of limitation purposes); *Javo Bev. Co. v. Cal. Extraction Ventures, Inc.*, No. 19-Civ-1859, 2019 WL 6467802, at *3 (S.D. Cal. Dec. 2, 2019) (rejecting argument that claims accrued when patent application published).

Therefore, BlueRadios presented substantial evidence from which the jury reasonably concluded that BlueRadios was unaware of Kopin's contractual breaches and misappropriation before 2013 and that Kopin engaged in intentional, wrongful conduct that prevented BlueRadios from knowing the existence thereof.[11]

## V.    THE JURY VERDICT DOES NOT CONSTITUTE AN IMPERMISSIBLE DOUBLE RECOVERY AND KOPIN WAIVED ANY ARGUMENT OTHERWISE

"[A] party may not circumvent Rule 50(a) by raising for the first time in a post-trial motion issues not raised in an earlier motion for directed verdict."  *F.D.I.C. v. Schuchmann*, 235 F.3d 1217, 1231 (10th Cir. 2000).  On its pre-verdict JMOL motion, Kopin did not raise any argument as to the alleged duplicative nature of BlueRadios' contract and trade secret claims or any argument regarding the potential for a duplicative damages award.  Kopin has thus waived its right to argue that BlueRadios' claims allegedly rely on the same facts or that awarding damages under each claim would be duplicative.  *See id.*

Even if Kopin had not waived these arguments—which it has—they are unsupported. "[A]n allegation of double recovery presents a question of proof" and the party who asserts

---

[11] The Court should disregard Kopin's request that it overturn the verdict based on allegedly contradictory evidence of a Google alert.  The jury already weighed this evidence and found in favor of BlueRadios.

double recovery has the burden to prove it. *Bollinger v. Rheem Mfg. Co.*, 381 F.2d 182, 185

(10th Cir. 1967); *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 21 F. Supp. 2d 1247, 1252

(D. Kan. 1998), aff'd, 205 F.3d 1219 (10th Cir. 2000) (impermissible double recovery requires

"solid proof of overcompensation").  A theory of double recovery cannot be predicated on

speculation about how a jury calculated damages.  *United Phosphorus, Ltd.*, 21 F. Supp. 2d at

1252.  Further, courts will not disturb a jury verdict on damages when the damages awarded are

"within the range of evidence."  *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d

1219, 1228 (10th Cir. 2000) (holding $760,000 award not overcompensation where plaintiff

offered proof of $4 million in damages).  Here, BlueRadios presented evidence that Kopin's

profits from Golden-i were over $150 million and the jury awarded BlueRadios less than $25

million.  (ECF No. 726); Ex. 1950.  Such an award is well-within the range of evidence and

Kopin has presented no "solid proof of overcompensation" to suggest otherwise.

### A.    BlueRadios' Contract Claims Concern Distinct Injuries

Even if Kopin had not waived its right to challenge the alleged duplicity of BlueRadios'

contract claims, its argument fails.  This Court already found that BlueRadios' claims for breach

of contract and breach of the implied covenant of good faith and fair dealing do not rely on the

same facts.  *See* Tr. 2735:15–19 (Kane, J.) ("if the jury finds that certain contributors are

deliberately or carelessly left off patent applications, such an action, while perhaps not violative

of the letter of the contract, certainly undermines the spirit of good faith and fair dealing").

Additionally, Mr. Sneider testified that the Addendum required Kopin to accept or reject the Gen

2 PCBs.  Tr. 1980:11–24, 2074:14–2076:11.  He also testified that Kopin did neither, so Kopin

had no obligation to pay BlueRadios.  *Id.*  Further, Mr. Sneider, who admitted he did not

negotiate the Addendum, testified that Kopin did not owe royalties to BlueRadios because Kopin

never sold or licensed any Golden-i technology using an "OMAP 35XX" processor.  Tr.

