IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02052-JLK

BLUERADIOS, INC.,
a Colorado corporation,

    Plaintiff,

v.

KOPIN CORPORATION, INC.,
a Delaware corporation,

    Defendant.

### DEFENDANT KOPIN CORPORATION, INC.'S NOTICE OF SUPPLEMENTAL AUTHORITY

    Defendant Kopin Corporation respectfully provides this Court notice of Plaintiff BlueRadios, Inc.'s opening brief in *BlueRadios, Inc. v. Hamilton, Brooks, Smith & Reynolds P.C.*, No. 24-1942 (1st Cir. Feb. 24, 2025) ("*HBSR* Brief"), attached hereto as Exhibit A. BlueRadios filed the *HBSR* Brief pursuant to its appeal of the *HBSR* summary judgment order which, as Kopin contends, renders BlueRadios' instant claims against Kopin untimely based upon issue preclusion. *See* ECF 773 & 775.

    Of particular import, in the *HBSR* Brief, BlueRadios takes a series of positions that specifically contradict key representations it made to this Court in its post-trial briefing here, including its most recent briefing regarding issue preclusion.[1]

---

[1] Recognizing that BlueRadios has moved to strike every post-judgment exhibit, Kopin notes, in the interest of preempting such a motion (and sparing the Court an opposition brief), that this Court may take judicial notice of a party's filings in "related litigation," especially when they contradict filings here. *Catz v. Chalker*, 2006 WL 2547304, at *2 (D. Ariz. Aug. 31, 2006) (collecting authorities); *see also Bruce v. City & Cnty. of Denver*, 57 F.4th 738, 742 n.3 (10th Cir. 2023) (a "court may take judicial notice of another court's publicly filed records if they have a direct relation to matters at issue"). Kopin has attached the *HBSR* Brief as an exhibit for ease of reference.

***First***, in its briefing before this Court, BlueRadios asserted (ECF 774 at 6) that the *HBSR* ruling was not issue preclusive as to the statute of limitations because the *HBSR* district court purportedly found only that "BlueRadios had 'constructive notice' of a potential malpractice claim 'no later than November 2014,'" which, BlueRadios asserted, is "within the statute of limitations period for this case."  BlueRadios repeated this assertion over and over again in its briefing here. *See id.* at 2 (asserting the *HBSR* court found it learned of the purported misconduct "within the statute of limitations against Kopin").  Indeed, trying to underscore the point, BlueRadios asserted that "[n]one of the factual findings in *HBSR* establish that BlueRadios knew of its claims against Kopin ***before August 12, 2013***." *Id.* at 6 (emphasis added).

BlueRadios's *HBSR* Brief shows that it knows these statements to be false, and that issue preclusion should apply.  As early as its *HBSR* Brief Introduction, BlueRadios concedes that the *HBSR* "district court … h[eld] that BlueRadios' malpractice claims against HBSR accrued as a matter of law when the improperly amended applications were filed ***in 2008***." Ex. A at 5 (emphasis added).[2]  BlueRadios then devotes ten pages of its brief to arguing that "[n]othing that BlueRadios learned in the 2008-2009 timeframe gave it notice of any injury or HBSR's malpractice." *Id.* at 52.  The *HBSR* Brief also makes clear that BlueRadios' claims in the *HBSR* case arise out of the same facts as this case:  HBSR's purported efforts to "help[] Kopin deprive BlueRadios of its intellectual property rights and misappropriate BlueRadios' extraordinarily valuable technologies." *Id.* at 13.

---

Alternatively, this Court could address any evidentiary objections from Blue Radios by holding an evidentiary hearing to inquire into BlueRadios' relevant representations.

[2] *See also id.* at 23 ("The court nevertheless resolved the question as a matter of law, determining that the limitations period began running on BlueRadios' claims ***as early as 2008***, when HBSR first began filing amendments to the patent applications to remove BlueRadios inventors.") (emphasis added); *id*. at 24 (admitting the *HBSR* district "court [] determined that BlueRadios had obtained notice of the plot between Kopin and HBSR when a BlueRadios employee voiced concern ***in 2008*** about whether it was 'sort of reckless' to omit BlueRadios inventors from the '090 Provisional Patent Application ….") (citation omitted; emphasis added); *id.* at 47 ("The district court concluded that ***BlueRadios first became aware of HBSR's malpractice in 2008-2009, when HBSR amended the Golden-i patent applications to diminish BlueRadios' inventorship rights***.") (emphasis added); *cf.* ECF 773 at 1 & ECF 775 at 3-4 (citing same preclusive rulings).

2

To be sure, BlueRadios makes clear throughout its *HBSR* Brief that it *disagrees* with the district court's findings as to when it was first aware of HBSR's alleged malpractice—but BlueRadios makes equally clear that it understands the Massachusetts district court to have found that it was aware as of 2008-2009. As there is no longer any genuine dispute on this point, issue preclusion applies.

*Second*, the *HBSR* Brief vindicates Kopin's argument that all of BlueRadios' purported trade secrets at issue here—not just those in Category 5, as BlueRadios asserts (ECF 756 at 23 n.8)—were published in patents and patent applications, with BlueRadios' consent, thereby vitiating any "trade secret" status. *See* ECF 745 at 16-17, 20; ECF 763 at 4 & n.2; ECF 775 at 3-4. Specifically, in the *HBSR* Brief, BlueRadios contends that HBSR and Kopin deprived BlueRadios of its intellectual property rights by "removing BlueRadios' *inventors* from the applications." Ex. A at 15 (emphasis in original). These patent applications—as designedly published for the world to see, with BlueRadios' avowed blessing—covered the parties' "Golden-i developments." *Id.* at 9. BlueRadios admits in the First Circuit that it **knew** that the patent applications were being published while contending there was one and only thing it did not know—namely, that there were "[p]roblems regarding inventorship." *Id.* at 57. BlueRadios even goes so far as to maintain that HBSR, when filing these public patent applications, was doing so as an attorney for both Kopin **and BlueRadios**. *See id.* at 9-12, 29-41. It is axiomatic that one cannot both disclose information in a patent application and retain that information as a trade secret once the application publishes.

