## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02052-JLK

BLUERADIOS, INC.,

      Plaintiff,

v.

KOPIN CORPORATION,

      Defendant.

---

## ORDER

---

Kane, J.

      After an exhaustive, nine-year litigation, a lengthy trial was held in this case, and Plaintiff BlueRadios, Inc. ("BlueRadios") largely prevailed on all its claims against Defendant Kopin Corporation ("Kopin"). Following the presentation of five weeks of evidence and four days of deliberations, a jury found BlueRadios was entitled to nearly all forms of the relief it sought. In the tortuous path to trial, many of the legal issues were narrowed or resolved. Post-trial, however, there remain two equitable matters and five motions for me to resolve. The equitable matters reserved for the Court's determination are disgorgement damages for BlueRadios's contract claims and exemplary damages for its trade secret misappropriation claims. Additionally, Kopin has moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) or, in the alternative, for a new trial under Rule 59. *See* Mot. for J. as a Matter of Law Under Rule 50(b), ECF No. 745. BlueRadios, for its part, has filed motions seeking prejudgment interest, a permanent injunction, attorney fees, and to strike post-trial declarations

1

from Kopin personnel. *See* Mot. for Prejudgment Interest, ECF No. 746; Mot. for Permanent Inj., ECF No. 747; Mot. for Att'y Fees & Costs, ECF No. 748; Mot. to Strike, ECF No. 768.[1]

## I.  Background

Despite the protestations of both parties and their myriad filings, which have lent the false impression that this complex case is somehow unique, this dispute is the product of a soured business relationship. When functional, this was a business relationship—formalized through a contract and, later, through an addendum—between BlueRadios and Kopin. Like so many similar agreements that propel corporations to litigation, this relationship ended bitterly. As relevant here, BlueRadios brought claims in this case alleging that Kopin (1) breached its contractual obligations, (2) breached the implied covenant of good faith and fair dealing, (3) misappropriated trade secrets in violation of the Colorado Uniform Trade Secrets Act ("CUTSA"), (4) misappropriated trade secrets in violation of the federal Defend Trade Secrets Act ("DTSA"), and (5) failed to provide correct inventorship information regarding the contributions of several BlueRadios employees for a U.S. patent. *See* Pretrial Order at 2-5, ECF No. 627.

At trial, the jury heard from the parties that BlueRadios, a small technology company founded by Mark Kramer and based in Colorado, was making cutting edge breakthroughs in

---

[1] As a general practice, I do not impose page limits on parties' motions and briefs. When I do, as I did in this case, it is with the explicit goal of reducing extraneous content, including unsupported suppositions and redundancy. *See* Order on Pl.'s Mot. for Discovery Sanctions at 20-23, ECF No. 487; 05/08/2024 Min. Order, ECF No. 732. Throughout this Order, I reject certain arguments as undeveloped, bald, or cursory. I do so recognizing that the parties were bound by page limits. The parties had the choice, however, to pursue a "kitchen-sink" strategy or instead to refine their arguments and put forward only those with the most merit. The former approach was generally followed, as is evidenced by the length of this Order.

Bluetooth connectivity when it entered into a business relationship with Kopin in 2007. That relationship was governed by, what is now safe to say, a poorly drafted[2] contract that was later amended by an addendum.[3]

Under their agreement, the parties committed to jointly develop a product that Kopin would manufacture and sell. BlueRadios retained ownership of any technology it developed before entering into the contract, while any technology "developed by BlueRadios in the course of th[e] development contract" was to be jointly owned. Contract at 5, Trial Ex. 53. The agreement also provided for royalty payments to BlueRadios based on product sales, though the provisions governing those payments were imprecisely drafted. *Id.* at 4-5.

At the time of the contract, Kopin's core business was the manufacture of microdisplays. The company sought to integrate its displays into head-mounted devices but lacked necessary Bluetooth functionality. The effort to bridge this technological gap led to the "Golden-i" project.[4] Pursuant to the parties' agreement, BlueRadios developed ten printed circuit boards ("Gen. 2 PCBs") and received monthly payments for its development work during the first year. While Kopin characterized the payments as generous, BlueRadios disputed this. The Gen. 2 PCBs were delivered to Kopin in March 2009. Kopin argued after the fact that they were defective and did not function properly; BlueRadios disagreed with that description, highlighting that Kopin immediately used the boards in trade show demonstrations and that Kopin never formally objected to the PCBs or terminated the contract. BlueRadios has argued that Kopin instead incorporated, or at a minimum failed to properly safeguard the technology BlueRadios had

---

[2] As I have noted previously, this case exemplifies a commercial catch-22: there is dire need for small businesses to acquire skilled legal counsel, especially when financial resources are limited.
[3] Colorado law applies to the parties' contract and relationship.
[4] The term "Golden-i" was used interchangeably to refer to the product, the project, and the technology.

developed such that it was incorporated, in Kopin's independent products, resulting in the devaluation and destruction of BlueRadios's trade secrets. Lastly among the principal injuries, BlueRadios has maintained that Kopin failed to pay it owed royalties on products produced using the Golden-i technology.

Considering the timing of the events just discussed and that this case was not filed until 2016, one may well ask how BlueRadios's claims were not barred by the statute of limitations. This is a valid question, one Kopin advanced as a primary defense and that the jury was called upon to help resolve.

The jury was presented with a deluge of evidence. On the statute-of-limitations question, it concluded that the defense ought not to apply due to Kopin's deceitful misconduct. The jury ultimately found for BlueRadios on all its claims and awarded $5,114 in general damages for Kopin's breach of the contract, $600,000 in general damages for Kopin's breach of the implied covenant of good faith and fair dealing, $591,660 in unjust enrichment damages for Kopin's violation of CUTSA, and $3,910,446 in unjust enrichment damages for Kopin's violation of DTSA. *See* Verdict Form at 4, 6, 9, ECF No. 726 (included as Addendum A to this Order). The jury also found that United States Patent No. 8,909,296 should be corrected to add two BlueRadios employees, John Sample and Wilfred Tucker, as inventors. *Id*. at 12. Lastly, the jury made advisory findings that BlueRadios was entitled to $3,500,000 in disgorgement damages for Kopin's breach of their contract, $7,200,000 in disgorgement damages for Kopin's breach of the implied covenant of good faith and fair dealing, $1,183,321 in exemplary damages for Kopin's violation of CUTSA, and $7,820,932 in exemplary damages for Kopin's violation of DTSA. *Id*. at 4, 6, 9, 11.

As I have already stated, presently before me are Kopin's Motion for Judgment as a Matter of Law Under Rule 50(b) or in the Alternative for a New Trial Under Rule 59 (Kopin's "JMOL Motion") (ECF No. 745), BlueRadios's Motion for Prejudgment Interest (ECF No. 746), BlueRadios's Motion for Permanent Injunction (ECF No. 747), BlueRadios's Motion for Attorney Fees and Costs (ECF No. 748), and BlueRadios's Motion to Strike (ECF No. 768) certain post-trial evidence submitted for my consideration concerning the outstanding equitable claims. Both parties have also submitted Proposed Findings of Fact and Conclusions of Law with respect to the remaining equitable matters: disgorgement damages for BlueRadios's contract claims and exemplary damages for its trade secret misappropriation claims.

## II.  Kopin's Additional Briefing on its Statute-of-Limitations Defense

Months after the jury returned its verdict, Kopin filed a Supplemental Brief arguing that the factual findings and judgment entered in *BlueRadios, Inc. v. Hamilton, Brook, Smith & Reynolds, P.C.*, No. 1:21-cv-10488-DJC, ECF No. 268 (D. Mass. Sept. 18, 2024) (the "HBSR Litigation") are issue preclusive and mandate a finding in this case that BlueRadios's contract and trade secret claims are barred by the statute of limitations. *See* Suppl. Br. on Issue-Preclusive Effect of New J. Against BlueRadios, ECF No. 771. The HBSR Litigation was brought in the District of Massachusetts by BlueRadios against the law firm Hamilton, Brook, Smith & Reynolds, P.C. ("HBSR"), which I previously held had an attorney-client relationship with BlueRadios such that it was conflicted from representing Kopin in this matter. *See* Order Granting Pl.'s Mot. to Disqualify Def.'s Counsel, ECF No. 38. In the HSBR Litigation, BlueRadios asserted claims of legal malpractice, breach of fiduciary duty, aiding and abetting

breach of fiduciary duty fraudulent nondisclosure or fraudulent concealment, aiding and abetting fraudulent concealment, and a related claim under Massachusetts state law.

That district court granted summary judgment on all those claims in HBSR's favor, finding there was no genuine dispute of material fact and HBSR was entitled to judgment as a matter of law. Critical to Judge Denise Casper's determination was her finding that BlueRadios possessed actual or constructive knowledge of HBSR's allegedly wrongful failure to name certain BlueRadios personnel on patent applications by 2008 or 2009, which was early enough that all claims reliant on HBSR's misconduct as to patent applications were barred by the statute of limitations. Mem. & Order at 25-27, HBSR Litigation, No. 1:21-cv-10488-DJC, ECF No. 268.

Here, Kopin seeks to apply issue preclusion, also known as collateral estoppel. The doctrine "bars the successive litigation of any issue of law or fact 'once [it has] been determined by a valid and final judgment.'" *Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292, 1297 (10th Cir. 2014) (quoting *Ashe v. Swenson*, 90 S. Ct. 1189 (1970)). The criteria for the application of issue preclusion is well-defined:

> For an issue to be collaterally estopped, the party invoking the doctrine has the burden of establishing four separate elements: (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*Id.* The legal doctrine of "issue preclusion will not apply in the absence of a valid and final judgment to which resolution of a particular issue was necessary." *C & M Props., L.L.C. v. Burbidge*, 563 F.3d 1156, 1166 (10th Cir. 2009).

At trial in this case, the jury concluded that the statute of limitations would ordinarily bar BlueRadios from recovering for the harm it alleged Kopin committed, but the statute of

limitations was tolled equitably due to Kopin's malfeasance. *See generally* Verdict Form. Kopin insists that my earlier findings and those of the jury should be disregarded in light of the findings and outcome in the HBSR Litigation. Kopin reasons that I must do so because, as "in countless[5] other cases where intervening developments post-verdict properly result in invalidation of a verdict," the findings from the HBSR Litigation yield conclusions that are in conflict with those in this case. Def.'s Reply in Supp. of Suppl. Br. on Issue-Preclusive Effect of New J. Against BlueRadios at 7, ECF No. 775. Specifically, Kopin asserts that Judge Casper's findings as to BlueRadios's actual or constructive knowledge of HBSR's conduct should be adopted and applied in the instant case with respect to the knowledge that BlueRadios had of Kopin's misconduct. If BlueRadios possessed such knowledge at the time determined by Judge Casper, Kopin claims, the statute of limitations would bar BlueRadios's contract and trade secrets claims.

Kopin's invocation of the doctrine of collateral estoppel falls short for several reasons. First, this request is untimely and application of the doctrine in these circumstances would not further its purposes. *See Harvey by Blankenbaker v. United Transp. Union*, 878 F.2d 1235, 1243 (10th Cir. 1989) ("[A]llowing issue preclusion claims to be raised post-trial does nothing to vindicate two primary policies behind the doctrine, conserving judicial resources and protecting parties from 'the expense and vexation' of relitigating issues that another party previously has litigated and lost.") (citing *Montana v. United States*, 99 S. Ct. 970, 973-74 (1979)); *see also Parklane Hosiery Co. v. Shore*, 99 S. Ct. 645, 649 (1979). More importantly, Kopin does not show that the knowledge Judge Casper found BlueRadios actually or constructively possessed related to HBSR's alleged wrongdoing equates—automatically or otherwise—to BlueRadios

---

[5]Despite this assertion, Kopin fails to cite any instructive precedent, let alone any cases which have comparable facts.

having knowledge sufficient for its claims in this case such that the statute of limitations would have simultaneously began to run. Such a showing is needed because the jury in this case found Kopin engaged in misleading and deceptive conduct that prevented BlueRadios from discovering the circumstances of its claims, something Judge Casper never was asked to scrutinize. This behavior by Kopin, its impact, and other considerations related to the theory of equitable tolling[6] were not before Judge Casper, meaning the issue of BlueRadios's knowledge of Kopin's alleged misconduct could not and was not fully litigated before the jury in this matter heard the related evidence. Accordingly, I conclude that the findings from my esteemed colleague Judge Casper are not issue preclusive here.[7]

### III.  Kopin's JMOL Motion

Kopin's JMOL Motion argues that the jury's verdict should be set aside as to each of the claims brought by BlueRadios. Thus, I proceed to review each cause of action on which the jury rendered a verdict for the appropriateness of judgment as a matter of law and whether, alternatively, there are grounds for a new trial.

---

[6] Judge Casper did decide the inapplicability of equitable tolling of the statute of limitations of claims against HBSR but was not presented with any evidence related to that theory with respect to Kopin's actions. Furthermore, her brief analysis on the topic—one sentence—suggests it was not a fully litigated theory.