1989:21–1980:1 (stating that delivery of boards "using the TI OMAP 35xx processors" were a

precondition to BlueRadios receiving royalties), 1980:17–19 ("we are reiterating these have to be

. . . based on the TIP OMAP 35XX").  But Mr. Kramer and Mr. Jacobsen, who negotiated the

Addendum, testified that they adopted "OMAP 35XX" from Texas Instruments (which

manufactured OMAP chips) as a placeholder in anticipation of TI's imminent release of an

updated OMAP part number.  Tr. 410:9–16 (Kramer); Jacobsen Dep. 106:2–7, Jul. 26, 2018.

Kopin used the language regarding the OMAP chip that Messrs. Jacobsen and Kramer had

included in the Addendum for the purpose of not limiting BlueRadios' royalties to not pay

BlueRadios any royalties at all.  Kopin further attempted to evade the requirement to pay

BlueRadios by hiding from BlueRadios its intent to license the technology, generate sales, and

sell more of its own products.  Ex. 189, 193, 1536, 1587.  Kopin then claimed that because there

were no "sales," Kopin did not owe any money to BlueRadios.  *See* Tr. 447:3–19, 554:25–

556:18, 806:20–807:9 (Kramer), 1288:24–1289:6 (Fan); Ex. 1770–72.

      This case is unlike those Kopin cites in its brief.  For example, in *Aero Prod. Int'l, Inc. v.

Intex Recreation Corp.*, 466 F.3d 1000, 1019 (Fed. Cir. 2006), the court reduced the jury's

verdict on damages because the plaintiff, who sought a reasonable royalty, only presented

evidence of a single set of products and each product could only be subject to one royalty,

regardless of whether it was found to infringe upon the plaintiff's trademark and/or patent.  *Id.*

Here, BlueRadios sought disgorgement damages, not reasonable royalty damages.  BlueRadios

presented evidence that Kopin's profits attributable to BlueRadios' Golden-i contributions

totaled nearly $150 million.  Ex. 1950.  The total jury verdict is less than $25 million, or just

under 17% of Kopin's apportioned profits.  *Lexton-Ancira Real Est. Fund, 1972 v. Heller*, 826

P.2d 819, 824 (Colo. 1992) (en banc) is also inapposite.  In *Lexton-Ancira Real Est. Fund*, the

court reduced the plaintiff's recovery after finding that it could not recover lost profits and actual

damages.  *Id.*  BlueRadios sought to recover on a theory of unjust enrichment, not lost profits nor

actual damages.

Finally, the jury verdict in this case follows Colorado's jury instructions committee's best practices, which calls for a "step by step" verdict to avoid duplicative recovery.  *See* Colo. Jury Instr., Civil 6:14 n.5.  Affirming the verdict would not permit an impermissible recovery.

### B.    The CUTSA and DTSA Damages are Not Duplicative

Even if Kopin had not waived its right to challenge BlueRadios' trade secrets claims as duplicative, which it has, the challenge fails.  The verdict form required the jury to separately calculate and apportion trade secret misappropriation damages between BlueRadios' CUTSA and DTSA claims.  One reasonable understanding of the verdict is that the jury awarded BlueRadios damages under CUTSA for misappropriation occurring before 2016 and under the DTSA for misappropriation that continued after May 11, 2016.[12]  The verdict form required the jury to allocate damages by claim and explicitly prompted the jury to award damages under the DTSA for misappropriation occurring after May 11, 2016.  *See* (ECF No. 726 at 8–9 (on CUTSA claim: "6.  Do you find it more likely than not that any conduct that constituted trade secret misappropriation occurred before August 12, 2013?  ANSWER: Yes"), 11 (on DTSA claim: "5. Do you find it more likely than not that misappropriation of BlueRadios' trade secrets continued after May 11, 2016 (Instruction 3.17)? ANSWER:  Yes")).  Kopin generated more relevant profits after 2016 than before 2016, which is one reason why the DTSA damages may be more than the CUTSA damages.  *See* Ex. 515, 530, 1950.  Accordingly, the damages were supported by substantial evidence and are not duplicative.

---

[12] CUTSA does not compensate continuing misappropriation.  *See Gognat v. Ellsworth*, 224 P.3d 1039, 1046 (Colo. App. 2009). The DTSA does not apply to misappropriation occurring before May 11, 2016, *unless* the misappropriation continued after the enactment of the DTSA.  ECF 382 at 13 ("I agree that '[i]t only follows that . . . Congress clearly expressed its intent to apply the DTSA to continuing misappropriations that began prior to—but continued after—the DTSA's enactment.'").