In order words, BlueRadios is arguing throughout its brief to the First Circuit that it *affirmatively wanted and instructed* for its "trade secrets" to be *publicly disclosed* in patent applications, provided only that there was further disclosure of BlueRadios' inventorship contributions. By BlueRadios' account (as offered to the First Circuit), all the alleged harm to BlueRadios resulted from the fact that "HBSR began developing a 'strategy for separating Kopin and BlueRadios inventions' and 'handling' any 'BlueRadios' 'related claims' to ownership in Golden-i technologies." *Id.* at 14. The resulting theory of damages is diametrically opposed to

3

the theory of harm here: Contrary to what BlueRadios convinced this jury of, BlueRadios is telling the First Circuit that its harm did *not* result from any unauthorized disclosure or use of any "trade secrets" in connection with Golden-i technologies. To the contrary, BlueRadios avowedly wanted its purported attorneys—the same attorneys representing Kopin (meaning that there could be no divergent interests between the parties)—to be publishing the "trade secrets" pursuant to joint patent applications and including them as part of the Golden-i inventions shared by Kopin. Setting aside any disputes over what BlueRadios contemporaneously understood or expected about the specific inventors listed on the patent applications, it could not maintain *secrecy* over the very same technological inventions that were being *publicized* with BlueRadios' *avowed blessing*. *See* ECF 745 at 16-17, 20; ECF 763 at 4 & n.2.

Nor can BlueRadios' operative theories of damages be reconciled between the two cases. In both cases, BlueRadios is accusing HBSR and Kopin of denying it the same "intellectual property developed during the [joint] venture." Ex. A at 3. HBSR's purported decision to omit BlueRadios from patent applications is what, BlueRadios says, allowed Kopin to "use[] HBSR's amendments to the applications to justify using BlueRadios' developments without paying for them," including by "licensing BlueRadios' property to companies such as Motorola, Verizon, [] Fujitsu," and "RealWear." *Id.* at 16-17. These licensing profits are what BlueRadios allegedly lost, according to the *HBSR* Brief, simply because HBSR allegedly failed to list BlueRadios as inventors; those turn out to be **the exact same profits** that BlueRadios seeks to disgorge under its "trade secret" claims here. *See* 4/4 Tr. 1854:7-1856:8 (Motorola & Fujitsu), 1847:3-15 (Verizon), 1851:4-1854:6 (RealWear). To rule for BlueRadios, therefore, this Court would have to endorse BlueRadios' unprecedented and wrong assertion that failing to name a co-inventor in authorized patents and patent applications somehow constitutes misappropriation of trade secrets under federal and state law. *See* ECF 774 at 4-5.

*Third*, it is clear that the same technologies that BlueRadios has successfully billed as "trade secrets" in this case were baked into the patent applications at issue before the First Circuit. ECF 775 at 3-4; *see also* ECF 745 at 16-17, 20; ECF 763 at 4 & n.2. And BlueRadios now admits

that all the purported IP that HBSR and Kopin purportedly misappropriated were either "'jointly owned' by both parties,'" or, for "BlueRadios' pre-existing intellectual property," subject to an "exclusive right" owned by "Kopin." Ex. A at 8. In the *HBSR* Brief, BlueRadios further contends that these "applications … were at least co-owned by BlueRadios." *Id.* at 16. Kopin could not misappropriate what it either owned or was exclusively licensed to use.

**Finally**, BlueRadios' admission in the First Circuit regarding how Kopin profited from the patents, discussed *supra*, underscores Kopin's argument that publication of the IP in patents did ***not*** destroy the value of the IP. *See* ECF 763 at 3-4. Accordingly, BlueRadios cannot rely on this Court's ruling, at the Rule 50(a) stage, that it could prevail on its "trade secrets" claims, notwithstanding the parties' joint ownership, by showing that Kopin "deliberately destroy[ed]" their shared trade secrets. 4/16 Tr. 2737:10-16. On this point, too, BlueRadios has discredited its operative premise by emphasizing to the First Circuit just how valuable the claimed "trade secrets" continued to be.

Dated:  March 7, 2025

Joshua M. Dalton
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, MA 02110-1726
Telephone: +1.617.341.7700
Facsimile:  +1.617.341.7701
Email: josh.dalton@morganlewis.com

Harvey Bartle IV
Julie S. Goldemberg
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA 19103-2921
Telephone: +1.215.963.5000
Facsimile:  +1.215.963.5001
Email: harvey.bartle@morganlewis.com
Email: julie.goldemberg@morganlewis.com

Kandis C. Gibson
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue NW
Washington, DC 20004-2541
Telephone: +1.202.739.5605
Facsimile:  +1.202.739.3001
Email: kandis.gibson@morganlewis.com

Respectfully submitted,

By: */s/ Derek L. Shaffer*
Derek L. Shaffer
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
1300 I Street, Suite 900
Washington, DC 20005
Telephone: +1.202.538.8000
Facsimile:  +1.202.538.8100
Email: derekshaffer@quinnemanuel.com

Steven Cherny
Alex H. Loomis
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
Boston, MA 02199
Telephone: +1.617.712.7100
Facsimile:  +1.617.712.7200
Email: stevencherny@quinnemanuel.com
Email: alexloomis@quinnemanuel.com

*Attorneys for Defendant Kopin Corp.*