[7] On March 7, 2025, Kopin filed a Notice of Supplemental Authority (ECF No. 783), attaching BlueRadios's opening brief on appeal in the HBSR litigation. In response, BlueRadios filed an Objection (ECF No. 784), requesting that I strike the Notice of Supplemental Authority. Anticipating that response from BlueRadios, Kopin's Notice requests that I take judicial notice of the brief. I grant BlueRadios's request to strike the Notice as untimely and violative of the local rules of practice, and I decline to take judicial notice of the contents of the brief for two reasons. First, it does not constitute a final ruling of another court. Second, the facts and arguments in this matter do not depend on the HBSR litigation; so, although the matters are related, they are entirely separate.

Judgment as a matter of law is granted only in rare circumstances, when a movant has met a high burden. "A party is entitled to judgment as a matter of law only if all of the evidence, viewed in the light most favorable to the nonmoving party, reveals no legally sufficient evidentiary basis to find for the nonmoving party." *Burrell v. Armijo*, 603 F.3d 825, 832 (10th Cir. 2010); *see also Burke v. Regalado*, 935 F.3d 960, 991 (10th Cir. 2019) ("Judgment as a matter of law is appropriate only if the evidence points but one way and is susceptible to no reasonable inferences which may support the nonmoving party's position.") (quoting *Elm Ridge Exploration Co. v. Engle*, 721 F.3d 1199, 1216 (10th Cir. 2013)). Similarly, "[w]hen a new trial motion asserts that the jury verdict is not supported by the evidence, the verdict must stand unless it is clearly, decidedly, or overwhelmingly against the weight of the evidence." *Id.* (quoting *Ryan Dev. Co. v. Indiana Lumbermens Mut. Ins. Co.*, 711 F.3d 1165, 1172 (10th Cir. 2013)). All inferences must be drawn in favor of the non-moving party, and the court is not to weigh the evidence or judge witness credibility. *Burke*, 935 F.3d at 991.

## A. Breach of Contact

With that standard in mind, I look first at BlueRadios's breach-of-contract claim. In the Pretrial Order, BlueRadios set out its three theories for its breach-of-contract claim, stating:

> BlueRadios claims that Kopin breached the Parties' contract and contract addendum by failing to pay BlueRadios for products incorporating and methods employing Golden-i technology, failing to name BlueRadios employees as inventors on patents protecting Golden-i technology, and incorporating BlueRadios' developments in issued patents and patent applications without naming BlueRadios as a co-owner . . . .

Pretrial Order at 2, ECF No. 627.[8] BlueRadios presented sufficient evidence at trial that a

reasonable jury could have found Kopin violated its business obligations under its contract with

BlueRadios. Specifically, BlueRadios presented evidence that:

- A contract existed between BlueRadios, *see* Contract, Trial Ex. 53; Contract Addendum,

  Trial Ex. 56;

- BlueRadios substantially performed its duties under that contract, *see* Trial Tr. 423:23-

  424:4 (Mark Kramer) (testimony that functional printed circuit boards were delivered to

  Kopin on behalf of BlueRadios);

- Kopin failed to substantially perform its duties under the contract, *see* Trial Tr. 392:14-

  15, 411:24-25 (Mark Kramer) (testimony that royalties contemplated under the contract

  were never paid to BlueRadios); Trial Tr. 2394:13-15 (Christopher Parkinson) (testimony

  that Golden-i technology was shared with third parties); Trial Exs. 195, 196, 214, 225,

  344, 345, 352, 560, & 572; and

---

[8] To the extent Kopin contends BlueRadios pursued impermissible theories at trial that fell
outside of the scope of the Pretrial Order, none of the arguments BlueRadios expressed was new
or distinct from versions of arguments with which Kopin was abundantly familiar. While the
Pretrial Order obviously has direct bearing on the arguments to be raised at trial, it is not so
confining as to constrain the parties to only the exact versions of the arguments articulated
therein. While "[t]he purpose of the pre-trial order is 'to insure the economical and efficient trial
of every case on its merits without *chance or surprise*,'" *Grant v. Brandt*, 796 F.2d 351, 355
(10th Cir. 1986) (quoting *Smith v. Ford Motor Co*., 626 F.2d 784, 795 (10th Cir. 1980), the pre-
trial order should not "become hoops of steel to bind the parties to frozen issues," *Case v.
Abrams*, 352 F.2d 193, 195 (10th Cir. 1965). *See also Century Ref. Co. v. Hall*, 316 F.2d 15, 19–
20 (10th Cir. 1963) ("[T]he pre-trial order should measure the dimensions of a lawsuit and
govern its course in the absence of some good reason for departure, [but] this does not mean that
the order should not be liberally construed to embrace all of the legal and factual theories
inherent in the issues defined therein.").

- BlueRadios is therefore entitled to damages.[9] *See* Trial Tr. 1824:7-1865:15 (Mark Pedigo) (testimony from BlueRadios's damages expert).

Despite this evidence and the jury's verdict, Kopin contends the jury necessarily rejected two of BlueRadios's breach-of-contract theories and that the evidence does not support the third. Citing the jury's answer to a relevant interrogatory, Kopin argues the jury must have determined Kopin did not breach the contract by failing to name BlueRadios employees as inventors or by incorporating BlueRadios's developments in issued patents and patent applications. *See* Mot. in Supp. of JMOL at 4-5, ECF No. 745. Kopin self-servingly misinterprets the jury's interrogatory response. On the Verdict Form, the jury was asked if Kopin should "assign BlueRadios co-ownership of patents containing [certain] figures." Verdict Form at 2. The jury responded "No" for each of the eight figures. *Id.* at 3. Notably, the interrogatory answered by the jury pertained only to eight identified figures in Kopin's patents that incorporated BlueRadios or Golden-i technology, but BlueRadios presented evidence of other Golden-i technology that it argued was incorporated inappropriately into works Kopin and its business partners built upon. *See, e.g.*, Trial Ex. 1534 at 5-6; Trial Tr. 1401:25-1402:12 (Hong Choi), 1684:2-6, 1685:1-8, 1690:17-1700:9 (Edwin Hernandez). BlueRadios did not argue to the jury that Kopin's inappropriate use and incorporation of its technological developments was limited to the eight figures referenced in the interrogatory. Furthermore, BlueRadios asserted and substantiated with evidence that Kopin was responsible for failures to properly recognize the inventive contributions of certain BlueRadios personnel. *See, e.g.*, Trial Exs. 427 & 513. In fact, the jury found that one of the patent applications should have included such attribution. *See* Verdict Form at 12. Therefore, the

---

[9] As I said in trial and note again: "monetary damages is not a required element of a breach of contract claim under Colorado law." Trial Tr. 2734:21-23

jury's determination that Kopin should not be required to assign co-ownership of the patents based on the enumerated figures does not foreclose the possibility that the jury endorsed all three of BlueRadios's breach-of-contract theories. Likewise, it does not follow that the jury's verdict on the breach-of-contract claim could only have rested on BlueRadios's theory that Kopin "fail[ed] to pay BlueRadios for products incorporating and methods employing Golden-i technology." *See* Pretrial Order at 2, ECF No. 627.

Even if the jury had rejected two of BlueRadios's breach-of-contract theories, however, that third theory remained, and the weight of the evidence supports BlueRadios's success on it. BlueRadios demonstrated that it provided Kopin with the requisite hardware it was tasked with producing. *See, e.g.*, Trial Tr. 423:23-424:4 (Mark Kramer). Kopin, by failing to timely communicate whether the PCBs conformed to their requirements, did not legally reject[10] the PCBs. Thus, Kopin's failure to pay BlueRadios for products it sold that incorporated Golden-i technology provided a valid theory on which a jury could have relied to conclude Kopin breached the contract.[11]

---

[10] Kopin contends it must have affirmatively accepted the PCBs. However, Colo. Rev. Stat. § 4-2-606 provides that acceptance occurs when a buyer "[f]ails to make an effective rejection" after having a reasonable opportunity to inspect the goods. Kopin baldly claims that the contract supplants this legal definition of acceptance with the common understanding of acceptance. I find this argument to be underdeveloped and not compelling.

[11] Kopin additionally objects to the damages BlueRadios argues it sustained from Kopin's breach of contract. Providing no legal authority on which to support its contention, Kopin says that any and all damages from its breach of contract are limited to the royalty non-payments. I am unpersuaded by this blanket assertion. I see no reason—in the contract or in the law—to treat this provision as equivalent to a liquidated damages term. Consistent with the analysis provided by BlueRadios's expert, Mark Pedigo, the jury determined general damages from the breach of contract to be $5,114.

Accordingly, having reviewed the record, I find the jury's verdict in favor of BlueRadios for its breach-of-contract claim is sufficiently supported by the evidence and, therefore, that granting judgment as a matter of law or a new trial would be inappropriate.

B.  Breach of the Implied Covenant of Good Faith and Fair Dealing

As with the breach-of-contract claim, BlueRadios prevailed at trial on its claim that Kopin violated the implied covenant of good faith and fair dealing. Colorado law requires this implied covenant to be read into every contract. *See Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995), *as modified on denial of reh'g* (Jan. 16, 1996). The implied covenant provides that "[w]hen one party uses discretion conferred by the contract to act dishonestly or to act outside of accepted commercial practices to deprive the other party of the benefit of the contract, the contract is breached." *Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.*, 872 P.2d 1359, 1363 (Colo. App. 1994). Kopin argues that BlueRadios's claim relying on the implied covenant effectively rewrites the express terms of the contract. Simultaneously, Kopin argues that two of BlueRadios's theories of that claim are duplicative of one pursued on the breach-of-contract claim. There are several problems with the positions Kopin advances.

First, both contentions cannot be true; the arguments are mutually exclusive. If the claim for breach of the implied covenant is merely enabling double recovery for the breach of contract, it cannot be that the claim also rewrites the contract terms. Conversely, if the breach of the implied covenant is actually an attempt to rewrite or add to the terms of the contract, it cannot be duplicating the underlying breach of the contract.

Second, the suggestion that a breach of the implied covenant is seeking to rewrite the terms of an underlying contract is well-worn and often misapplied. Here, it is agreed that Kopin

was given full discretion on how and when to use the intellectual property developed pursuant to the Golden-i program. That discretion cannot be limitless, though, and to recognize the necessary limits is not tantamount to rewriting the contract. *See* 23 Williston on Contracts § 63:22 (4th ed.) ("[E]ven where a defendant is given absolute discretion, it must exercise that discretion in good faith . . . ."). BlueRadios provided evidence that Kopin abused its authority under the contract and misappropriated sensitive and valuable technological concepts to the unanticipated and direct detriment of BlueRadios.

Third, BlueRadios's theories for the breach of the implied covenant are distinct from its theories for breach of contract. In the Pretrial Order, BlueRadios set out three theories of its claim based on the implied covenant, stating:

> Kopin breached the covenant of good faith and fair dealing implied in the Parties' contract and contract addendum by excluding BlueRadios' [sic] from the benefits and profits of monetization of Golden-i technology, precluding BlueRadios from enjoying the benefits of Kopin's use and enjoyment of BlueRadios' technology, and incorporating BlueRadios' developments in issued patents and patent applications without naming BlueRadios as a co-owner, as required by the contract.

Pretrial Order at 3. Kopin characterizes the first and second theories—the exclusion of BlueRadios from the benefits and profits of monetizing the Golden-i technology and precluding BlueRadios from enjoying the benefits of Kopin's use and enjoyment of BlueRadios's technology—as equivalent to BlueRadios's first theory for its breach-of-contract claim—that Kopin failed to pay BlueRadios for products incorporating and methods employing Golden-i technology. These theories are distinct. For example, the act of abusing its discretion vis-à-vis Golden-i technology does not mean Kopin violated the explicit terms of the contract. I told the parties as much at trial. Trial Tr. 2735:15-19 ("[I]f the jury finds that certain contributors are deliberately or carelessly left off patent applications, such an action, while perhaps not violative of the letter of the contract, certainly undermines the spirit of good faith and fair dealing.").

14

However, exercising discretion in a way contrary to the expectations and spirit of the agreement is a harm squarely addressable by the implied covenant of good faith and fair dealing. *See Amoco Oil*, 908 P.2d at 498 ("The duty of good faith and fair dealing applies when one party has discretionary authority to determine certain terms of the contract. . . ."). It is the abuse of such discretion that invokes the implied covenant.[12] At trial, BlueRadios presented evidence that it entered into a contract with Kopin, Trial Exs. 53 & 56, that it performed its obligations under that contract, *see e.g.*, Trial Tr. 423:23-424:13 (Mark Kramer), and that Kopin, by abusing the discretion afforded to it under the contract, denied BlueRadios the benefit of the contract, *see e.g.*, Trial Tr. 473:14-19, 476:17-19, 477:21-23 (Mark Kramer). BlueRadios thus proved a prima facie case of breach of the implied covenant of good faith and fair dealing. *See Wells Fargo Realty Advisors Funding*, 872 P.2d at 1363.