## VI.    KOPIN IS NOT ENTITLED TO A NEW TRIAL

The Court should deny a motion for a new trial unless the "verdict is against the clear weight of the evidence." *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1371–72 (Fed. Cir. 2009). A court cannot grant a new trial "merely because it would have arrived at a different verdict." *Id.* A new trial requires a clear showing of prejudicial error or substantial injustice and "the burden of showing harmful error rests on the party seeking the new trial." *EcoFactor, Inc. v. Google LLC*, No. 2023-1101, 2024 WL 2807318, at *4 (Fed. Cir. June 3, 2024). As described herein, the verdict is substantially supported by the evidence. Kopin has not met its burden to establish the need for a new trial.

## VII.    THE COURT SHOULD AWARD BLUERADIOS DISGORGEMENT AND EXEMPLARY DAMAGES IN A MANNER CONSISTENT WITH THE VERDICT

As described above and in the concurrently-filed proposed findings of fact and conclusions of law, BlueRadios proved that Kopin's breach of contract and breach of the duty of good faith and fair dealing was intentional and substantial and that Kopin willfully and maliciously misappropriated BlueRadios' trade secrets under CUTSA and the DTSA. BlueRadios therefore requests that the Court award BlueRadios exemplary and disgorgement damages as follows:

Pursuant to *EarthInfo, Inc. v. Hydrosphere Res. Consultants, Inc.*, the Court has the power to order a defendant to disgorge all profits realized as a result of its breach. *See* 900 P.2d at 120 (affirming trial court's order that defendant disgorge all profits it earned as a result of breaching parties' contract). Given Kopin's extreme level of culpability, BlueRadios requests that the Court, in its discretion, award BlueRadios disgorgement damages on each of its contract claims in an amount not less than the $10.7 million recommended by the jury.

Seeing as the verdict on exemplary damages is advisory and the Court has the power within its discretion to enhance BlueRadios' damages, BlueRadios requests that the Court

35

enhance BlueRadios' unjust enrichment damages under CUTSA and award BlueRadios the same

amount in exemplary damages, for a total damages number not less than $1,775,499, as the jury

recommended.  BlueRadios similarly requests that the Court award BlueRadios damages under

the DTSA in an amount no less than $11,731,398, as recommended by the Jury.

## VIII.  <u>CONCLUSION</u>

WHEREFORE, BlueRadios presented substantial evidence at trial to support each of its

claims against Kopin and the damages awarded to BlueRadios are not duplicative.  The Court

should deny Kopin's motion for JMOL, enter judgment consistent with the jury's verdict, and

award BlueRadios such other and further relief as the Court deems just and proper.

DATED this 11th day of June 2024.

Respectfully submitted,


By:    */s/    Stanley M. Gibson*
Stanley M. Gibson
sgibson@jmbm.com
Lena Streisand
lstreisand@jmbm.com
JEFFER MANGELS BUTLER & MITCHELL LLP
1900 Avenue of the Stars, 7th Floor
Los Angeles, California 90067
Telephone:    310-203-8080
Facsimile:    310-712-8548

David B. Seserman
dseserman@seserman.law
SESERMAN LAW LLC
3900 E. Mexico Ave., Suite 300
Denver, CO 80210
Telephone:    303-900-2406
Facsimile:    303-670-0990

Joseph E. Kovarik
jkovarik@sheridanross.com
SHERIDAN ROSS P.C.

1560 Broadway, Suite 1200
Denver, Colorado 80202-5141
Telephone:     303-863-9700
Facsimile:     303-863-0223

ATTORNEYS FOR PLAINTIFF BLUERADIOS, INC.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 11, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record in the above-referenced matter.

*/s/ Lena Streisand*
Lena Streisand
JEFFER MANGELS BUTLER & MITCHELL LLP
1900 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067
Telephone:     (310) 203-8080
E-mail:          lstreisand@jmbm.com