Kopin also contends the damages calculated by the jury for breach of the implied covenant are for the same harm associated with the damages for BlueRadios's breach-of-contract claim. Were this true, Kopin insists, it would unfairly lead to double recovery. The only similarity these damages have is that they are both contract damages. As BlueRadios sets out in its Brief in Opposition to the JMOL Motion, the harms for which the jury sought to compensate

---

[12] Similarly, contrary to Kopin's insistence, it is of no matter that the terms were well dickered by represented corporate parties—there is an inherent power imbalance. As explained further in *Amoco Oil*:

> Good faith performance cases typically involve arm's-length transactions, often between sophisticated business persons. The relative strength of the party exercising discretion typically arises from an agreement of the parties to confer control of a contract term on that party. The dependent party then is left to the good faith of the party in control.

908 P.2d at 498 (internal quotation marks omitted).

BlueRadios on its two contract claims are plausibly distinct. Accordingly, Kopin is not entitled to

judgment as a matter of law or a new trial on BlueRadios's implied-covenant claim.


## C.  Violation of CUTSA and DTSA

To recover under CUTSA, BlueRadios had to show that it possessed valid trade secrets,

that the trade secret was used or disclosed without consent, and that Kopin knew or should have

known that the trade secret was acquired by improper means. *See Gates Rubber Co. v. Bando*

*Chem. Indus., Ltd.*, 9 F.3d 828, 847 (10th Cir. 1993); *see also* Instruction 3.14, Jury Instructions

at 45, ECF No. 715-1. For DTSA, BlueRadios had to show those same elements and also that the

trade secret information implicated interstate commerce. *See, e.g.*, *Arctic Energy Servs., LLC v.*

*Neal*, No. 18-cv-00108-PAB-KLM, 2018 WL 1010939, at *2 (D. Colo. Feb. 22, 2018) ("Similar

to the requirements under Colorado law, a plaintiff asserting a claim for misappropriation of

trade secrets under DTSA must establish: (1) the existence of a trade secret that relates to a

product or service used in, or intended for use in, interstate or foreign commerce; (2) the

acquisition of the trade secret, or the use or disclosure of the trade secret without consent; and (3)

the person acquiring, using, or disclosing the trade secret knew or had reason to know that the

trade secret was acquired by improper means.").


### 1.  Valid Trade Secrets

According to Colorado and federal law, whether certain information satisfies the criteria

to be deemed a trade secret is an inquiry for the fact-finder. *Doubleclick Inc. v. Paikin*, 402 F.

Supp. 2d 1251, 1257 (D. Colo. 2005) ("What constitutes a 'trade secret' is a question of fact for

the trial court."); *Better Holdco, Inc. v. Beeline Loans, Inc.*, 666 F. Supp. 3d 328, 384 (S.D.N.Y.

2023) ("'The existence, *vel non*, of a trade secret usually is treated as a question of fact,' and

properly the province of the jury.") (quoting *Chevron U.S.A., Inc. v. Roxen Serv., Inc.*, 813 F.2d

26, 29 (2d Cir. 1987)). Trade secrets are only such information that is (1) not generally known to,

or readily ascertainable through proper means by, another person who can obtain economic value

from the disclosure or use of the information; (2) the subject of reasonable measures to keep such

information secret; and (3) derives independent economic value, actual or potential, from being

secret. *See* 18 U.S.C. § 1839(3), Colo. Rev. Stat. § 7-74-102(4).

Before delving into these criteria, I address an argument Kopin raised pretrial vis-à-vis

jury instructions and now raises again: it insists that trade secrets must be defined in

noncategorical terms and with some arbitrarily high degree of specificity and declares

unwaveringly that BlueRadios's efforts fall short. By how much? Kopin does not say.[13] The

cases Kopin cites in furtherance of this point are either non-binding or easily distinguishable.

Accordingly, I reject this argument as I did before and continue with my analysis.

BlueRadios specified five categories of trade secrets that captured the breadth of

proprietary information it argued Kopin misappropriated. Those categories, as presented to the

jury, were the following: (1) the board support package designed for wearable computer with

head-mounted display; (2) the miniaturized printed circuit board designed for wearable computer

with head-mounted display; (3) the graphical user interface designed for wearable computer with

head-mounted display; (4) the technological platform designed for wireless head-mounted

display platform; and (5) the figures and explanations of figures contained in certain patents on

---

[13] I postulate that this argument is better raised as a challenge to the first component to trade
secret status: its secrecy. It follows that the broader a proposed trade secret is defined, the less
likely it is to be unknown or hidden from someone seeking to learn of it.

17

which Kopin did not name BlueRadios as a co-owner. *See* Verdict Form at 7.[14] For each of these

categories, BlueRadios presented evidence at trial showing that information within them was

generally unknown or, at a minimum, difficult to ascertain. *See, e.g.*, Trial Tr. 922:22-23

(Wilfred Tucker) ("There was nothing on the market that matched our specification of what we

were trying to accomplish."), 346:1-12 (Mark Kramer) (discussing the absence of competitors

capable of transmitting video via Bluetooth), 1607:18-23 (Edwin Hernandez) (surveying

technology in December 2006, "I'm not aware of anything that resembles the Golden-i at all").

Moreover, BlueRadios put forward evidence that it made efforts to maintain the

confidentiality of this sensitive information, such as requiring employees to sign non-disclosure

agreements and restricting access to the online database housing that information. Trial Tr.

---

[14] Within the first four of these five categories in the Verdict Form were eighteen separate pieces
of information BlueRadios included to concretize the broader categories. BlueRadios, in an
enormous string citation, highlights the evidence at trial that demonstrated how each of these
eighteen purported trade secrets fit into the categories:

> Tr. 928:25-944:3, Ex. 1659, 1530, 1692, 1693 (miniaturized form factor, cats. 1, 2,
> 4); Tr. 944:3-952:22, 1679, 1678, 1525, 1692 (hardware architecture, cats. 1, 2, 4);
> Tr. 952:22-956:1, Ex. 1666 (microSD card, cats. 1, 4); Tr. 956:2-962:20, Ex. 1520,
> 1524, 1681A (headmounted display drivers, cats. 1, 3, 4); Tr. 962:21-975:3, Ex.
> 1681B 1665, 1691 (Bluetooth communication, cats. 1, 4); Tr. 975:4-978:19, Ex.
> 1676A (wireless media transmission, cat. 1); Tr. 978:19-987:4, Ex. 1692, 1686C
> (voice recognition/noise cancellation, cats. 1, 2, 4); Tr. 987:4-991:6, Ex. 1676B
> (audio and video optimization for head-mounted display, cats. 1, 4); Tr. 991:7-
> 993:24, Ex. 132 (audio-enabled virtual network computing, cats. 1, 4); Tr. 994:1-
> 997:22, 1000:13-1001:4, Ex. 1681C, 1951 (headtracking, cats. 1, 2, 4); Tr. 1001:5-
> 1003:14, Ex. 1681D (base software/firmware, cats. 1, 3, 4); Tr. 1003:15-1005:2,
> Ex. 1685 (cloud server and data storage retrieval, cats. 1, 4); Tr. 1005:3-1006:16,
> Ex. 1690 (Windows and Linux embedding, cats. 1, 3, 4)7; Tr. 1006:17-1009:10,
> Ex. 1686B (firmware bootloader, cats. 1, 4); Tr. 1009:14-1012:12, Ex. 1666B (USB
> interface and connectivity, cats. 1, 2, 4); Tr. 1012:13-1015:11-20, Ex. 1665 (head
> computation, cats. 1, 2, 4); Tr. 1015:21-1024:1, Ex. 1686C, 1686D (graphical user
> interface, cats. 1, 3, 4); Tr. 1024:2-23 (Golden-i as a whole, cats. 1-4).

Opp'n to Mot. for JMOL at 22-23, ECF No. 756.

609:13-610:3 (Mark Kramer). Kopin contends that BlueRadios's willingness to give Kopin discretion over how to use jointly developed intellectual property undermines its efforts to preserve the secretive nature of that information. However, the presence of a confidentiality section of the contract and evidence that BlueRadios never intended for Kopin to abuse the discretion given to it by sharing it with third parties or including it within unattributed patent applications[15] sufficiently counter Kopin's argument.

As to the independent economic value of the trade secrets, BlueRadios cites substantial evidence of their worth that was presented to the jury. *See e.g.*, Trial Tr. 2146:25-2147:2, 2183:13-21 (Steven Pombo), 2393:10-23 (Christopher Parkinson); Trial Exs. 69 (reporting third-party Mistral created a technological back-up plan that saved Kopin time and money), 344 (same), 196 (giving access to other third-party Ittiam BlueRadios's Gen 2 PCB would make porting to Gen 3 "quicker"), 209 (sharing so-called negative trade secrets with Mistral to save time on trial and error), 211 (same), 560 (noting that giving Gen 2 boards to Mistral and Ittiam would save time spent on code and driver development). Lastly, neither party disputes the final element of the DTSA claim—that this information would have been used in products that would enter interstate commerce.

---

[15] Kopin makes much of the parties' clear anticipation of patent applications (including referring to efforts BlueRadios made to patent certain concepts). These arguments do not persuade me that BlueRadios did not understand that patent applications would necessarily destroy the secretive nature of trade secrets because BlueRadios distinguished all trade secrets that would have been imbedded in patent application figures and explanations and the subset of those trade secrets appearing in patent applications "on which Kopin did not name BlueRadios as a co-owner." *See* Verdict Form at 7. Put differently, BlueRadios sought to identify and seek remedies for trade secret misappropriation of intellectual property not subject to Kopin's efforts to destroy that property's secretive status for its benefit. Any argument from Kopin that BlueRadios destroyed its own trade secrets within the five categories it offers is not developed.

Therefore, consistent with the jury's determination, the evidence shows that four of the five categories (i.e., categories One, Two, Four, and Five) of BlueRadios's proposed trade secrets under CUTSA, and three of the four categories (i.e., categories One, Two, and Four) of its proposed trade secrets under DTSA, constituted legally cognizable trade secrets.

### 2. Misappropriation

A party seeking to prove the act of misappropriating trade secrets must show that the trade secrets were acquired, used, or disclosed through improper means. Colorado law clarifies the contours of what acts constitute misappropriation:

> Under the UTSA, "misappropriation" is defined in pertinent part as the "[a]cquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." § 7–74–102(2)(a), C.R.S. 2010. " 'Improper means' includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." *Id.* at § 7–74–102(1), C.R.S. 2010. As a prior division of this court observed, "[t]here is no requirement in Colorado's [UTSA] that there be actual use or commercial implementation of the misappropriated trade secret for damages to accrue. Misappropriation consists only of the improper disclosure or acquisition of the trade secret." *Sonoco Prods. Co. v. Johnson*, 23 P.3d 1287, 1290 (Colo. App. 2001).

*Saturn Sys., Inc. v. Militare*, 252 P.3d 516, 525 (Colo. App. 2011). In its JMOL Motion, Kopin again insists that the discretionary authority given to it under its contract with BlueRadios insulates it from any allegations of impropriety concerning trade secrets. And again, this is not so. While its acquisition of the information may be insulated from allegations of impropriety, the later use or disclosure of those trade secrets does not necessarily benefit from the same protection. BlueRadios provided substantial evidence of Kopin's failure to maintain sufficient protections to safeguard sensitive materials against intentional or incidental sharing. Moreover, BlueRadios presented comparative evidence of competitors later contributions, highlighting the

20

apparent incorporation of technology derived from its Golden-i contributions. Such evidence was
sufficient for the jury to find either conscious or constructive knowledge of the misappropriation
on Kopin's part. Therefore, the evidence is legally sufficient to support the jury's verdict; there is
an adequate basis to conclude that BlueRadios's trade secrets were improperly used and
disclosed and Kopin knew or should have known about the use and disclosure of those trade
secrets.

### 3.  Profit

The jury awarded BlueRadios $591,660 in unjust-enrichment damages for its CUTSA
claim and $3,910,466 in unjust-enrichment damages for its DTSA claim. Despite some
challenges in obtaining discovery concerning Kopin's more recent business performance,
BlueRadios presented evidence reflecting Kopin's profits during the period following the initial
misappropriation. It did so by presenting quantitative analysis through the testimony of Mark
Pedigo, BlueRadios's expert on damages. Mr. Pedigo testified at length on Kopin's financial
performance. Because BlueRadios presented an account of Kopin's profit from products
incorporating its trade secrets, the burden shifted to Kopin to show the appropriate
"apportionment" of that profit, i.e., the amount of its profit that was actually attributable to any
misappropriation of BlueRadios's trade secrets. Kopin did not convincingly limit the broad 85%
apportionment endorsed by Dr. Edwin Hernandez, BlueRadios's technical expert. Accordingly,
the CUTSA and DTSA unjust-enrichment damages that were calculated by the jury are within
the realm of reasonable based on the evidence presented.

D.  Concerns for Duplicative Recovery

As explained, the jury awarded damages for Kopin's breach of the explicit terms of its

contract with BlueRadios, for Kopin's breach of the implied covenant of good faith and fair

dealing, and for Kopin's violations of CUTSA and DTSA. Kopin insists these damages are

duplicative in two ways. According to Kopin, the breach-of-contract damages are duplicative of

the trade-secret misappropriation damages and, separately, the CUTSA damages are duplicative

of the DTSA damages. These arguments are meritless.

The harm to BlueRadios from the contract breaches did not mirror that from the improper

use of the trade secrets. For example, the breach of the implied covenant could reasonably be

understood to encompass such harm as missed revenue from ownership rights in the patents

which the jury found BlueRadios's employees should be named as inventors. such attribution[16]

should have given BlueRadios certain cognizable property rights, including most obviously

licensing rights for the patents. This harm is not compensated by the damages contemplated by

CUTSA and DTSA.

Regarding the extent to which the state and federal trade-secret misappropriation statutes

are duplicative, Kopin cites nonbinding case law in which federal courts have determined that

the damages available under a different state's Uniform Trade Secrets Act are effectively

duplicated under DTSA. *See, e.g.*, *Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.*, 108

F.4th 458, 488 (7th Cir. 2024) ("[B]ecause Motorola can recover all of Hytera's global profits

caused by its illicit acquisition and use of Motorola's trade secrets . . . any recovery under the

---

[16] Although BlueRadios alleged that, per its CUTSA claim, the figures and diagrams contained in
certain patent applications constituted trade secrets that Kopin misappropriated, such diagrams
and figures are not and were never argued, let alone proved, to be coextensive with all
BlueRadios's patentable concepts.

22

Illinois Trade Secrets Act would duplicate recovery to Motorola for the same injuries from the loss of its trade secrets."). These cases, however, all address misappropriating conduct incurred under both statutes for the same operative period of misappropriation. As Kopin rightly acknowledged, DTSA is not retroactive and only became effective as of May 11, 2016. BlueRadios posits that the discrepancy between the amount of damages the jury awarded based on Kopin's CUTSA violation ($591,660) and the amount of damages it awarded based on Kopin's DTSA violation (i.e., $3,910,466) can be explained by the jury's awareness of this restriction on DTSA's applicability. In other words, BlueRadios argues that the jury was presented information on when DTSA came into effect and, to avoid double counting, awarded damages for misappropriation up to May 11, 2016, under CUTSA and awarded damages for all misappropriation after that date under DTSA. Kopin dismisses this theory as "fanciful." I not only disagree with Kopin, but do not and cannot view what appears as a reasonable and valid theory to explain the calculation with an undeserved gimlet eye. As the Tenth Circuit explained in *Prager v. Campbell County Memorial Hospital*:

> The jury holds the exclusive function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact. It is a fundamental legal principle that the determination of the quantum of damages in civil cases is a fact-finder's function. The jury, who has the first-handed opportunity to hear the testimony and to observe the demeanor of the witnesses, is clothed with a wide latitude and discretion in fixing damages, pursuant to the court's instructions, deemed proper to fairly compensate the injured party. Further, the amount of damages awarded by a jury can be supported by any competent evidence tending to sustain it.

731 F.3d 1046, 1063 (10th Cir. 2013) (internal citations and quotation marks omitted). Inferring that the damages the jury awarded under CUTSA preceded the damages the jury awarded under DTSA is plausible and logical in this case. Moreover, when the two temporally distinct damages are added together, the sum is not so excessive as to warrant judicial second-guessing. *See Hill v.*

*J.B. Hunt Transport, Inc.*, 815 F.3d 651, 668 (10th Cir. 2016) ("[A] jury's determination of fact is considered inviolate absent an award so excessive or inadequate as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial.") (citation and internal quotation marks omitted).

In sum, because the evidence presented at trial was sufficient to support the jury's determination that Kopin misappropriated BlueRadios's trade secrets under both CUTSA and DTSA and was sufficient to support the related damages awarded by the jury, I deny Kopin's requests for judgment as a matter of law and for a new trial in relation to BlueRadios's CUTSA and DTSA claims.

E.  Correction of Inventorship

As to the last of the legal claims—correction of inventorship, the jury found that John Sample and Wilfred Tucker were wrongly omitted as contributors to United States Patent No. 8,909,296. This determination was made on the basis of seeing and hearing evidence of these individuals' significant and inventive contributions, which ultimately allowed the jury to find that "the alleged . . . co-inventors . . . prove[d] their contribution to the conception" of the particular patent claim. *See Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 160 (Fed. Cir. 1998). Contrary to Kopin's characterization of the evidence at trial, BlueRadios's related evidence was not limited to testimony; there was documentary evidence to show, for example, proxy-switching gateways within the Golden-i project, which was unsurprisingly related to the conception of what BlueRadios referred to as the "Proxy Patent." *See, e.g.*, Trial Exs. 42, 115, 197, & 1590. Testimony helped contextualize that information. *See, e.g.*, Trial Tr. 1046:14-1048:2 (Wilfred Tucker), 1521:12-1525:2 (Randall Rader). Therefore, the evidence sufficiently

supports the jury's verdict[17] that John Sample and Wilfred Tucker should be credited as

inventors on United States Patent No. 8,909,296.

* * *

With there being no grievous legal oversight or prejudicial error and the evidence

sufficiently supporting the jury's verdict on each of BlueRadios's claims, Kopin's JMOL Motion

is DENIED.

## IV.  Equitable Matters

As mentioned above, two equitable matters were reserved for my determination:

BlueRadios's claims for disgorgement damages and its claims for exemplary damages. The jury

was instructed on these claims and provided advisory responses to interrogatories on whether the

damages should be awarded and, if so, what the amount of damages should be. For disgorgement

damages, the jury found BlueRadios should be awarded $3,500,000 on its breach-of-contract

claim and $7,200,000 for Kopin's breach of the implied duty of good faith and fair dealing.

Verdict Form at 4, 6.  For exemplary damages, the jury found BlueRadios should receive

$1,183,321 on its CUTSA claim and $7,820,932 on its DTSA claim. *Id.* at 9, 11.

---

[17] Relief in the instant case is being granted under 35 U.S.C. § 256 in accordance with the juries factual and legal determinations. I note that injunctive relief, which includes an order for the Director of the United States Patent and Trademark Office to correct inventorship on a specific patent, is equitable in nature. However, because I adopt the findings of the jury, who have been instructed on the standards for measuring significant contributions to patents and grounds for correction, as to this point, I do not engage in a full-throated equitable analysis with independent findings of fact and conclusions of law.

A. Disgorgement Damages Conclusions of Law

In awarding the disgorgement damages for Kopin's breach of contract and breach of the implied covenant of good faith and fair dealing, the jury was instructed that "BlueRadios claims it is entitled to 'disgorgement' damages, which are defined as any profits earned by Kopin from the Golden-i Project that are attributable to BlueRadios' intellectual property." Instruction No. 3.7, Jury Instructions at 35, ECF No. 715-1. Post-trial, Kopin argues that the evidence presented at trial to support BlueRadios's damages under CUTSA and DUTSA and that underlying its contract-related disgorgement damages establishes that the trade-secret misappropriation and disgorgement damages are duplicative. The decision to award the equitable remedy of disgorgement damages for violating a contract is within my "sound discretion." *McKinney v. Gannett Co.*, 817 F.2d 659, 670 (10th Cir. 1987) ("'[A]n appeal to the equity jurisdiction of the federal district courts . . . is an appeal to the sound discretion which guides the determinations of courts of equity.' Thus, application of equitable doctrines rests in the sound discretion of the district court. . . .") (quoting *Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1324 (10th Cir. 1982)); *Klein-Becker USA, LLC v. Englert*, 711 F.3d 1153, 1163 (10th Cir. 2013) ("Courts have wide discretion to fashion appropriate equitable remedies such as disgorgement of profits."). I note, however, that the function of imposing that sanction is to undo the unjust enrichment brought about from breaching the contract. I find Kopin's argument on the duplicative nature of the equitable disgorgement damages to carry weight. In contrast to the specific instruction the jury received regarding the temporal application of CUTSA and DTSA, the jury was not provided any instruction indicating that it should separately consider the contract-related disgorgement damages and the CUTSA and DUTSA unjust-enrichment damages. Nor has BlueRadios pointed to any evidence that would have provided a basis for the jury or that could provide a basis for me

26

to distinguish these damages. Thus, I conclude, as a matter of law, that BlueRadios has not shown any award of disgorgement damages is appropriate and decline to award such damages.

## B. Exemplary Damages Findings of Fact and Conclusions of Law

The jury was informed of the appropriate legal standard for awarding exemplary damages. The instructions provided that, in order to award exemplary damages, "there must be clear and convincing evidence of the following: 1. Willful conduct; and 2. Malicious conduct." Instruction No. 3.19, Jury Instructions at 56, ECF No. 715-1. The instructions provided clear definitions for each of those terms. *Id.* at 22 (Instruction No. 1.9 (defining "clear and convincing evidence)), 56 (Instruction No. 3.19 (defining "willful" and "malicious")). On the verdict form, the jury indicated that "after review of all the evidence, [it] firmly believe[d] it is highly probable that Kopin acted with willfulness and malice in misappropriating one or more of BlueRadios's trade secrets." Verdict Form at 9, 11, ECF No. 726. Although advisory, I regard the jury's careful scrutiny of the breadth of evidence as informative and helpful. Moreover, I see no compelling reason to disagree with its underlying analysis.

In support of its request of exemplary damages under CUTSA and DTSA, BlueRadios presented evidence of actions Kopin took that were directly contrary to the intent of the contract and addendum, *see* Trial Ex. 53 at 6, Trial Ex. 1154; Trial Tr. 2462:3-11 (Christopher Parkinson), 453:13-24 (Mark Kramer), including consciously sharing sensitive material when Kopin was aware doing so harmed BlueRadios, *see* Trial Tr. 2183:19-21 (Steven Pombo), 1267:17-1268:4 (John Fan), withholding information necessary to perform the contract, *see* Trial Tr. 1377:5-16 (John Fan), misrepresenting the status of the joint venture Golden-i project, *see* Trial Tr. 806:20-807:9 (Mark Kramer), 1288:24-1289:6 (John Fan), and generally self-serving

unresponsiveness at key moments in the business relationship, *see* Trial Exs. 193, 1536, 1587. I find this is clear and convincing evidence of Kopin's acting with intentional disregard to or to effectuate harm on BlueRadios and consequently find that Kopin's violations of CUTSA and DTSA were undertaken with willful and malicious conduct. Thus, BlueRadios is entitled to exemplary damages on its CUTSA and DTSA claims.

As mentioned above, the jury also provided the amount of exemplary damages it determined should be awarded under CUTSA and DTSA. For the CUTSA claim, the jury indicated BlueRadios should receive $591,660 in unjust enrichment damages and recommended and award of $1,183,321 in exemplary damages. Verdict Form at 9, ECF No. 726. On the DTSA claim, the jury found BlueRadios was entitled to $3,910,466 in unjust enrichment damages and recommended an award of $7,820,932 in exemplary damages. *Id.* at 11. It is clear, from both these recommended awards of exemplary damages, that the jury intended to provide the maximum amount of exemplary damages authorized by law. Considering the evidence set out above, I agree with the jury that such an award is supported by clear and convincing evidence.

Exemplary damages under DTSA are permitted to be up to twice the amount of unjust enrichment damages. 18. U.S.C. § 1836(d)(3)(C). Unlike DTSA, however, the exemplary damages under CUTSA may not exceed the award made for unjust enrichment. *See* Colo. Rev. Stat. § 7-74-104 ("If the misappropriation is attended by circumstances of fraud, malice, or a willful and wanton disregard of the injured party's rights and feelings, the court or the jury may award exemplary damages in an amount not exceeding the award made under subsection (a) of this section [for unjust enrichment damages]"). Accordingly, while preserving the clear intent of

the jury to award the maximum penalty available, I reduce the award of exemplary damages for the CUTSA claim, to $591,660, the amount awarded in unjust enrichment damages.[18]

\* \* \*

On the equitable matters reserved for the Court's determination, then, I deny BlueRadios's request for disgorgement damages on its breach of contract claims and award BlueRadios $591,660 in exemplary damages on its CUTSA claim and $7,820,932 in exemplary damages on its DTSA claim.

## V.  BlueRadios's Motion to Strike

Before undergoing the analysis needed to resolve BlueRadios's Motion for Permanent Injunction, I must assess the scope of evidence I consider. In opposition to BlueRadios's request for a permanent injunction, Kopin submits three declarations from three business representatives (including Kopin itself) that principally discuss the extent to which a permanent injunction would potentially harm business performance. In response, BlueRadios moves to strike these declarations, arguing that they are untimely, are strategic attempts to circumvent the cross-examination process, and are efforts to relitigate the jury's findings as to trade secret misappropriation. Regarding timeliness, BlueRadios insists that I ruled that I would "hear equitable and legal matters 'at the same time' at trial." *See* Pl.'s Reply in Supp. of Mot. to Strike at 1, ECF No. 770. This brief comment, which I made at the Final Trial Preparation Conference

---

[18] BlueRadios requests that I enhance the unjust enrichment damages awarded by the jury on the CUTSA claim so that the full damages for that claim result in the same total. Pl.'s Am. Proposed FOFCOL Regarding Exemplary Damages at 10, ECF No. 767. I find the jury was properly instructed on the unjust enrichment damages it could award, *see* Jury Instructions at 55, and I decline to override its finding that $591,660 appropriately represents the amount that Kopin was unjustly enriched.

on September 6, 2023, and to which BlueRadios cites, was said in the context of verdict forms
and jury instructions vis-à-vis claims with both legal and equitable components. In sum, I
proposed separate verdict forms if there were to be distinctions drawn between "jury trial" and
"bench trial" matters.[19] However, in the end, BlueRadios did not submit a separate proposed
verdict form for entirely equitable remedies (e.g., a permanent injunction). Therefore, it was
reasonable for Kopin to assume that the entirely equitable relief would be addressed following
the jury trial and that it should not present evidence at trial in opposition to such relief being
granted. *See* Charles A. Wright & Arthur R. Miller 9 Fed. Prac. & Proc. Civ. §§ 2305, 2308 (4th
ed. 2024); *see also Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510 (1959) (in cases of
legal and equitable matters "the trial court will necessarily have to use its discretion in deciding
whether the legal or equitable cause should be tried first."). Indeed, concerning the sequence in
which to hear matters of equity, it is common for courts to resolve matters with solely legal
remedies or those with legal and equitable components before assessing the equitable claims,
particularly if the jury's factual findings are of relevance there as well. *See, e.g.*, *Williams v.
Genesis Fin. Techs. Inc.*, 790 F. App'x 161, 165 (10th Cir. 2019) (demonstrating how a court
may resolve equitable matters after "legal and equitable claims are tried together" and indicating
how the jury's findings may or may not bind the court at that stage). Concerning the lack of
cross-examination to assess the veracity and probative worth of the declarations, such a process

---

[19] The full quote provides the necessary context:

> "Now, with respect to jury instructions, and there is a problem because some of
> the claims require equitable relief which will not confront the jury, and so
> separate forms of verdict will be needed for those as the bench trial, and I will
> hear all of these matters, jury and bench trials, at the same time. The proposed
> unified set of jury instructions and verdict forms are due November 6, 2023 . . . ."

Final Trial Preparation Conference Tr. 9:17-23 (ECF No. 522).

is not a requirement. However, the lack of an adversarial inquiry does reduce the persuasiveness of the underlying evidence. Lastly, and related to my analysis of the requested permanent injunction, the scope of the evidence presented at trial was, understandably, centered around events occurring up to and including 2016. The declarations, which include two from businessmen from companies other than Kopin, plainly relate to more recent events and subject matter distinct from the issues at the heart of the trial. While not endorsing the jury's verdict, these declarations contemplate what present or future effects might exist based on extrapolations from that verdict. This is meaningfully different from otherwise impermissible attempts to relitigate a case. Therefore, the Motion to Strike the Declarations of Craig Brown, John Lyon, and Michael Murray (ECF No. 768) is DENIED.

## VI. BlueRadios's Motion for a Permanent Injunction

After succeeding on its claims of trade secret misappropriation at trial, BlueRadios now moves for a permanent injunction. Specifically, it seeks:

> a permanent injunction enjoining Kopin from selling, offering for sale, licensing, and/or further disclosing, disseminating, or using BlueRadios' trade secrets pertaining to Categories 1, 2, and 4 of BlueRadios' trade secrets presented at trial: (1) board support package for wireless computer with head-mounted display; (2) printed circuit board for wireless computer with head-mounted display; and (4) technological platform for wireless computer with head-mounted display.

*See* Mot. for Permanent Inj. at 1, ECF No. 747. The well-known standard for analyzing whether an injunction is appropriate has four elements: the movant must show "(1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *AMG Nat'l Corp. v. Wright*, No. 20-cv-02857-PAB-KLM, 2021 WL 4170459, at *11 (D. Colo. Sept. 14, 2021) (quoting *Sw. Stainless, LP v.*

*Sappington*, 582 F.3d 1176, 1191 (10th Cir. 2009)). Unfortunately for BlueRadios, it cannot carry its burden as to any of these elements.

Before delving into the analysis fully, there is another threshold matter I must first resolve. Although not necessary, BlueRadios cites[20] external statutory and contractual authority for me to grant an injunction. *See* Colo. Rev. Stat. § 7-74-103 ("Temporary and final injunctions including affirmative acts may be granted on such equitable terms as the court deems reasonable to prevent or restrain actual or threatened misappropriation of a trade secret."); 18 U.S.C. § 1836(b)(3)(A) (outlining that a court may "grant an injunction . . . to prevent any actual or threatened misappropriation . . . on such terms as the court deems reasonable, . . . [and] if determined appropriate by the court, requiring affirmative actions to be taken to protect the trade secret . . . ."). Congressional pronouncements on the application of injunctions provide clarity but they are not the source of my authority; it is axiomatic that injunctions—like all forms of equitable relief—are a tool to be invoked with judicial discretion. *See* 25 Williston on Contracts § 67:58 (4th ed.) (". . . it is definitely within the sound discretion of the court to grant or deny the injunction."). And while the contract between BlueRadios and Kopin may show the parties contemplated an injunction being used to enforce the contract's terms, obviously this court is not bound by the contract to commit acts within its sole purview. *See Dice v. Clinicorp, Inc.*, 887 F. Supp. 803, 810 (W.D. Pa. 1995) ("[I]t is clear that the parties to a contract cannot, by including certain language in that contract, create a right to injunctive relief where it would otherwise be inappropriate.") (quoting *Firemen's Ins. Co. of Newark v. Keating,* 753 F. Supp. 1146, 1154

---

[20] BlueRadios refers to § 7-74-103 of CUTSA, regarding the applicability but does not indicate what portion of the statutory language it is quoting. *See* Mot. for Permanent Inj. at 2. Moreover, the citation to DTSA is imprecise, referring to all remedies available in private civil actions, not just the injunctive relief described in 18 U.S.C. § 1836(b)(3)(A). *Id.*

(S.D.N.Y. 1990)). *See also Baker's Aid v. Hussmann Foodservice Co.*, 830 F.2d 13, 16 (2d Cir. 1987). My basis for granting or denying the request for an injunction does not hinge on the presence of such language.

A. Success on the Merits

I turn now to my analysis of whether to grant a permanent injunction. Beginning with showing a likelihood of success, there are two faults with BlueRadios's arguments. First, having prevailed at trial on its trade secret misappropriation claims, it has not proven or demonstrated a substantial likelihood of proving continuing or threatened misappropriation. Kopin's misappropriation of trade secrets, a jury found, extended to some point after "May 11, 2016." *See* Verdict Form 11, ECF No. 726. This is a far cry from misappropriation occurring within the past 8 years, occurring currently, or occurring imminently. Second, and more importantly, the evidence that BlueRadios provides to illustrate more recent trade secret misappropriation is inadequate and disconnected. Although relevant, but not directly so, BlueRadios refers obliquely[21] to the testimony from Will Tucker. Mr. Tucker testified at length about the technology in which BlueRadios innovated and his testimony was framed in the context of the trade secret categories counsel identified. However, this testimony does not sufficiently show that there is recent, ongoing, or imminent misappropriation of BlueRadios's technological contributions.

---

[21] Frustratingly, BlueRadios does not cite directly to the transcript but instead cites to its own citations elsewhere, specifically its Brief in Opposition to Kopin's Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial (ECF No. 756). Such imprecision makes review of the submitted materials more difficult.

To the extent there is any evidence directly cited for this motion, it is to Exhibits 2000 and 2001, neither of which were admitted for evidentiary purposes.[22] *See* Reply in Support of Mot. for Permanent Inj. at 5. More compelling would be the evidence presented in expert witness Edwin Hernandez's report and testimony, which refers to alleged misappropriation that occurred more recently. *See, e.g.*, Trial Tr. at 1692:20-24 (Edwin Hernandez) (Q: "And did that -- and you write here, you've got since 2012 to 2019. Did you find that that contribution of 85 percent remained the same going forward?" A: "Yeah. The evidence shows that it's exactly the same as nothing changed substantially to change that position."). However, Dr. Hernandez's report did not discuss the categories of trade secrets that were used at trial. As for his testimony, the record is voluminous and it is not for the Court to search for unidentified dots to connect the multiple needed components to make movant's argument function. Moreover, the most recently dated specific piece of technology Dr. Hernandez referred to on the stand appears to be from 2019. Trial Tr. at 1816:21-1817:9 (Edwin Hernandez) (discussing 2019 email referring to "FWS-Crew served head-mounted display"); *but see* 1693:11-15 (Edwin Hernandez) ("Yes. So, basically, like, reviewing the technology at the timestamp of 2023, and seeing how also some deposition transcripts from Dr. Choi, I think it is, and some other information that is in my report to conclude that the 85 percent remains the number, still 2023."). While intimately familiar with the trial materials, it is not apparent—let alone uncontroverted—to me that which evidence presented from more recent years demonstrates misappropriation of the same trade secrets in technology associated with Kopin circa 2016.

---

[22] I note that Exhibit 2001 was admitted as a demonstrative at trial. Moreover, consistent with my ruling regarding BlueRadios's Motion to Strike Declarations of Craig Brown, John Lyon, and Michael Murray, I do not limit my review of the evidence to only those exhibits presented at trial. This form of relief was not to be decided (or advised upon) by the jury. Therefore, to the extent these exhibits have probative value, I do consider them.

B. Irreparable Harm

BlueRadios boldly asserts that it is "excused from the burden of establishing that failure
to enjoin Kopin would cause BlueRadios irreparable harm." Mot. for Permanent Inj. at 4 (citing
*Seeley Int'l Pty Ltd v. Valeriy Maisotsenko, M-Cycle Indus. Inc*, No. 21-cv-01350, 2023 WL
7458361, at *4 (D. Colo. Aug. 2, 2023)). This is an erroneous and reductive description of the
law, based on a self-serving reading of a non-binding, contrary opinion.[23] Simply put,
BlueRadios's repeated references to *Seeley* are misplaced because the facts of that case are
largely incomparable to the instant case and its cited legal proposition, if construed as broadly as
BlueRadios contends it should be, would fly in the face of Tenth Circuit precedent.

As to the factual dissimilarities, in *Seeley*, the violations of CUTSA and DTSA were far
closer in time to the injunctive relief sought; in fact, the violations remained ongoing after
litigation began. *See* 2023 WL 7458361, at *2 ("During this litigation, Defendants have posted
pictures, videos, and other marketing materials on the internet promoting Plaintiff's intellectual
property and actual products as their own"). BlueRadios has made similar representations. *See*
Mot. for Permanent Inj. at 4. However, as outlined above, it has failed to adequately substantiate
them.

As to the law, I agree with Kopin's interpretation of Tenth Circuit precedent that states
that CUTSA and DTSA prescribe injunctive relief as an appropriate remedy for certain

---

[23] There may be other, similarly distinguishable caselaw to support BlueRadios, but even if
BlueRadios's conception of Tenth Circuit precedent were accurate, it would not apply here
because the prohibited activity described must be current or imminent. *See, e.g.*, *Engility Corp. v.
Daniels*, No. 16-cv-2473-WJM-MEH, 2016 WL 7034976, at *11 (D. Colo. Dec. 2, 2016)
("[T]he Tenth Circuit excuses the irreparable harm requirement when the evidence shows that a
defendant *is or will soon be* engaged in acts or practices prohibited by statute, and that statute
itself provides for injunctive relief to prevent such violations.") (emphasis added).

violations of these statutes, but they "do not mandate injunctive relief and thus do not allow a presumption of irreparable harm." Opp'n to Mot. for Permanent Inj. at 8, ECF No. 751 (quoting *First W. Cap. Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1143 (10th Cir. 2023) (internal quotation marks omitted). That *Malamed* was decided in the context of a preliminary injunction is of no consequence; its analysis refers to "injunctive relief" generally, not merely preliminary injunctions. *See* 874 F.3d at 1143; *see also Amoco Prod. Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 546 n.12, (1987) (preliminary and permanent injunction analyses are largely the same, with permanent injunction requiring a showing of actual success on the merits).

This case exemplifies the shortsightedness of applying argumentative presumptions and why movants should at least attempt to carry their burden as to each prong of the injunctive relief analysis. With that said, the absence of a presumption is not equivalent to an automatic failure to prove. BlueRadios *does* allude to evidence showing irreparable harm. Unfortunately, it only mentions the harm it experienced from Kopin's trade secret misappropriation previously and on that basis, it argues, it would presumably continue to experience without an injunction. Again, without any specific citations to testimony showing economic harm, BlueRadios refers simply to the fact that the trade secrets misappropriated were "highly competitive, proprietary information [that w]e didn't want . . . to get out." *See* Trial Tr. 911:11-12 (Wilfred Tucker); *see also* Trial Tr. 925:1-4 (Q: "And do you believe it had value to BlueRadios because it was secret and confidential?" A: "Yes. A lot of value. If our competitors got ahold of that, it would not be good."), 926:3-13 (Wilfred Tucker) ("[A]ny piece or part of this [would let] our competitors . . . know . . . what we were doing . . . . So, it would just give them a leg up [a]nd . . . hurt us . . . getting to market."). This is merely a component to showing economic harm, which BlueRadios contends is otherwise difficult to calculate.

36

It is true that when the injury of losing valuable information is real and quantitatively inestimable, it can constitute irreparable harm. *See ClearOne Commc'ns, Inc. v. Chiang*, 608 F. Supp. 2d 1270, 1279 (D. Utah 2009), *aff'd in part sub nom. ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735 (10th Cir. 2011) ("Irreparable harm is determined 'based on such factors as the difficulty in calculating damages, the loss of a unique product, and existence of intangible harms such as loss of goodwill or competitive market position.'") (quoting *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1264 (10th Cir. 2004); *cf. Equifax Servs., Inc. v. Hitz*, 905 F.2d 1355, 1361 (10th Cir. 1990) (holding district court's finding that irreparable harm existed based on its determination "that it is impossible to precisely calculate the amount of damage [plaintiff] will suffer," was "not clearly erroneous"). And one can never know how valuable information, particularly proprietary information related to developing technology, will remain. *But see Harbor Compliance Corp. v. Firstbase.IO, Inc.*, No. 5:23-cv-0802, 2025 WL 383804, at *22 (E.D. Pa. Feb. 4, 2025) ("[Plaintiff] offered evidence that the parties agreed the economic life of the trade secrets is five years from the date of the Confidentiality Agreement.").Yet BlueRadios could have presented evidence—either at trial or afterward—of current harm it was experiencing. *See, e.g.*, *ClearOne Commc'ns*, 608 F. Supp. 2d at 1280 ("[T]here is recent evidence that the . . . Defendants were marketing one or more products after the jury issued its verdict, even though trial evidence showed that the products contained the trade secret."). Either it could not or it chose not to.

Our legal system's aversion to speculation cautions me against accepting, at least as a given, that the trade secrets misappropriated in 2016 are valuable today such that they would continue to provide a competitive advantage to BlueRadios. *Cf. Grynberg v. BP, P.L.C.*, No. 06 CIV. 6494 RJH, 2011 WL 1161540, at *11 (S.D.N.Y. Mar. 30, 2011), *aff'd*, 469 F. App'x 5 (2d

Cir. 2012) (noting that "obsolete information cannot form trade secret because the information

no longer has economic value") (citing *Fox Sports Net North, L.L.C. v. Minn. Twins P'ship*, 319

F.3d 329, 336 (8th Cir. 2003)). Therefore, the earlier value of the trade secrets Kopin

misappropriated notwithstanding, and based on the information presented to me, the current

harm BlueRadios would avoid via a permanent injunction is de minimis.[24]


C. Balance of the Harms

"In each case, courts 'must balance the competing claims of injury and must consider the

effect on each party of the granting or withholding of the requested relief.'" *Winter v. Natural*

*Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (quoting *Amoco Prod.*, 480 U.S. at 542). This

balancing is not especially close. As just discussed, BlueRadios has failed to show that it would

suffer meaningful irreparable harm. By contrast, Kopin has presented persuasive evidence to

illustrate how onerous compliance with the proposed injunction would be, for it and two of its

business partners. Specifically, Michael Murray, the current CEO of Kopin, claims that

"products sold by Kopin to the companies cited by BlueRadios make up 80% of Kopin's

revenues." Murray Decl. 5, ECF No. 754. This is a wildly imprecise measure of the impact of

even the broadest potential injunction.[25] Restrictions based on the product recipients—and not

---

[24] This point is further supported by the fact BlueRadios was awarded a substantial amount of damages for unjust enrichment, suggesting there was an adequate remedy at law. *See* Verdict Form 9, 11, ECF No. 726; 4 Roger M. Milgrim, Milgrim on Trade Secrets § 15.02 (measuring an unjust enrichment award "by the value of the misappropriated trade secret . . . may preclude an award of injunctive relief on the theory that having received the full value of its trade secret, the owner is not entitled to further relief")

[25] The breadth of any proposed injunction can exponentially increase the harm on the nonmovant. While trade secrets defined by descriptive categories of information do not always provide adequate notice for compliance with a injunction referring thereto, answering whether they do here is not necessary. In any event, the Third Circuit precedent Kopin cites, *Mallet & Co. Inc. v. Lacayo*, does not preclude an injunction that refers to trade secret categories so long as

the products themselves—may or may not "require [Kopin] to forego 80% of its revenue." *Id*.

This misses the point. Kopin more persuasively refocuses its argument to the products that are

alleged to have incorporated BlueRadios trade secrets. *See* Opp'n to Mot. for Permanent Inj. at

12, ECF No. 751 ("To avoid any risk of a possible contempt proceeding alleging violation of an

injunction which does not identify specific products or specific trade secrets, Kopin, to be safe,

would effectively have to stop all sales of all products that BlueRadios contended at trial

contained its trade secrets, as well as, perhaps other related products."). In this more appropriate

light, the harm is comparably immense. *See id*. ("This chilling effect would cause substantial

damage to the company."). Less significant—but still meaningful—is the harm anticipated by

business partners to Kopin, such as Collins Aerospace and HMDmd, both of which describe

Kopin as the "sole source provider" for goods integral to their businesses. *See* Brown Decl. 2,

ECF No. 752; Lyon Decl. 2, ECF No. 753.

　　With the evidence presented, the harm that Kopin would experience from the injunctive

relief requested heavily outweighs what harm BlueRadios would avoid.


D. Public Interest

　　BlueRadios is, of course, correct that the public has an interest in the protection of trade

secrets generally. *See Port-a-Pour, Inc. v. Peak Innovations, Inc.*, 49 F. Supp. 3d 841, 873 (D.

Colo. 2014) ("The public interest is served by enforcement of intellectual property rights. . . .").

---

they are sufficiently specific. 16 F.4th 364, 387 (3d Cir. 2021) ("Just how much specificity a
court should require of the plaintiff-owner is again a context-specific matter[; w]e cannot provide
a bright-line rule."). Instead, it only remarked that the categories invoked by the district court
were too general in that case before it. *Id*. ("The best we can do is say that [Plaintiff]'s very
general description of categories does not sufficiently identify the information it claims as a trade
secret . . . and thus does not suffice to justify the sweeping injunction the District Court issued.")
(internal quotation marks omitted).

However, as discussed above, BlueRadios has not shown that the information that it seeks to bar Kopin from using still has economic value and thus remains a protectable trade secret. *Cf. Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*, No. 4:06-cv-114, 2010 WL 3370286, at *2 (N.D. Ohio Aug. 26, 2010), *aff'd*, 511 F. App'x 398 (6th Cir. 2013) ("[I]f the information becomes public, outdate [sic], or obsolete, such as when a product is available in the market, and, thus, subject to reverse engineering, an injunction is not proper.").

By contrast, Kopin has presented evidence that the medical field and matters of national security would be negatively impacted by the implementation of BlueRadios's proposed injunction. *See* Opp'n to Mot. for Permanent Inj. at 14, ECF No. 751 ("Without Kopin's products and product support, these cutting-edge military platforms would become unavailable, at the direct, grave expense of the U.S. military"); *see generally* Brown Decl., ECF No. 752; Lyon Decl., ECF No. 753. Accordingly, the public interest does not favor the issuance of a permanent injunction.

* * *

Having fallen short at each stage of the injunctive relief analysis, BlueRadios's Motion for a Permanent Injunction is DENIED.

## VII.  BlueRadios's Motion for Prejudgment Interest

BlueRadios requests prejudgment interest on all the damages awarded and recommended[26] by the jury, except the exemplary damages under CUTSA and DTSA. In making this request, BlueRadios relies on Colorado law for its Colorado causes of action and federal law

---

[26] Since I found disgorgement damages for the contract breaches are duplicative of other damages and therefore do not award them, I do not address whether prejudgment interest should be applied to any such damages.

for the violations of DTSA. I deny BlueRadios's request for the several reasons that follow, chief among them, the methodological shortcomings of BlueRadios's approach to calculating this interest.

The burden is on the movants to demonstrate their entitlement to prejudgment interest and to provide a suitable interest formula. Citing Colorado Revised Statutes § 5-12-102, BlueRadios suggests blanket application of the 8% interest rate for all damages incurred, applied ratably over each year including the one in which and those after the initial injury was sustained. In other words, BlueRadios seeks to have the total damages award (minus the exemplary damages) divided equally over the full number of years from the initial injury through 2022 with the interest on the amount accruing at 8% as the underlying damages grow consistently year-by-year. Mr. Pedigo, asserts that this model "is the most reasonable method for calculating prejudgment interest because (1) it is relatively straightforward, (2) it compensated BlueRadios for the loss of use of funds (i.e., damages) during the period in which damages were incurred, and (3) there is not a more reasonable way to allocate the jury's damages determinations over the period in which damages were incurred." Pedigo Decl. at 3, ECF No. 746-2. I am unpersuaded.

For breach of the contract, Kopin's failure to pay certain royalty amounts was proven in court, and BlueRadios asserts that this was the basis of the jury's damages award of $5,114. *See* Opp'n to JMOL Mot. at 15, ECF No. 756 ("The jury's award of $5,114 in general damages for breach of contract correlates directly with Mr. Pedigo's royalty calculation. . . ."). Nonpayment of the royalties is tied to particular dates, which BlueRadios and Mr. Pedigo do not consider in their proffered model for calculating the interest.[27] The missed payments represent the amount

---

[27] BlueRadios does add that the date used in its calculations corresponds to "Kopin's first reported revenue using BlueRadios' technology" and ties that occurrence to when it claims the royalties from Kopin were first due to be paid. *See* Reply in Supp. of Mot. for Prejudgment

Kopin owed and when it was owed and, accordingly, the accrual and timing should be factored into the prejudgment calculation. Yet, BlueRadios makes no attempt to do so. The Tenth Circuit provided relevant guidance in analogous circumstances in *Reed v. Mineta*:

> We recognize that Mr. Reed was indeed injured on the date of his termination. He did not, however, actually suffer all $248,356 of monetary injury at that time. Rather, his monetary injuries were incrementally inflicted from the date of his termination through entry of judgment as each pay period passed and Mr. Reed went unpaid.

438 F.3d 1063, 1067 (10th Cir. 2006) (reviewing a request for prejudgment interest under Fed. R. Civ. P. 60). The court identified a valid method for determining prejudgment interest on Mr. Reed's unpaid wages: First, the "calculate the future value of each payment (i.e., the amount that Mr. Reed would have been paid bi-weekly) from the date each payment would have been owing to Mr. Reed to the date of judgment and then subtract the original value of each payment." *Id.* at 1067 n.4. Subtracting the original value of the payment would then provide the interest for each payment, and those interest amounts could be summed together to obtain the total amount of prejudgment interest that should be awarded. *Id.*; *see also Clawson v. Mountain Coal Co.*, No. 01-cv-02199-MSK-MEH, 2007 WL 201253, at *13 (D. Colo. Jan. 24, 2007) (requiring prejudgment interest under Colorado law to be determined "according to the formula in *Reed v. Minetta*, 438 F.3d 1063, 1067 n.4 (10th Cir. 2006)"). Here, BlueRadios has not attempted a similar calculation for the royalty payments nor has it offered an alternative calculation that would likewise take into account the specific accrual and timing of its breach-of-contract damages. I therefore find that BlueRadios has not met its burden as to reasonably calculating prejudgment interest.

---

Interest at 3, ECF No. 764. Even accepting that date as valid, it does not excuse the failure to incorporate the later or ongoing breaches.

In that same vein, I cannot award prejudgment interest on the damages related to BlueRadios's claim for breach of the implied covenant of good faith and fair dealing. "A nonbreaching party is entitled to recover prejudgment interest from the time of the breach." *Butler v. Lembeck*, 182 P.3d 1185, 1194 (Colo. App. 2007) (citing *Logixx Automation, Inc. v. Lawrence Michels Fam. Tr.*, 56 P.3d 1224, 1230 (Colo. App. 2002)); *see also W. Fire Truck, Inc. v. Emergency One, Inc.*, 134 P.3d 570, 578 (Colo. App. 2006) (requiring prejudgment interest be "based upon specific findings of when the actual damages were incurred"). Even though the harm suffered from BlueRadios for breach of the implied covenant is distinct from that suffered for breach of contract, BlueRadios assertion—without any meaningful explanation—that the same date of accrual applies for both claims is suspect. I find there is insufficient support for BlueRadios's contention and accordingly deny prejudgment interest on the damages for the breach of the implied covenant of good faith and fair dealing.

As for the CUTSA and DTSA damages, BlueRadios proposed calculation suffers from the same methodological problems. BlueRadios's Motion also fails for an entirely distinct reason—prejudgment interest is compensatory in nature, while the CUTSA and DTSA damages awarded by the jury are at least in part restitutional. In calculating the unjust-enrichment damages, the jury was told to find a figure that may "include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss." Instruction No. 3.18, Jury Instructions at 55, ECF No. 715-1. Moreover, the jury was told that unjust enrichment "is the amount that Kopin benefitted from the acquisition, use or disclosure of BlueRadios' alleged trade secrets without consent." *Id*.

When assessing whether prejudgment is warranted, courts applying Colorado's prejudgment interest framework commonly note the underlying compensatory purpose of the

legislative prescription. *See, e.g.*, *Watson v. Pub. Serv. Co. of Colo.*, 207 P.3d 860, 867 (Colo.

App. 2008) ("Prejudgment interest is a form of compensatory damages intended to address delay

in the receipt of money to which the plaintiff was entitled.") (citing *Seaward Constr. Co. v.*

*Bradley*, 817 P.2d 971, 978 (Colo. 1991)); *Witt v. State Farm Mut. Auto. Ins. Co.*, 942 P.2d 1326,

1327 (Colo. App. 1997) ("Prejudgment interest is a form of compensatory damages and

represents a legislatively prescribed award for delay in a plaintiff's receipt of money to which he

or she is legally entitled."); *Allison v. Bank One-Denver*, 289 F.3d 1223, 1243 (10th Cir. 2002),

*as amended on denial of reh'g* (June 19, 2002) ("Prejudgment interest is appropriate when its

award serves to compensate the injured party and its award is otherwise equitable."). The jury

instructions in the instant litigation did not require the jury to distinguish between damages

arising from violations of CUTSA that were for "actual losses" and those that were for "the

amount that Kopin benefitted from the acquisition, use or disclosure of BlueRadios' alleged trade

secrets without consent." *See* Jury Instructions at 54. The latter damages for unjust enrichment

are restitutional in nature and there is no basis to find that the jury did not intend for them to

award BlueRadios the full benefit realized by Kopin for its wrongful conduct, including the

benefit of withholding the money from BlueRadios.

In arguing that it should be granted prejudgment interest on the CUTSA damages,

BlueRadios relies heavily on *Injection Research. Specialists, Inc. v. Polaris Indus., L.P.*, 168

F.3d 1320, 1998 WL 536585 (Fed. Cir. 1998) (unpublished table decision), in which a panel of

the Federal Circuit applied Colorado Revised Statute § 5-12-102 and awarded prejudgment

interest for CUTSA damages. BlueRadios's reliance is misplaced. The court noted that "the

express language of the statute appears to allow interest based upon a defendant's gains because

it permits interest based upon 'the gain or benefit realized by the person withholding such money

or property.'" *Id*. at *14 (quoting Colo. Rev. Stat. § 5-12-102(1)(a)). It went on to highlight that

"it was not apparent that the damages [awarded by the jury] were restitutional in nature" because

the jury was given "a choice of three [mutually exclusive] methodologies for determining

damages"—two that were compensatory and one that was restitutional. *Id*. at *15. The court

found that "[r]egardless of which methodology was used to calculate damages, . . . they are not

restitutional in nature [since t]he damages were simply money damages awarded in an action at

law and any attempt to characterize them as 'restitution' is mere semantics." *Id.* Notably, the

panel did not cite any similarly reasoned precedent for the proposition that prejudgment interest

should be awarded on all damages that are "simply money damages." I am not obliged to adopt

this application of Colo. Rev. Stat. § 5-12-102 and decline to do so, as the weight of the authority

from Colorado courts makes apparent that prejudgment interest is to be granted when necessary

to compensate the injured party.

Separately, the jury instructions in the instant litigation did not require the jury to

distinguish between damages arising from violations of CUTSA that were for "actual losses" or

for "the amount that Kopin benefitted from the acquisition, use or disclosure of BlueRadios'

alleged trade secrets without consent." *See* Instruction No. 3.18, Jury Instructions at 55, ECF No.

715-1. Since I find these unjust enrichment damages are restitutional in nature and there is no

guidance limiting the portion of CUTSA violation damages to compensatory damages, I deny

BlueRadios's request for prejudgment interest.

The same flaws doom BlueRadios's prejudgment-interest request for Kopin's DTSA

violations. Under federal law, "an award of prejudgment interest is governed by a two-step

analysis: (1) the trial court must determine whether an award of prejudgment interest would

serve to compensate the injured party; and (2) when the award would serve a compensatory

function, the court must determine whether the equities would preclude the award of prejudgment interest." *Live Face On Web, LLC v. Integrity Sols. Grp., Inc.*, 421 F. Supp. 3d 1051, 1073 (D. Colo. 2019). As to the first step, I note that prejudgment interest on DTSA damages could serve to compensate for an injury. *See generally Syntel Sterling Best Shores Mauritius Ltd. v. The TriZetto Grp., Inc.*, 68 F.4th 792, 808 (2d Cir.), *cert. denied*, 144 S. Ct. 352 (2023) (thoroughly analyzing "DTSA's broad compensatory damages provision"). However, without any clear indication that the jury's DTSA damages award did not already compensate BlueRadios for the same harm that prejudgment interest is meant to address, it is inappropriate to award such interest. *See Insulet Corp. v. EOFlow Co.*, 779 F. Supp. 3d 124, 141 (D. Mass. 2025) (rejecting prejudgment interest for a violation of DTSA because "[t]he essential rationale for awarding prejudgment interest is to ensure that an injured party is *fully compensated for its loss*") (quoting *City of Milwaukee v. Cement Div., Nat. Gypsum Co.*, 515 U.S. 189, 195 (1995)) (emphasis added). This is especially true where the plaintiff received a remedy on top of substantial general damages. *See id.* (Moreover, plaintiff's unjust-enrichment and exemplary-damages awards—combined with the permanent injunction—adequately serve DTSA's purpose of deterring misappropriation and providing recovery for trade-secret owners without the addition of prejudgment interest") (internal quotation marks omitted). Therefore, because BlueRadios has not established that prejudgment interest would serve a compensatory purpose in this case, I deny prejudgment interest on the DTSA damages.

BlueRadios has not sufficiently supported its request for prejudgment interest on the damages awarded for Kopin's breach of their contract and trade secret misappropriation. As a result, its Motion for Prejudgment Interest is DENIED.

VIII. BlueRadios's Motion for Attorney Fees

BlueRadios seeks an award of attorney fees pursuant to CUTSA and DTSA. Based on the jury's finding that Kopin willfully and maliciously misappropriated BlueRadios's trade secrets, BlueRadios is entitled to an award of reasonable fees under the statutes. *See* Colo. Rev. Stat. § 7-74-105; 18 U.S.C. § 1836(b)(3)(D). I find that the fees requested by BlueRadios are generally reasonable. However, as detailed below, I adjust BlueRadios's proposed figure of $8,345,686.23 downward for considerations properly raised by Kopin.

A.  The Award of Attorney Fees Pursuant to CUTSA and DTSA

Both CUTSA and DTSA require a preliminary determination that the alleged misappropriation of trade secrets was willful and malicious before an award of attorney fees may be granted. *See* Colo. Rev. Stat. § 7-74-105; 18 U.S.C. § 1836(b)(3)(D). The jury found it "highly probable that Kopin acted with willfulness and malice in misappropriating one or more of BlueRadios' trade secrets" under CUTSA and DTSA. Verdict Form at 9, 11, ECF No. 726. Despite this explicit determination, Kopin contends that there is no evidence to support this summation, as it believed it had joint ownership or license rights to the alleged trade secrets; alternatively, Kopin posits that other federal courts "routinely decline to award fees based solely on such jury findings." *See* Opp'n to Mot. for Att'y Fees at 1-2, ECF No. 749.

Upon review of the record and with due consideration given to the jury's determinations, I find Kopin's misappropriation to be willful and malicious. In *Cypress Advisors, Inc. v. Davis*, a defendant argued that a personal good-faith belief in his owning information he developed—which was the subject of a trade secrets claim—was inconsistent with a finding of willful and malicious appropriation. No. 16-cv-01935, 2022 WL 959775, at *4 (D. Colo. Mar. 30, 2022).

Though there was mixed evidence of that belief, the court found that the defendant did not, in fact, have a good-faith belief he owned the relevant intellectual property and, further, that his misappropriation of trade secrets was willful and malicious. *Id.* at *5. The circumstances here support a similar determination. Evidence of willful acts may be found where there is meaningful control and deliberate action. *Id.*; *Weibler v. Universal Techs., Inc.*, 29 F. App'x 551, 554 (10th Cir. 2002). Kopin unquestionably had meaningful control and took deliberate actions.

Kopin's references to non-binding precedent—for the proposition that I may decline to award attorney fees even where a willful and malicious standard is met—are unpersuasive. While a jury found defendants acted willfully and maliciously in *Arnold's Office Furniture, LLC v. Borden*, the court refused a request for attorney fees because evidence of "affirmative steps . . . taken to inflict harm on the victimized parties" was lacking. No. 20-cv-05470, 2023 WL 3851978, at *11 (E.D. Pa. June 6, 2023). Here, evidence of affirmative steps by Kopin is not lacking. In *Citcon USA, LLC v. RiverPay Inc.*, an unreported case from the Ninth Circuit, the district court's decision to decline an award of attorney fees was affirmed. No. 20-16929, 2022 WL 287563, at *2 (9th Cir. Jan. 31, 2022). The plaintiff in that case succeeded on only one of its four categories of misappropriation of trade secrets, and the defendant was successful on its breach of contract counterclaim. *Id.* In contrast, BlueRadios succeeded on all its claims and the great majority of its trade secret misappropriation theories. In *Estate of Accurso v. Infra-Red Services, Inc.*, the Third Circuit, applying the Pennsylvania Uniform Trade Secrets Act, found that the district court did not abuse its discretion by declining to award attorney fees because the applicable statute did not make such an award mandatory. 805 F. App'x 95, 107 (3rd Cir. 2020). While an award of attorney fees here is not obligatory, I find it is warranted taking full consideration of Kopin's conduct. Finally, in *Engineering Resources, Inc. v. CRS Steam, Inc.*, the

court refused to award attorney fees where counsel's billing was incomplete and the punitive

damage award adequately compensated plaintiff in light of defendant's possible bankruptcy. No.

94 C 6970, 1997 WL 232778, at *9 (N.D. Ill. May 1, 1997). The billing information provided by

BlueRadios is robust, and Kopin has not sufficiently demonstrated its financial status is so dire as

to threaten bankruptcy. Based on my finding that Kopin's misappropriation was willful and

malicious, I conclude it is appropriate to award BlueRadios the attorney fees it has reasonably

incurred in pursuing this litigation.


B.  Reasonableness of the Fee Request

In evaluating the reasonableness of BlueRadios's fee request. I begin by calculating the

"lodestar" amount, which is the product of a reasonable hourly rate by a reasonable number of

hours spent on the litigation. *Case v. Unified School Dist. No. 233*, 157 F.3d 1243, 1249 (10th

Cir. 1998). The party seeking attorney fees bears the burden of producing documentation

regarding the hours expended and appropriate hourly rates. *Id.* Before submitting time records to

the court, the moving party is expected to have exercised "billing judgment" by winnowing

down the listed hours to those reasonably expended. *Id.* at 1250. There is some evidence that

BlueRadios has attempted to do just that.


1.  The Lodestar

i.    Reasonableness of the Hours Expended

The Tenth Circuit has suggested a few factors to consider in determining the

reasonableness of the hours expended, including: "(1) whether the tasks being billed 'would

normally be billed to a paying client,' (2) the number of hours spent on each task, (3) 'the

complexity of the case,' (4) 'the number of reasonable strategies pursued,' (5) 'the responses

necessitated by the maneuvering of the other side,' and (6) 'potential duplication of services' by

multiple lawyers." *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998) (quoting

*Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983)). To recover fees, Plaintiff's counsel must

submit "meticulous, contemporaneous time records that reveal, for each lawyer for whom fees

are sought, all hours for which compensation is requested, and how those hours were allotted to

specific tasks." *Case*, 157 F.3d at 1250. Given the number of hours expended and variety of

work performed, there are considerable challenges to determining exact figures in this case.[28] I

approach the reasonableness inquiry and evaluation of the suggested factors "much as a senior

partner in a private firm would review the reports of subordinate attorneys when billing clients

whose fee arrangement requires a detailed report of hours expended and work done." *Ramos*, 713

F.2d at 555. However, I "need not identify and justify every hour allowed or disallowed, as doing

so would run counter to the Supreme Court's warning that a 'request for attorney's fees should

not result in a second major litigation.'" *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir.

1996) (quoting *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1203 (10th Cir. 1986)).

"[T]rial courts need not, and indeed should not, become green-eyeshade accountants." *Fox v.

Vice*, 563 U.S. 826, 838 (2011). "The essential goal in shifting fees . . . is to do rough justice, not

to achieve auditing perfection." *Id.*

---

[28] Being that a "plaintiffs' burden in an application for attorney[] fees is to 'prove and establish
the reasonableness of each dollar, each hour, above zero,'" I find the limited affidavits
BlueRadios submitted would ordinarily fall short of this desired bar. *Jane L. v. Bangerter*, 61
F.3d 1505, 1510 (10th Cir. 1995). Nevertheless, the information as to the rates of attorneys that
did bill in connection with this case is bolstered by previous affidavits, previous independent
expert analysis, and billing information presented elsewhere.

Kopin contends that a number of BlueRadios's time entries are unreasonable, including time for: large and vaguely defined blocks of time (commonly referred to as "block billing"); work that is clerical or non-legal; duplicative work; the presence of certain additional attorneys at trial; and travel time, in particular highlighting a swath of suspect timesheet entries. *See* Opp'n to Mot. for Att'y Fees at 8-11, ECF No. 749. If counsel's time records are "sloppy and imprecise," a court is justified in reducing the reasonable number of hours. *Case*, 157 F.3d at 1250.

Kopin specifically asserts that BlueRadios's timesheets include clerical work that is charged at attorney hourly rates. *See* Opp'n to Mot. for Att'y Fees at 10, ECF No. 749. While Colorado law does permit recovery of fees for services rendered by paralegals, law clerks, and other staff, those hours must be reasonably billed. *See Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, No. 01–cv–01644, 2012 WL 967699, at *5 (D. Colo. Mar. 20, 2012). The Tenth Circuit has applied a percent reduction to—or wholly refused to recognize—fees for clerical and non-legal work, background research, or entries supported by vague billing descriptions. *See, e.g.*, *Flitton v. Primary Residential Mortg., Inc.*, 614 F.3d 1173, 1176 (10th Cir. 2010); *United States v. §114,700 in U.S. Currency*, Nos. 20-1387 & 21-1301, 2023 WL 142257, at *5 (10th Cir. Jan. 10, 2023) (unpublished). I have spent copious hours reviewing these timesheets, and I find there are exceedingly few entries that constitute block billing or excessive billing for inappropriate clerical work. Accordingly, I make a 0.2% reduction of all aggregated fees requested on those grounds.

The parties dispute the reasonableness of having both Attorneys Seserman and Kovarik present at trial. *See* Opp'n to Mot. for Att'y Fees at 9, ECF No. 749; Suppl. Seserman Decl. At 4, ECF No. 766-3. A court should deny compensation for duplicative work performed by more than one attorney; however, collaboration and rehearsal should not be penalized as inherently duplicative. *See Ramos*, 713 F.2d at 554; *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1077 (10th

Cir. 1998). Based on my familiarity with this case and its long history, I do not believe that the presence of multiple members of an otherwise limited legal team was redundant.

To recover attorney fees on travel, BlueRadios must demonstrate that such time was "productive," meaning work on the present matter was performed during the time spent traveling. *See Ramos v. Lamm*, 632 F. Supp. 376, 381 (D. Colo. 1986). That information is lacking. Therefore, I will not include those fees in the award. Fees for time spent travelling I believe approximate 0.3% of the fees reported and, thus, this amount will be deducted from the aggregate fees requested.

BlueRadios submitted time records from Attorneys Seserman and Kovarik which relate to the HBSR litigation, the separate Massachusetts action I described above between this Plaintiff and a non-party. BlueRadios claims that, since the cases appear significantly interrelated, legal work that was done in relation to one matter may have helped and advanced BlueRadios's interest in the other matter. *See* Suppl. Kovarik Decl. at 2, ECF 766-1. Kopin rightly objects to these entries. *See* Opp'n to Mot. For Att'y Fees at 5, ECF No. 749. While there is undoubtedly some common factual nexus between the two actions, burdening Kopin with fees attributable to an entirely separate action—especially one involving different legal theories of recovery from a nonparty to the instant case—is wholly inappropriate. *See John Bean Techs. Corp. v. B GSE Group, LLC*, No. 17-cv-00142, 2023 WL 6164322, at *22 (D. Utah Sept. 21, 2023). Thankfully, BlueRadios concedes that point and claims to have purged all entries attributable wholly to the HBSR litigation,[29] rebutting the assertion there as an "improper 'commingling of fees.'" Nevertheless, of the approximately 1000 pages of timesheets, more than

---

[29] This effort is undermined by the inclusion of certain redacted entries that Kopin identifies. On the basis of BlueRadios's own declarations, I regard these entries as impermissibly interrelated with the HBSR litigation.

840 contain a footer reading "BRvHBSR." BlueRadios notes that these entries, despite clear
indicia this timekeeping was in relation to the HBSR litigation, still relate predominantly to the
instant lawsuit. It argues that the HBSR litigation, which commenced in 2021, post-dated this
litigation so significantly that the records cannot be thought to relate—in large part or at all—to
the HBSR litigation. I am not so convinced. On my review of the record, the HBSR litigation,
and the timesheet descriptions of ambiguous or interrelated legal work, I conclude a 19%
reduction of the aggregate fees requested should address concerns that work was being billed in
relation to a subject chiefly or exclusively connected to the HBSR litigation.

### ii. Reasonableness of Hourly Rate

A reasonable rate for an attorney is "the prevailing market rate in the relevant
community." *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996) (citing *Blum v. Stenson*,
465 U.S. 886, 895 (1984)). The prevailing market rate is determined based on the rates "in the
community for similar services by lawyers of reasonably comparable skill, experience, and
reputation." *Id.* (quoting *Blum*, 465 U.S. at 895 n.11). It is a movant's burden to show that its
billed rates align with those prevailing in the community for similar services. *Case*, 157 F.3d at
1234. Based on the material provided by the parties, including the credentials of multiple billing
attorneys and information relayed in connection with my earlier Order on BlueRadios's Motion
for Discovery Sanctions (ECF No. 487), I find that the rates provided by BlueRadios for which it
seeks reimbursement are reasonable. *See also* Fee Expert Report at 1-2, ECF No. 651-9.

BlueRadios contends it reasonably incurred attorney fees in the amount $8,345,686.23. I
find the great majority of these hours were reasonably expended and that the rates are reasonable

for the services provided. With the 19.5% reduction based on the hours I find were not

reasonably expended in this case, the lodestar amount therefore totals $6,718,277.42.

### 2. Reductions to the Lodestar

Kopin contends the attorney fee award should be further reduced because BlueRadios did

not prevail on all its trade secret misappropriation claims and because BlueRadios should not

recover for work on its contract claims and claim for correction of inventorship. At trial, the jury

rendered a verdict in BlueRadios's favor on its claims of misappropriation of Alleged Trade

Secret Categories 1, 2, and 4. *See* Verdict Form at 7-11, ECF No. 726. Kopin contends that

BlueRadios's failure to prove ownership of its Alleged Trade Secret Category 3 warrants a

general reduction to its overall award. *See* Opp'n to Mot. for Att'y Fees at 7, ECF No. 749. In

*Harvey Barnett, Inc. v. Shidler*, the Tenth Circuit held that the district court's reduction of

attorney fees by one-half to account for the plaintiffs' success on only one of their two breach of

contract claims was an abuse of discretion. *See* 200 F. App'x 734, 747 (10th Cir. 2006). The

panel explained that where claims are based on related legal theories and a common core of

facts, the district court must focus on the significance of the overall relief obtained. *Id.* Where a

plaintiff has obtained "excellent results," attorney fees should encompass all hours reasonably

expended—even where plaintiff fails to prevail on every contention. *Ramos*, 713 F.2d at 556.

Applying this same rationale, Kopin's argument that BlueRadios should not recover for

work related to its non-trade secret claims lacks merit. *See* Opp'n to Mot. for Att'y Fees at 6,

ECF No. 749. Where claims are tightly bound together, time spent on a non-recoverable matter

may "cross-pollinate" with that which is recoverable. *See United Phosphorus*, *Ltd. v. Midland

Fumigant, Inc.,* 205 F.3d 1219, 1233 (10th Cir. 2000). The nature of the claims BlueRadios

brought is such that all claims are closely related. Consequently, it is difficult to calculate the

amount of work expended in efforts unrelated to the violations of CUTSA and DTSA. As I

identified above, however, not all harm was manifest in the same way. For example, research

and work relating to the issue of unpaid royalties or on standards for correction of inventorship

do not obviously relate to the trade secret misappropriation claims. Accordingly, based on my

review of the timesheets, the arguments offered by Kopin, and the law, I believe a 7.5%

reduction of the aggregate fees requested is appropriate to eliminate the fees with minimal or no

relation to the alleged violations of CUTSA and DTSA. This translates to an ultimate award of

$6,214,406.61. I find BlueRadios is entitled to its reasonable attorney fees and rough justice is

accomplished with that award.


   3.  Costs under Federal Rule of Civil Procedure 54(d)(1)

   I find that the information provided by BlueRadios concerning its costs is both premature

and overinclusive. Kopin rightly highlights that court costs are governed by 28 U.S.C. § 1920,

which prohibits legal research database access fees and attorney travel expenses. BlueRadios has

included both such categories of costs. I find that Kopin is responsible for repayment of all

reasonable costs, but in submitting its bill of costs post-judgment, BlueRadios should omit

expenses that are prohibited under § 1920.

* * *

   BlueRadios's Motion for Attorney Fees and Costs is, therefore, GRANTED IN PART

and DENIED IN PART.

## IX. Conclusion & Order

Based on the findings and conclusions above, Kopin's Motion for Judgment as a Matter of Law Under Rule 50(b) or in the Alternative for a New Trial Under Rule 59 (ECF No. 745) is DENIED. BlueRadios's Motion for Prejudgment Interest (ECF No. 746) is DENIED. BlueRadios's Motion for Permanent Injunction (ECF No. 747) is DENIED. BlueRadios's Motion for Attorney Fees and Costs (ECF No. 748) is GRANTED in part such that BlueRadios is entitled to $6,214,406.61 in attorney fees and all costs permitted under 28 U.S.C. § 1920, and is otherwise DENIED. BlueRadios's Motion to Strike (ECF No. 768) is DENIED, but Kopin's Notice of Supplemental Authority (ECF No. 783) is STRICKEN.

Thus, in accordance with the jury's verdict in this case and my rulings here:

1. Judgment shall enter in favor of BlueRadios and against Kopin on BlueRadios's claim for Breach of Contract, with BlueRadios taking $5,114 in general damages under this claim and no disgorgement damages;

2. Judgment shall enter in favor of BlueRadios and against Kopin on BlueRadios's claim for Breach of the Implied Covenant of Good Faith and Fair Dealing, with BlueRadios taking $600,000 in damages under this claim and no disgorgement damages;

3. Judgment shall enter in favor of BlueRadios in part, and in favor of Kopin in part, on BlueRadios's claim for violations of the Misappropriation of Trade Secrets Under the Colorado Uniform Trade Secrets Act. Judgment shall enter in favor of BlueRadios and against Kopin as to BlueRadios's trade secret claims numbered 1, 2, 4, and 5. *See* Verdict Form at 7, ECF No. 726. Judgment shall enter for Kopin and against BlueRadios as to BlueRadios's trade secret claim numbered 3. *See id*. BlueRadios is awarded $591,660 in

unjust enrichment damages under this claim and $591,660 in exemplary damages for

Kopin's willful and malicious conduct in connection with this claim.

4. Judgment shall enter in favor of BlueRadios in part, and in favor of Kopin in part, on

BlueRadios's claim for violations of the Misappropriation of Trade Secrets Under the

Defend Trade Secrets Act. Judgment shall enter in favor of BlueRadios and against

Kopin on BlueRadios's trade secret claims numbered 1, 2, and 4. *See* Verdict Form at 10,

ECF No. 726. Judgment shall enter for Kopin and against BlueRadios as to BlueRadios's

trade secret claim numbered 3. *See id*. BlueRadios is awarded $3,910,466 in unjust

enrichment damages under this claim and $7,820,932 in exemplary damages for Kopin's

willful and malicious conduct in connection with this claim;

5. Judgment shall enter in favor of BlueRadios in part, and in favor of Kopin in part, on

BlueRadios's claim for Correction of Inventorship pursuant to 35 U.S.C. § 256. The

Director of the United States Patent and Trademark Office is ordered to add John Sample

and Wilfred Tucker as inventors on the United States Patent No. 8,909,296, and Kopin is

ordered to cooperate with BlueRadios to effectuate the change in inventorship, including

executing or filing any necessary Petitions to Correct Inventorship;

6. Under CUTSA and DTSA, BlueRadios is entitled to the reasonable attorney fees it has

incurred in an amount of $6,214,406.61;

7. BlueRadios is determined to be the prevailing party under Federal Rule of Civil

Procedure 54(d); and

8. BlueRadios shall have 14 days to submit a bill of costs under Federal Rule of Civil

Procedure 54, and the Clerk of the Court is directed to tax costs in favor of BlueRadios,

provided that the costs conform with 28 U.S.C. § 1920.

DATED this 4th day of September, 2025.


_____
JOHN L. KANE
SENIOR U.S. DISTRICT JUDGE